**EXHIBIT R**



1  Michael C. Cohen, Esq., Bar No. 65487
   LAW OFFICES OF MICHAEL C. COHEN
2  1814 Franklin Street, Suite 900
   Oakland, CA 94612
3  (510) 832-6436
   Attorney for Plaintiff,
4  William J. Chapple

**FILED**
ALAMEDA COUNTY

APR 2 7 2007

CLERK OF THE SUPERIOR COURT
By_____
                        Deputy

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF ALAMEDA

13  WILLIAM J. CHAPPLE            No. RG06297059

14              Plaintiff,        AMENDED COMPLAINT FOR
                                  DEFAMATION OF CHARACTER,
15  vs.                           INTENTIONAL INFLICTION OF
                                  EMOTIONAL DISTRESS, INVASION
16  AMERICAN BAPTIST HOMES OF THE OF PRIVACY, EMPLOYMENT
    WEST CORPORATION, aka,        DISCRIMINATION/HARASSMENT
17  AMERICAN BAPTIST HOMES OF THE BASED ON RACE
    WEST, aka GRAND LAKE GARDENS,
18  CALVIN MAY, SCOTT SEBASTIAN,  DEMAND FOR JURY TRIAL
    DOES 1 THROUGH 10,
19
                Defendants.
20  _____/

22                    **GENERAL ALLEGATIONS**

23      **1)**   Plaintiff, William J. Chapple, at all times mentioned

24  herein, was an adult black, African American, male, over fifty

25  (50) years of age.

26      **2)**   Each of the acts and failure to act which is the basis

28  Amended Complaint                    -1-

4-27-07F

1  of this lawsuit occurred in the county of Alameda, state of
2  California.

3      **3)**  Plaintiff is informed and believes and thereon alleges
4  that at all times herein mentioned, defendant, American Baptist
5  Homes of the West Corporation, aka American Baptist Homes of the
6  West, aka Grand Lake Gardens, was a corporation, organized and
7  existing in the state of California.

8      **4)**  Plaintiff is informed and believes and thereon alleges
9  that American Baptist Homes of the West Corporation, aka American
10 Baptist Homes of the West, at all times mentioned herein, owned,
11 managed, operated Grand Lake Gardens, a senior residential home
12 facility located in Oakland, California, county of Alameda.

13     **5)**  Plaintiff is informed and believes and thereon alleges
14 that Grand Lake Gardens is a division and or department of
15 American Baptist Homes of the West Corporation, aka American
16 Baptist Homes of the West.

17     **6)**  Plaintiff is informed and believes and thereon alleges
18 that at all times herein mentioned, Calvin May was an employee of
19 American Baptist Homes of the West Corporation, aka American
20 Baptist Homes, working at Grand Lake Gardens as a resident
21 transportation operator.  In doing the acts complained of herein,
22 he was not acting in the course and scope of such employment when
23 doing the acts complained about herein.

24     **7)**  Plaintiff is informed and believes and thereon alleges
25 that at all times herein mentioned, Scott Sebastian was a
26 managerial employee of American Baptist Homes of the West

27

28 Amended Complaint                    -2-

1  Corporation, aka American Baptist Homes, working at Grand Lake
2  Gardens and acting in the course and scope of such employment
3  when doing the acts complained about herein.

4      8)   Plaintiff is informed and believes and thereon alleges
5  that at all times herein mentioned, Reginald Lyles was a
6  managerial employee of American Baptist Homes of the West
7  Corporation, aka American Baptist Homes, working at Grand Lake
8  Gardens and acting in the course and scope of such employment
9  when doing the acts complained about herein.

10     9)   Plaintiff is ignorant of the true names and capacities
11 of the defendants sued herein as does 1 through 10, inclusive.
12 Plaintiff therefore sue said defendants pursuant to Section 474
13 of the Code of Civil Procedure.  Plaintiff will ask leave of
14 Court to amend his Complaint to set forth the true names and
15 capacities of said defendants, together with appropriate charging
16 allegations, where necessary, when the same have been
17 ascertained.

18     10)  Plaintiff is informed and believes, and thereon
19 alleges, that at all times herein mentioned, each doe defendant
20 named herein, was the agent and or employee of each of the
21 remaining doe defendants, and in doing the things hereinafter
22 alleged, was acting within the course and scope of such agency
23 and or employment.

24     11)  At all times referred to herein, except as otherwise
25 alleged herein, Plaintiff was employed by American Baptist Homes
26 of the West Corporation, aka American Baptist Homes of the West,
27
28 Amended Complaint            -3-

1  at Grand Lake Gardens and he had a good reputation on his job and
2  in the community, including a good reputation for being a very
3  good employee, doing his job in a reasonably good manner, for
4  being a reasonable and responsible sober person who abided by the
5  rules and regulations of his job.  He looked forward to advancing
6  on his job, and earning more money and conduct on the job,
7  because of his good work, including his reputation for being a
8  good employee and a responsible employee.

9      **12)** On November 9, 2005, plaintiff was invited to an on-
10  site Senior Citizen's Birthday Party.  He arrived at the party at
11  about 8:00 p.m. and left at about 10:00 p.m.  Early morning,
12  directly after midnight and between midnight and 1:00 a.m. he
13  began to feel nauseous and experienced severe pain and cramping
14  in his stomach, along with diarrhea.  Later that morning, he took
15  two Tylenol and went to work still feeling nauseous with an upset
16  stomach, pain and diarrhea.

17      He reported to work at 7:30 a.m., November 10, 2005.  He
18  spoke to Calvin May, Resident Services Driver, who works under
19  Scott Sebastian, Director of Operations, Ms. Rita Johnson of
20  Wellness Department, and Kathy A. Smith, Certified Nursing
21  Assistant, Wellness Department and told them how much he enjoyed
22  the party and his delight at seeing the seniors too, having fun.

23      Thereafter, he went down to the basement to change clothes
24  in preparation of starting his work.  He spoke to Brad Freeman,
25  Maintenance #1 worker of Environmental Services and Alexander
26  Harrison, Maintenance #2 worker and told them he did not feel

27

28  Amended Complaint                    -4-

1   well and that he had stomach pain.  They suggested that he go to

2   the doctor.  He advised them that he thought it was the food from

3   the party that had his stomach so upset and was causing the pain

4   and diarrhea.  Brad Freeman said that he would cover for

5   plaintiff on the job.  He agreed to tell their supervisor Donald

6   Mack, Assistant Director of Facilities about plaintiff's illness.

7   Plaintiff then left the job, punching out between 8:00 a.m. and

8   8:30 a.m.

9       When plaintiff arrived at home he was still feeling very

10  sick and got into bed to rest.  He called Donald Mack, his

11  supervisor between 12:30 p.m. and 1:00 p.m. to personally explain

12  why he left the job.  He related to him that it was the food from

13  the party the night before that made him sick.  Some time later

14  he learned that others, too, had ill effects from the food at the

15  party.

16      During plaintiff's conversation with his supervisor, Donald

17  Mack, Mr. Mack told plaintiff that Scott Sebastian, Director of

18  Operations, told him that plaintiff came to work drunk and that

19  he must give plaintiff a verbal warning.  Plaintiff told him that

20  he was not drunk and that he went home because his stomach was

21  severely hurting and he had diarrhea.  Further, Donald Mack told

22  plaintiff that Scott Sebastian told him that Calvin May Resident

23  Services Driver, told him that plaintiff was drunk and smelling

24  like alcohol.  Supervisor Donald Mack told plaintiff that he

25  would have to do an investigation upon his return from being out

26  of town from Friday, November 11, 2005 to Tuesday, November 15,

27

28  Amended Complaint                     -5-

1    2005.

2         Plaintiff returned to work on November 11, 2005, punching in

3    at 7:00 a.m. and started to clean up the restroom, the office,

4    lobby, windows and observed Scott Sebastian who was in early that

5    morning.  Plaintiff spoke to Mr. Sebastian and Mr. Sebastian kept

6    walking straight past plaintiff and went into his office.  He

7    exited his office and began going into the restroom, the lobby

8    and into all of the offices.  Calvin May and Greg, the security

9    officer were sitting at the desk.  At that instance plaintiff

10   received a telephone call from his supervisor, Donald Mack, who

11   inquired how plaintiff was feeling.  Plaintiff told Mr. Mack that

12   he was alright.  Mr. Mack asked if Scott Sebastian had said

13   anything to him and plaintiff replied that he had not and

14   thereafter, Mr. Mack advised plaintiff that he would see him on

15   November 15, 2005.  Very shortly thereafter, Scott Sebastian

16   asked plaintiff if he had heard from his supervisor and plaintiff

17   told him that he had just now hung up the telephone from talking

18   to him.  He questioned plaintiff as to whether he had talked to

19   him before now and plaintiff told him that he had not.  He

20   requested that plaintiff come into his office as he wanted to

21   talk to plaintiff.  Plaintiff followed him into his office and he

22   closed the door and told plaintiff to sit down and tell him what

23   happened and why plaintiff did not come to work and why plaintiff

24   left from work.

25        Plaintiff told Mr. Sebastian he came to work but left

26   because of severe stomach pain and diarrhea that was brought on

27

28   Amended Complaint                    -6-

1  by the food he had eaten at the senior citizen party on November
2  9, 2005.  Mr. Sebastian said to plaintiff, "You were drunk and
3  you're drunk now.  I smell alcohol on you now and throughout the
4  building.  One of your co-workers told me that you came to work
5  drunk and you're still drunk and I want to help you."  Mr.
6  Sebastian spoke loud enough so that other people could hear him.
7  Plaintiff told Mr. Sebastian that he was not drunk and had not
8  been drinking any alcohol.  Mr. Sebastian continued telling
9  plaintiff that plaintiff was sick and that he wanted to help
10 plaintiff and asked plaintiff to fill out some forms and sign
11 them and go and take a breath test for alcohol.  Mr. Sebastian
12 persisted in telling plaintiff that plaintiff was sick and that
13 he wanted to help plaintiff and that he wanted plaintiff to fill
14 out and sign these forms and go and take a breath test for
15 alcohol at Concentra Medical Center.  He told plaintiff that he
16 would make the appointment for plaintiff.  Plaintiff told Mr.
17 Sebastian that he would not sign the forms because he was not
18 drunk and that he had not been drinking alcohol.  Mr. Sebastian
19 threatened to fire plaintiff or other disciplinary action if
20 plaintiff refused his orders.  Plaintiff asked to speak to Sid
21 Ward, Director of Facilities and Executive Director Reginald
22 Lyles.  Mr. Sebastian stated to plaintiff that he did not care
23 who plaintiff spoke to.  Plaintiff made no further protest and
24 followed Mr. Sebastian out of his office.  Plaintiff is informed
25 and believes and thereon alleges that third persons heard and
26 understood Scott Sebastian state that plaintiff was under the
27
28 Amended Complaint                    -7-



1  influence of alcohol and that plaintiff was sick and needed help.

2  Plaintiff's co-workers were outside of Mr. Sebastian's office and

3  were looking at plaintiff with their heads bowed down.  Plaintiff

4  was embarrassed and felt his character had been impugned and

5  violated and his intelligence insulted.

6      Scott Sebastian tried to contact Concentra Medical Center

7  but got no answer.  Plaintiff implored that he would never come

8  to work drunk and would never think that Mr. Sebastian would

9  expect that of him.  Mr. Sebastian stood quietly looking at

10  plaintiff.  Then, breaking the silence he said I have my watch

11  dogs looking out for me when I am not here.  He then picked up

12  the telephone again in an attempt to reach Concentra Medical

13  Center. He told them that he wanted a breath test for alcohol

14  administered to plaintiff and they asked him for what reason.  He

15  replied that it was reasonable suspicion.

16      Plaintiff left the area and went back down to the basement

17  to talk to Brad Freeman, Alexander Harrison, Rita Johnson, and

18  Kathy A. Smith.  All them saw how devastated plaintiff was and

19  felt his anger and disgust at Scott Sebastian's accusation that

20  he was drunk and smelled of alcohol and that was the reason he

21  made an appointment for alcohol testing at Concentra medical

22  Center for plaintiff.

23      Between 8:30 a.m. and 8:45 a.m., plaintiff left Grand Lake

24  Gardens and went over to Piedmont Gardens to talk to Sid Ward,

25  Director of Facilities.  He was acquainted with his secretary,

26  Facility Assistant, Lisa Sandeford, and she informed plaintiff

27

28  Amended Complaint              -8-

1 | that Mr. Ward was on vacation. Plaintiff gave her a friendly hug
2 | and asked her if she smelled any alcohol on him or his breath.
3 | She said she did not smell any alcohol. Plaintiff then told her
4 | that was the reason he was there to speak to Mr. Ward because
5 | Scott Sebastian accused him of being drunk and smelling of
6 | alcohol. Plaintiff told her about the appointment made for him
7 | at Concentra medical Center. Plaintiff felt Mr. Ward needed to
8 | know about this matter as well as Reginald Lyles. The secretary
9 | said that Scott was always doing something wrong and proceeded to
10 | contact Reginald Lyles through his secretary so that plaintiff
11 | could consult him about this matter.

12 | Plaintiff waited about ten minutes for Reginald Lyles,
13 | Executive Director of American Baptist Homes of the West
14 | Corporation, aka American Baptist Homes of the West, aka Grand
15 | Lake Gardens. Mr. Lyles came out of his office and greeted
16 | plaintiff with a handshake. Plaintiff explained that Scott
17 | Sebastian had made an appointment for plaintiff to go to
18 | Concentra Medical Center to have an alcohol breath test done
19 | because he said that plaintiff was drunk and that he smelled
20 | alcohol on plaintiff. I explained to Mr. Lyles all of the facts
21 | alleged herein. Mr. Lyles then told me to go and take the
22 | alcohol breath test. When Mr. Lyles told me to take the alcohol
23 | breath test I reasonably believed I had to take the test in order
24 | to maintain my job.

25 | Mr. Lyles knew or should have known that I was not drunk and
26 | that I did not smell of alcohol, when he told me to take the
27 |
28 | Amended Complaint                -9-

1  alcohol breath test.  Mr. Lyles did not reasonably investigate

2  the accusation that I had come to work drunk before ordering me

3  to take the alcohol breath test.

4      I am informed and believe and thereon allege that Scott

5  Sebastian has asked some of my co-workers to say that I was drunk

6  and smelled like alcohol.

7      Scott Sebastian looks at me with a smile and tells me to mop

8  out the restroom before I go home.  Every time I take off from

9  work to go to the doctor, he wants my supervisor to write me up.

10 He seeks me out to tell me to clean up the walls, vacuum the

11 dining room much better than the way I have been doing it, etc.,

12 I tell him all right.

13     **13)**  Plaintiff hereby demands a jury trial.

14              **FIRST CAUSE OF ACTION**

15          **DEFAMATION OF CHARACTER BY CALVIN MAY**

16     **14)**  Plaintiff hereby incorporates each allegation in

17 paragraphs 1 through 13 into this First Cause of Action.

18     **15)**  Plaintiff is informed and believes and thereon alleges

19 that Calvin Mays published to a third person(s) that plaintiff

20 came to work drunk and or that plaintiff was at work while drunk

21 from alcohol.

22     **16)**  Calvin May's statement published about plaintiff was

23 unprivileged and false when defendant May published the statement

24 about plaintiff.

25     **17)**  Calvin May published the false statement about

26 plaintiff maliciously.  Defendant May knew or should have known

27

28 Amended Complaint                -10-

1  the statement was false when he published the statement about

2  plaintiff.  He knew or should have known that he did not have

3  sufficient information to know if the statement was true or false

4  when published the statement about plaintiff.  He published the

5  statement about plaintiff with a reckless disregard to whether

6  the statement was true or false.

7      **18)**  Plaintiff is informed and believes and thereon alleges

8  that defendant May published the false statement about

9  plaintiff intentionally to cause plaintiff to suffer emotional

10  distress.

11      **19)** Plaintiff is informed and believes and thereon alleges

12  that defendant May published the false statement about plaintiff

13  because of his ill will and toward plaintiff.

14      **20)**  Plaintiff is informed and believes and thereon alleges

15  that defendant May published the false statement about plaintiff

16  because of plaintiff's race.

17      **21)**  Mr. May's false statement about plaintiff proximately

18  caused damage to plaintiff's reputation in general and to

19  plaintiff's reputation in doing his job, caused plaintiff to

20  suffer injury, including emotional distress and or severe

21  emotional distress, and to incur medical expenses; and is

22  reasonably certain to cause plaintiff to suffer damage to his

23  reputation in the future, suffer emotional distress and or severe

24  emotional distress in the future and to lose income and job

25  opportunity in the future and to incur medical expenses in the

26  future.

27

28  Amended Complaint              -11-

1    **22)**  Mr. May's false statement about plaintiff proximately

2    caused plaintiff to seek medical advice and or counseling for

3    mental and or emotional distress, and to incur medical expenses

4    and or expenses for mental and or emotional counseling.

5    **23)**  Defendant May's acts alleged herein were willful,

6    wanton, malicious, and oppressive in that defendant(s) acted with

7    a reckless disregard for the truth and or for plaintiff's rights.

8    Motivated by ill will toward plaintiff.  Defendant May published

9    the false information about plaintiff for the purpose of

10   harassing plaintiff and causing plaintiff emotional distress.

11   Defendant's acts were despicable and justify the award of

12   punitive damages.

13                    **SECOND CAUSE OF ACTION**

14   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY CALVIN MAY**

15   **24)**  Plaintiff hereby incorporates each allegation in

16   paragraphs 1 through 23 into this Second Cause of Action.

17   **25)**  Calvin May in doing the acts complained about herein,

18   acted intentionally for the purpose of causing plaintiff to

19   suffer emotional distress.

20   **26)**  Calvin May's conduct and or publishing false statements

21   about plaintiff as alleged herein is outrageous.

22   **27)**  Calvin May's outrageous conduct alleged herein

23   proximately caused plaintiff to suffer severe emotional distress

24   and to incur medical expenses.

25                    **THIRD CAUSE OF ACTION**

26        **DEFAMATION OF CHARACTER BY SCOTT SEBASTIAN,**
     **AMERICAN BAPTIST HOMES OF THE WEST, AKA AMERICAN BAPTIST**

27

28   Amended Complaint                    -12-

1     **HOMES OF THE WEST CORPORATION, AKA GRAND LAKE GARDENS**

2        **28)**  Plaintiff hereby incorporates each allegation in

3 paragraphs 1 through 27, into this Third Cause of Action.

4        **29)**  Plaintiff is informed and believes and thereon alleges

5 that Scott Sebastian published to a third person(s) that

6 plaintiff came to work drunk and or that plaintiff was at work

7 while drunk from alcohol, and that plaintiff was sick and needed

8 help.

9        **30)**  Defendant Sebastian's statement about plaintiff was

10 false and unprivileged when he published the statement.

11        **31)**  Defendant Sebastian published the false statement about

12 plaintiff maliciously because of ill will and or hatred toward

13 plaintiff.  Defendant Sebastian knew or should have known the

14 statement was false when he published the statements about

15 plaintiff.  He knew or should have known that he did not have

16 sufficient information to know if the statement was true or false

17 when he published the statement about plaintiff.  He published

18 the statement about plaintiff with a reckless disregard to

19 whether the statement was true or false.

20        **32)**  Defendant Sebastian when he published the false

21 information about plaintiff did so for the purpose of harassing

22 plaintiff and causing plaintiff to suffer emotional distress and

23 damage to his reputation.

24        **33)**  Plaintiff is informed and believes and thereon alleges

25 that defendant Sebastian's conduct alleged herein was motivated

26 by racial bias and discrimination against plaintiff because

27

28 Amended Complaint           -13-

1    plaintiff is an African American man.

2      **34)** Defendant, Sebastian has harassed continuously harassed

3    plaintiff on the job because of plaintiff's race.

4      **35)** Defendant, Sebastian's conduct, including his false

5    statement about plaintiff caused a hostile work environment for

6    plaintiff.

7      **36)** Defendant Sebastian's false unprivileged statement

8    about plaintiff proximately caused damage to plaintiff's

9    reputation on the job, caused plaintiff to suffer emotional

10    distress, and severe emotional distress, caused plaintiff to seek

11    medical advice and or counseling for mental and caused plaintiff

12    to incur medical/hospital expenses and or expenses for mental and

13    or emotional counseling.  It is reasonably certain that plaintiff

14    will suffer damage to his reputation in the future, suffer

15    emotional distress and or severe emotional distress in the future

16    and to lose income and job opportunity in the future and to incur

17    medical expenses in the future proximately caused by defendant

18    Sebastian's conduct alleged herein.

19      **37)** Defendant's acts were willful, wanton, malicious, and

20    oppressive in that defendant(s) acted with a reckless disregard

21    for the truth and or for plaintiff's rights.  Defendant(s)

22    published the false information about plaintiff for the purpose

23    of harassing plaintiff and causing plaintiff emotional distress.

24    Defendant's acts were despicable and justify the award of

25    punitive damages.

26      **38)** Plaintiff is informed and believes and thereon alleges

27

28    Amended Complaint           **-14-**

1 that American Baptist Homes of the West Corporation is liable to

2 plaintiff for the conduct of Scott Sebastian alleged herein

3 because Scott Sebastian in doing said acts was acting as a

4 managerial employee on behalf of American Baptist Homes of the

5 West Corporation, aka American Baptist Homes of the West, aka

6 Grand Lake Gardens.

7      **39)** American Baptist Homes of the West knew or should have

8 known that Scott Sebastian was harassing plaintiff because of

9 plaintiff's race, but it failed to take all reasonable action to

10 stop him from harassing plaintiff.  Said defendant ratified

11 defendant, Sebastian's harassing conduct.

12                      **FOURTH CAUSE OF ACTION**

13 **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY SCOTT SEBASTIAN**
   **AMERICAN BAPTIST HOMES OF THE WEST CORPORATION, aka AMERICAN**
14 **BAPTIST HOMES OF THE WEST, aka GRAND LAKE GARDENS**

15      **40)** Plaintiff hereby incorporates each allegation in

16 paragraphs 1 through 39 into this Fourth Cause of Action.

17      **41)** Scott Sebastian in doing the acts complained about

18 herein, acted intentionally for the purpose of causing plaintiff

19 to suffer emotional distress.

20      **42)** Plaintiff is informed and believes and thereon alleges

21 Defendant, Sebastian in doing the acts alleged herein was

22 motivated by ill will and or hatred toward plaintiff and or

23 because of plaintiff's race.

24      **43)** Defendant Sebastian's conduct alleged herein is

25 outrageous.

26      **44)** Defendant Sebastian's outrageous conduct alleged herein

27

28 Amended Complaint                    -15-

1    proximately caused plaintiff to suffer severe emotional distress

2    and to incur medical expenses.

3        **45)**  Plaintiff is informed and believes and thereon alleges

4    that American Baptist Homes of the West Corporation, aka American

5    Baptist Homes of the West, aka Grand Lake Gardens is liable to

6    plaintiff for the conduct of Scott Sebastian alleged herein

7    because Scott Sebastian in doing said acts was acting as a

8    managerial employee on behalf of American Baptist Homes of the

9    West Corporation, aka American Baptist Homes of the West, aka

10   Grand Lake Gardens.  Also, said defendants knew or should have

11   known that defendant Sebastian was harassing plaintiff because of

12   plaintiff's race and failed to take all reasonable action to stop

13   the harassment from occurring.

14                    **FIFTH CAUSE OF ACTION**
              **INVASION OF PRIVACY BY SCOTT SEBASTIAN, AMERICAN**
15        **BAPTIST HOMES OF THE WEST CORPORATION, aka AMERICAN**
          **BAPTIST HOMES OF THE WEST, aka GRAND LAKE GARDENS**
16

17       **46)**  Plaintiff hereby incorporates each allegation in

     paragraphs 1 through 45, into this Fifth Cause of Action.
18

19       **47)**  Plaintiff, at all times herein mentioned had a legal

20   and or equitable right to privacy.

21       **48)**  Defendant, American Homes of the West, and or Scott

22   Sebastian, at all times herein mentioned owed a duty to plaintiff

23   to not unreasonably invade plaintiff's right to privacy.

24       **49)**  Plaintiff is informed and believes and thereon

25   alleges that Defendant, Scott Sebastian, and or American Baptist

26   Homes of the West, in doing the acts and failing to act as

27   alleged herein unlawfully invaded plaintiff's right to privacy

28   Amended Complaint                    -16-

1  because said defendant, and each of them, unreasonably and or

2  arbitrarily disclosed private information about plaintiff to the

3  public and or unreasonably and or arbitrarily caused plaintiff's

4  body to be invaded and plaintiff's breath to be taken from his

5  person, against plaintiff's will, by threat of termination of his

6  employment, and intimidation, all to plaintiff's damage.

7      **50)**  Defendant Sebastian's and defendant American Baptist

8  Homes of the West's conduct alleged herein proximately

9  caused plaintiff to suffer loss of his right to privacy,

10 emotional distress, severe emotional distress, and to incur

11 medical/hospital expenses, past and future.

12                         **SIXTH CAUSE OF ACTION**
                    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY**
13          **REGINALD LYLES AMERICAN BAPTIST HOMES OF THE WEST**
                **CORPORATION, aka AMERICAN BAPTIST HOMES OF THE WEST,**
14                   **aka GRAND LAKE GARDENS**

15     **51)**  Plaintiff hereby incorporates each allegation in

16 paragraphs 1 through 50 into this Sixth Cause of Action.

17     **52)**  Reginald Lyles on or about November 10 forced plaintiff

18 to submit to a alcohol test, arbitrarily, without any reasonable

19 cause to suspect plaintiff had been drinking alcohol and or that

20 plaintiff was under the influence of alcohol, and against

21 plaintiff's will.

22     **53)**  Plaintiff is informed and believes and thereon alleges

23 that Reginald Lyles in doing the acts complained about herein,

24 acted intentionally for the purpose of causing plaintiff to

25 suffer emotional distress.

26     **54)**  Reginald Lyles' conduct alleged herein is outrageous.

27

28 Amended Complaint              -17-



1      **55)**  Reginald Lyles' outrageous conduct alleged herein

2  proximately caused plaintiff to suffer severe emotional distress.

3      **56)**  Plaintiff is informed and believes and thereon alleges

4  that American Baptist Homes of the West Corporation, aka American

5  Baptist Homes of the West, aka Grand Lake Gardens is liable to

6  plaintiff for the conduct of Reginald Lyles, alleged herein

7  because Reginald Lyles in doing said acts was acting as a

8  managerial employee on behalf of American Baptist Homes of the

9  West Corporation, aka American Baptist Homes of the West, aka

10  Grand Lake Gardens.

11                          **SEVENTH CAUSE OF ACTION**
               **INVASION OF PRIVACY BY AMERICAN BAPTIST HOMES**

12            **OF THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST**
              **CORPORATION, AKA GRAND LAKE GARDENS**

13
    **57)**  Plaintiff hereby incorporates each allegation in

14
paragraphs 1 through 56, into this Seventh Cause of Action.

15
    **58)**  Plaintiff, at all times herein mentioned had a legal

16
and equitable right to privacy.

17
    **59)**  Defendant, American Baptist Homes of the West, at all

18
times herein mentioned owed a duty to plaintiff to not

19
unreasonably invade plaintiff's right to privacy.

20
    **60)**  Plaintiff is informed and believes and thereon

21
alleges that defendant, American Baptist Homes of the West in

22
doing the acts complained about herein violated plaintiff's right

23
to privacy because he arbitrarily and or unreasonably disclosed

24
private information about plaintiff to the public and or

25
unreasonably forced plaintiff to submit to an alcohol breath

26
test, against plaintiff's will, by threat of termination of his

27

28  Amended Complaint                    -18-

1  employment, and intimidation, all to plaintiff's damage.

2  **61)**  Said defendant's conduct alleged herein proximately

3  caused plaintiff to suffer and unreasonable invasion of his right

4  to privacy, to suffer emotional distress, incur medical expenses,

5  past and future.

6  <center>**EIGHTH CAUSE OF ACTION**</center>

7  <center>**HARASSMENT AGAINST CALVIN MAY BASED ON RACE IN VIOLATION OF GOVERNMENT CODE SECTION 12940 ET SEQ.**</center>

8

9  **62)**  Plaintiff hereby incorporates each allegation in

10  paragraphs 1 through 61 into this Eighth Cause of Action.

11  **63)**  Plaintiff filed a complaint with Department of Fair

12  Employment and Housing, ("DFEH") against Calvin May within one

13  year from the date Calvin May published the false unprivileged

14  statement about plaintiff.

15  **64)**  Plaintiff received a Right To Sue Letter from DFEH.

16  Plaintiff filed his complaint herein within one year of his

17  receipt of the DFEH Right To Sue Letter.

18  **65)**  A copy of plaintiff's DFEH complaint, a copy of the

19  DFEH Right To Sue Letter, and a letter to defendant May notifying

20  him of the case closure, which was mailed to said defendant by

21  certified mail return receipt requested is marked Exhibit A,

22  attached hereto and incorporated herein.

23  **66)**  Defendant May's conduct proximately caused

24  plaintiff to incur attorney fees.

25  ////

26  ////

27  ////

28  Amended Complaint                    -19-

### NINTH CAUSE OF ACTION

**HARASSMENT AGAINST SCOTT SEBASTIAN BASED ON RACE IN VIOLATION OF GOVERNMENT CODE SECTION 12940 ET SEQ.**

67) Plaintiff hereby incorporates each allegation in paragraphs 1 through 61 into this Ninth Cause of Action.

68) Prior to filing his action herein Plaintiff filed a complaint against Scott Sebastian for harassment based on race with DFEH, within one year of defendant Sebastian's wrongful conduct.

69) Plaintiff received a Right To Sue Letter from DFEH. Thereafter, he filed his complaint herein with the court within one year from the date of his receipt of the DFEH Right To Sue Letter. A copy of plaintiff's DFEH complaint against Scott Sebastian, and a copy of the DFEH Right To Sue Letter, and a copy of a letter to defendant Sebastian, which was mailed to him by certified mail return receipt requested is marked Exhibit B, attached hereto and incorporated herein by this reference.

70) Defendant Sebastian's conduct proximately caused plaintiff to incur attorney fees.

### TENTH CAUSE OF ACTION

**DISCRIMINATION/HARASSMENT AGAINST AMERICAN BAPTIST HOMES OF THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST CORPORATION, AKA GRAND LAKE GARDENS IN VIOLATION OF GOVERNMENT CODE SECTION 12940 ET SEQ.**

71) Plaintiff hereby incorporates each allegation in paragraphs 1 through 61 into this Tenth Cause of Action.

72) Plaintiff received a Right To Sue Letter from EEOC & from DFEH. Thereafter, he filed his complaint herein with the

Amended Complaint                    -20-

1  court within ninety days of receipt of the EEOC Right To Sue

2  Letter and within one year from the date of his receipt of the

3  DFEH Right To Sue Letter.

4      73)  Prior to filing his action herein Plaintiff filed a

5  complaint for employment discrimination/harassment based on race

6  against American Baptist Homes of the West, aka American Baptist

7  Homes Corporation, aka Grand Lake Gardens with Equal Opportunity

8  Commission ("EEOC") and DFEH.  A copy of the EEOC & DFEH

9  complaint and Right To Sue Letter from EEOC and Right To Sue

10 Letter from DFEH, and letter to each said defendant notifying

11 them of the Notice of case closure, which was mailed to them by

12 certified mail return receipt requested is marked Exhibit C,

13 attached hereto and incorporated herein by this reference.

14     74)  Defendant American Baptist Homes of the West, aka

15 American Baptist Homes of the West Corporation, aka Grand Lake

16 Gardens proximately caused plaintiff to incur attorney fees.

17     **Wherefore plaintiff prays for judgment as follows:**

18     1. General damages, past and future, according to proof;

19     2. Economic damages, past and future, according to proof;

20     3. Medical expenses, past and future;

21     4. Reasonable attorney fee;

22     5. For such further and other relief as the court deems

23 just.

24 Dated: April 27, 2007            LAW OFFICES OF MICHAEL C. COHEN

25                                  By: _____

26                                      MICHAEL C. COHEN,
                                         Attorney for Plaintiff
27

28 Amended Complaint              -21-



# LAW OFFICES OF MICHAEL C. COHEN
## PROFESSIONAL CORPORATION

*1814 Franklin Street, Suite 900*
*Oakland, California 94612*
*Telephone: (510) 832-6436*
*Facsimile: (510) 832-6439*

*Michael C. Cohen, Esq.*

*Sherry Abrams, Esq.*

December 27, 2006

Calvin May
Grand Lake Gardens
401 Santa Clara Street
Oakland, CA 94610

Certified Return Receipt

Re: Client: William J. Chapple
Subject: Employment Discrimination/Harassment Complaint against
Calvin May
E200607M0586-01-apc

Dear Mr. May:

My office is representing William J. Chapple in his employment harassment claim against you for harassing him on the job. Enclosed is a copy Mr. Chapple's complaint that was filed with the Department of Fair Employment and Housing, and a copy of the department's Notice of Case Closure.

Very truly yours,

LAW OFFICES OF MICHAEL C. COHEN

Michael C. Cohen

Exhibit A



**\* \* \* EMPLOYMENT \***

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E-200607-M-0586-01-apc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)                                                              TELEPHONE NUMBER (INCLUDE AREA

William J. Chapple

ADDRESS

2870 Adeline Street #217

CITY/STATE/ZIP
Berkeley, CA 94703                                      Alameda COUNTY          COUNTY CO

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME                                                                                          TELEPHONE NUMBER (Include Area

Calvin May

ADDRESS   Grand Lake Gardens                                                                 DFEH USE ONLY
          401 Santa Clara, CA 94610

CITY/STATE/ZIP
Oakland, CA 94610                                            COUNTY          COUNTY CODE

NO. of EMPLOYEES/MEMBERS (if known)    DATE MOST RECENT OR CONTINUING DISCRIMINATION    RESPONDENT CODE
unknown                               TOOK PLACE (month, day, and year)   11/11/05

THE PARTICULARS ARE:

On  11/10/05 & 11/11/05 I was

|  |  |  |
|---|---|---|
| ___ fired | ___ denied employment | ___ denied family or medical leave |
| ___ laid off | ___ denied promotion | ___ denied pregnancy leave |
| ___ demoted | ___ denied transfer | ___ denied equal pay |
| _X_ harassed | ___ denied accommodation | ___ denied right to wear pants |
| ___ genetic characteristics testing | ___ impermissible non-job-related inquiry | ___ denied pregnancy accommodat |
| ___ forced to quit | ___ other (specify) _____ |  |

by  Calvin May, resident services driver
    Name of Person                              Job Title (supervisor/manager/personnel director/etc.)

because of my:

| | | | |
|---|---|---|---|
| _X_ sex | ___ national origin/ancestry | ___ physical disability | ___ cancer |
| _X_ age | ___ marital status | ___ mental disability | ___ genetic characteristic |
| ___ religion | ___ sexual orientation | | |
| _X_ race/color | ___ association | ___ other (specify) _____ | |

(Circle one) filing; protesting; participating in investigation (retaliation for)

the reason given by  Mr. May told client's supervisor at client's job, that Mr.
Chapple was drunk on the job.  He acted with malice.

Was because of
[please state
what you believe
to be reason(s)]

Mr. May maliciously published false statements about Mr.
Chapple to Mr. Chapple's employer to harass Mr Chapple becaus
of Mr. Chapple's race and or age.  see attached declaration
which is incorporated herein.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated   11/3/06

At  Oakland, CA
              City

COMPLAINANT'S SIGNATURE   *William J. Chapple*

RECEIVED

NOV 03 2006

Department of Fair
Employment and Housing
Oakland District Office

DATE FILED: November 3, 2006

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING                                                    STATE OF CALIFORN

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

### CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the party at 8:00 PM and left at 10:00 PM.

Early morning , directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

CHRONICLE OF EVENTS                                    Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled



**CHRONICLE OF EVENTS**                                        Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

**CHRONICLE OF EVENTS**                                    **Page 4**

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

RECEIVED

NOV 0 3 2006

Department of Fair
Employment and Housing
Oakland District Office

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                      ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



November 8, 2006


William J. Chapple
c/o
LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street Ste 900
Oakland, CA 94612

RE:    E200607M0586-01-apc
       CHAPPLE/MAY, CALVIN, As an Individual

Dear William J. Chapple:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
November 3, 2006 because an immediate right-to-sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity
Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this
DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act,
whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the
case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:    Case File

May Caalvin
Resident Services Driver
GRAND LAKE GARDENS
401 Santa Clara
Oakland, CA  94610

DFEH-200-43 (06/06)

# LAW OFFICES OF MICHAEL C. COHEN
## PROFESSIONAL CORPORATION
*1814 Franklin Street, Suite 900*
*Oakland, California 94612*
*Telephone: (510) 832-6436*
*Facsimile: (510) 832-6439*

*Michael C. Cohen, Esq.*

*Sherry Abrams, Esq.*

December 27, 2006

Scott Sebastian
Grand Lake Gardens
401 Santa Clara Street
Oakland, CA 94610

Certified Return Receipt

    Re: Client: William J. Chapple
    Subject: Employment Discrimination/Harassment Complaint against
    Scott Sebastian
    E200607M0586-03-apc

Dear Mr. Sebastian:

    My office is representing William J. Chapple in his employment harassment claim against you for harassing him on the job. Enclosed is a copy Mr. Chapple's complaint that was filed with the Department of Fair Employment and Housing, and a copy of the department's Notice of Case Closure.

        Very truly yours,

        LAW OFFICES OF MICHAEL C. COHEN

        Michael C. Cohen

            Exhibit B

# * * * EMPLOYMENT * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E-200607-M-0586-03-apc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME [indicate Mr. or Ms.]

William J. Chapple

TELEPHONE NUMBER [INCLUDE A]

ADDRESS

2870 Adeline Street #217

CITY/STATE/ZIP

Berkeley, CA 94703

COUNTY          COUNTY

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME

Scott Sebastian

TELEPHONE NUMBER [Include A

ADDRESS   Grand Lake Gardens
401 Santa Clara, CA 94610

DFEH USE ONLY

CITY/STATE/ZIP

Oakland, CA 94610

COUNTY  Alameda

COUNTY CODE

NO. OF EMPLOYEES/MEMBERS [if known]

unknown

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)   11/11/05

continuing haras[ment

THE PARTICULARS ARE:   Prior to 11/11/05 and continuing

On ..... 11/11/06 ..... harassment I was

| | |
|---|---|
| ___ fired | ___ denied employment | ___ denied family or medical lea |
| ___ laid off | ___ denied promotion | ___ denied pregnancy leave |
| ___ demoted | ___ denied transfer | ___ denied equal pay |
| _X_ harassed | ___ denied accommodation | ___ denied right to wear pants |
| ___ genetic characteristics testing | ___ impermissible non-job-related inquiry | ___ denied pregnancy accommo |
| ___ forced to quit | ___ other (specify) | |

by   Scott Sebastian, director of Operations

Name of Person          Job Title (supervisor/manager/personnel director/etc.)

because of my:

| | | | |
|---|---|---|---|
| ___ sex | ___ national origin/ancestry | ___ physical disability | ___ cancer |
| _X_ age | ___ marital status | ___ mental disability | ___ genetic characteristic |
| ___ religion | ___ sexual orientation | | |
| _X_ race/color | ___ association | ___ other (specify) ____ | |

(Circle one) filing: protesting; participating in investigation (retaliation for)

the reason given by   Scott Sebastian said I was drunk while at work; he forced me to take breath alcohol test.

Name of Person and Job Title

**Was because of** [please state what you believe to be reason(s)]   Mr. Sebastian engaged in continuing course of harassment agai against me because of my race and or age. Please see attached declaration which is incorporated herein.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I mus visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated   11/3/06

At   Oakland, CA 94612

City

COMPLAINANT'S SIGNATURE

RECEIVED

NOV 03 2006

Department of Fair Employment and Housing Oakland District Office

DATE FILED:
November 3, 2006

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFOR[

*EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE*
*BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST*
*CORPORATION*

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the party at 8:00 PM and left at 10:00 PM.

Early morning , directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM., November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November ll, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

**CHRONICLE OF EVENTS**                                      Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was allright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled



**CHRONICLE OF EVENTS**                                                      Page 3

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said allright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results - -one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months -- May 16 to November 16, 2005, that be,. SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8;00 AM.. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

**CHRONICLE OF EVENTS**                                                    Page 4

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

STATE OF CALIFORNIA - STATE AND CONSUMER SE       .GENCY                                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



November 8, 2006


William J. Chapple
c/o
LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street Ste 900
Oakland, CA 94612

RE:   E200607M0586-03-apc
      CHAPPLE/SEBASTIAN, SCOTT, As an Individual

Dear William J. Chapple:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
November 3, 2006 because an immediate right-to-sue notice was requested.  DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint.  The civil action must be
filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity
Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this
DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act,
whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Allan H. Pederson*

Allan H. Pederson
District Administrator

cc:    Case File

Scott Sebastian
Director of Operations
GRAND LAKE GARDENS
401 Santa Clara Avenue
Oakland, CA  94610

DFEH-200-43 (06/06)

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the
case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:     Case File

Scott Sebastian
Director of Operations
GRAND LAKE GARDENS
401 Santa Clara Avenue
Oakland, CA  94610

DFEH-200-43 (06/06)

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  William J. Chapple<br>2870 Adeline Street # 217<br>Berkeley, CA 94703 | From:  Oakland Local Office - 555<br>1301 Clay Street<br>Suite 1170-N<br>Oakland, CA 94612 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 555-2006-00912 | Julian F. Melendres,<br>**Investigator Support Asst** | **(510) 637-3242** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          02/20/07
**Michelle L. Nardella,**                      *(Date Mailed)*
**Director**

Enclosures(s)

cc:
Scott Sebastian                          Michael C. Cohen, Esq.
Director of Resident Services            1814 Franklin St, Ste.900
GRAND LAKE GARDENS                       Oakland, CA 94612
401 Santa Clara Ave.
Oakland, CA 94610



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Oakland Local Office**

1301 Clay Street, Suite 1170-N
Oakland, CA 94612-5217
(510) 637-3230
TTY (510) 637-3234
FAX (510) 637-3235

Mr. William J. Chapple
2870 Adeline Street #217
Berkeley, CA 94703

Dear Mr. Chapple:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC), it is important for you to understand some of our case processing procedures.

A copy of your charge will automatically be filed with the State of California, Department of Fair Employment and Housing. This is being done to protect your right to file a suit in state court, should you desire to do so at a later date. It is not necessary for you to contact the state agency. Because of a formal agreement between the EEOC and the state agency, the EEOC will be processing your charge. The state agency will not process it unless we request them to do so. This rarely happens, but, if it does, we will certainly let you know that we are transferring your charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitations set forth both federal and state laws. In this instance, your charge will be served within ten days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your charge number on all correspondence.

Sincerely,

*Julian Melendres*

Mr. Julian Melendres, EEOC Representative
(510) 637-3242

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT**

DFEH _____

DFEH USE ONLY

EEOC CHARGE # 555-2006-00911

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

**YOUR NAME (indicate Mr. or Ms.)**
William J. Chapple

**RECEIVED**

**TELEPHONE NUMBER (INCLUDE ARE**

**ADDRESS**
2870 Adeline Street #217

AUG 0 2 2006

**CITY/STATE/ZIP**
Berkeley, CA 94703

EEOC-OLO

**COUNTY** Alameda    **COUNTY C**

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

**NAME**
Grand Lake Gardens

**TELEPHONE NUMBER (include Are**

**ADDRESS**
401 Santa Clara Avenue

**DFEH USE ONLY**

**CITY/STATE/ZIP**
Oakland, CA 94610

**COUNTY**

**COUNTY CODE**

**NO. OF EMPLOYEES/MEMBERS (if known)**
approx. 50

**DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year)**
11/11/05

**RESPONDENT CODE**

**THE PARTICULARS ARE:**

On 11/11/05    I was

- ___ fired
- ___ laid off
- ___ demoted
- X ___ harassed
- ___ genetic characteristics testing
- ___ forced to quit

- ___ denied employment
- ___ denied promotion
- ___ denied transfer
- ___ denied accommodation
- ___ impermissible non-job-related inquiry
- X ___ other (specify) discriminated against

- ___ denied family or medical leave
- ___ denied pregnancy leave
- ___ denied equal pay
- ___ denied right to wear pants
- ___ denied pregnancy accommodatio

by    Scott Sebastian, Dir. of Operations; Calvin May Resident Services

**Name of Person**

**Job Title (supervisor/manager/personnel director/etc.)**
Driver

**because of my:**
- ___ sex
- ___ age
- ___ religion
- X ___ race/color

- ___ national origin/ancestry
- ___ marital status
- ___ sexual orientation
- ___ association

- ___ physical disability
- ___ mental disability
- ___ other (specify) _____

- ___ cancer
- ___ genetic characteristic

- ___ (Circle one) filing;
protesting; participating in
investigation (retaliation for)

**the reason given by** Scott Sebastian, Dir. of Operations, Calvin May, Resident
Services Driver

**Name of Person and Job Title**

**Was because of
[please state
what you believe
to be reason(s)]**

They accused me of coming to work "drunk"; ie. under the
influence of alcohol. Please see attached declaration which
is hereby incorporated herein. I believe I was falsely accused
because of my race. I am an African American.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

**Dated** 7/18/06

William J. Chapple

**COMPLAINANT'S SIGNATURE**

**At** _____

Oakland, CA

**City**

**DATE FILED:** _____

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA



EEOC CHARGE # 555-2006-00913

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

**RECEIVED**

Defendants:

**AUG 0 2 2006**

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

**EEOC-OLO**

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor – charter of infraction. Infliction of Mental and Emotional Distress.

### CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the party at 8:00 PM and left at 10:00 PM.

Early morning , directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM., November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

RECEIVED

AUG 0 2 2006

EEOC-OLO

EEOC CHARGE # 555-2006-00913

**CHRONICLE OF EVENTS**

Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was allright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

**RECEIVED**





**AUG 0 2 2006**

**EEOC-OLO**

EEOC CHARGE # 555-2006-00912

CHRONICLE OF EVENTS                                    Page 3

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good." I said alright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results - one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months -- May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 AM. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

RECEIVED

AUG 0 2 2006

EEOC-OLO

CHRONICLE OF EVENTS          EEOC CHARGE # 555-2006-00984

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month – July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of

the United States of America that the foregoing statement is true and correct and that this declaration was

executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

RECEIVED

AUG 0 2 2006

EEOC-OLO

**CHRONICLE OF EVENTS**        EEOC CHARGE # 555-2006-00234

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath.. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE



ATE OF CALIFORNIA - State and Consumer Services Agency                                ARNOLD SCHWARZENEGGER, Governor

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
## SEE ADDRESS CHECKED BELOW)

TY # (800) 700-2320

☐ 1001 Tower Way, Suite 250
Bakersfield, CA 93309
H   (661) 395-2729

☐ 1320 E. Shaw Avenue, Suite 150
Fresno, CA 93710
C   (559) 244-4760

☐ 611 West Sixth Street, Suite 1500
Los Angeles, CA 90017
S/T (213) 439-6799

☒ 1515 Clay Street, Suite 701
Oakland, CA 94612
M   (510) 622-2941

☐ 2000 "O" Street, Suite 120
Sacramento, CA 95814
E   (916) 445-5523

☐ 1350 Front Street, Suite 3005
San Diego, CA 92101
D   (619) 645-2681

☐ San Francisco District Office
1515 Clay Street, Suite 701
A   Oakland, CA 94612
(510) 622-2973

☐ 111 North Market Street, Suite 810
San Jose, CA 95113
G   (408) 277-1277

☐ 2101 East Fourth Street, Suite 255-B
Santa Ana, CA 92705
K   (714) 558-4266

**EEOC Number:**        **555-2006-00912**
**Case Name:**          **William J. Chapple v. Grand Lake Gardens**
**Date:**               **August 2, 2006**

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being referred to the California Department of Fair Employment and Housing (DFEH) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

**No response to the DFEH is required by the respondent.**

The EEOC will be responsible for the processing of this complaint. DFEH will not be conducting an investigation into this matter. EEOC should be contacted directly for any discussion of the charge. DFEH is closing its case on the basis of "processing waived to another agency."

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right-to-sue notice. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior or Justice Court. Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed. Questions about the right to file under federal law should be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complaint is filed.

Remember:  This Right-To-Sue Notice allows you to file a private lawsuit in State court.

Sincerely,

WANDA J. KIRBY
Chief Deputy Director

DFEH-200-02 (07/05)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Oakland Local Office**

1301 Clay Street, Suite 1170-N
Oakland, CA 94612-5217
(510) 637-3230
TTY (510) 637-3234
FAX (510) 637-3235

Mr. William J. Chapple
2870 Adeline Street #217
Berkeley, CA 94703

Dear Mr. Chapple:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC), it is important for you to understand some of our case processing procedures.

A copy of your charge will automatically be filed with the State of California, Department of Fair Employment and Housing. This is being done to protect your right to file a suit in state court, should you desire to do so at a later date. It is not necessary for you to contact the state agency. Because of a formal agreement between the EEOC and the state agency, the EEOC will be processing your charge. The state agency will not process it unless we request them to do so. This rarely happens, but, if it does, we will certainly let you know that we are transferring your charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitations set forth both federal and state laws. In this instance, your charge will be served within ten days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your charge number on all correspondence.

Sincerely,

*Julian Melendres*

Mr. Julian Melendres, EEOC Representative
(510) 637-3242

**\* \* \* EMPLOYMEN** **\***

**COMPLAINT OF DISCRIMINATION UNDER**    DFEH #_____

**THE PROVISIONS OF THE CALIFORNIA**
                                   DFEH USE ONLY

**FAIR EMPLOYMENT AND HOUSING ACT**    EEOC CHARGE # 555-2006-00910

**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**RECEIVED**

| YOUR NAME (indicate Mr. or Ms.) | | TELEPHONE NUMBER (INCLUDE A |
|---|---|---|
| William J. Chapple | | |
| **ADDRESS** | | |
| 2870 Adeline Street #217 | AUG 0 2 2006 | |
| **CITY/STATE/ZIP** | | COUNTY | COUNT |
| Berkeley, CA 94703 | EEOC-OLO | Alameda | |

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

| NAME | TELEPHONE NUMBER (include A |
|---|---|
| American Baptist Homes of the West | |
| **ADDRESS** | DFEH USE ONL |
| 6120 Stoneridge Mall Rd. 3rd. Floor | |
| **CITY/STATE/ZIP** | COUNTY | COUNTY CODE |
| Pleasanton, CA 94588 | | |
| **NO. OF EMPLOYEES/MEMBERS (if known)** | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CO |
| approx. 50 | 11/11/05 | |

**THE PARTICULARS ARE:**

On _11/11/05_    I was
 ___ fired     ___ denied employment     ___ denied family or medical le
 ___ laid off     ___ denied promotion     ___ denied pregnancy leave
 _X_ demoted     ___ denied transfer     ___ denied equal pay
 ___ harassed     ___ denied accommodation     ___ denied right to wear pants
 ___ genetic characteristics testing     ___ impermissible non-job-related inquiry     ___ denied pregnancy accommo
 ___ forced to quit     _X_ other (specify) __discriminated against__

by _____Scott Sebastian, Director of Operations, Calvin May, Resident_____
     Name of Person              Job Title (supervisor/manager/personnel director/etc.)    Services Driver

because of my:    ___ sex    ___ national origin/ancestry    ___ physical disability    ___ cancer       (Circle one) filing:
                ___ age    ___ marital status    ___ mental disability    ___ genetic characteristic    protesting; participating in
                ___ religion    ___ sexual orientation                                      investigation (retaliation for)
                _X_ race/color    ___ association    ___ other (specify) _____

the reason given by _Scott Sebastian, Director of Operations, Calvin May, Resident_
                                Name of Person and Job Title                Services Driver

Was because of [please state what you believe to be reason(s)]
   They accused of coming to work "drunk"; ie under the influence of alcohol. Please see attached declaration which is hereby incorporated herein. I believe I was falsely accused because of my race. I am an African American.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-use notice. I understand that if I want a federal notice of right-to-sue, I mus visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process o reopen a complaint once the complaint has been closed on the basis of "Complaint Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated _7/18/06_

                                  *William J. Chapple*
                                       COMPLAINANT'S SIGNATURE

At _Oakland, CA_
       City

                            DATE FILED:

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING                             STATE OF CALIF06

 

EEOC CHARGE # 555-2006-00910

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

Defendants:                                          **RECEIVED**

Board of Directors                                   AUG 0 2 2006
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations              **EEOC-OLO**
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial
Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing
employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

### CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the
party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and
experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two
Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident
Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of
Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them
how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I
spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER
HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They
suggested I go to the doctor. I advised them that I thought it was the food from the party that had my
stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me.
He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then
left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD
MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to
him that it was the food from the birthday party the night before that made me sick. Some time later I
learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT
SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal
warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I
had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY,
Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD
MACK told me that he would have to do an investigation upon his return from being out of town from
Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the
restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I
spoke to him and he kept walking straight by me into his office. He exited his office and began going into
the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

 

**RECEIVED**

AUG 0 2 2006

**EEOC-OLO**

EEOC CHARGE # 555-2006-00910

**CHRONICLE OF EVENTS**                    Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

RECEIVED  

AUG 0 2 2006

EEOC-OLO

EEOC CHARGE # 555-2006-00910

CHRONICLE OF EVENTS                                          Page 3

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said allright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results - -one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months -- May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 AM. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

 

**RECEIVED**

**AUG 0 2 2006**

**EEOC-OLO**

EEOC CHARGE # 555-2006-00910

**CHRONICLE OF EVENTS**

Page 4

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath.. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

_William J. Chapple_

WILLIAM J. CHAPPLE

STATE OF CALIFORNIA - State and Consumer Services Agency                                        ARNOLD SCHWARZENEGGER, Governor

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
(SEE ADDRESS CHECKED BELOW)



TTY # (800) 700-2320

☐ 1001 Tower Way, Suite 250
**H** Bakersfield, CA 93309
(661) 395-2729

☐ 1320 E. Shaw Avenue, Suite 150
**C** Fresno, CA 93710
(559) 244-4760

☐ 611 West Sixth Street, Suite 1500
**S/T** Los Angeles, CA 90017
(213) 439-6799

☒ 1515 Clay Street, Suite 701
**M** Oakland, CA 94612
(510) 622-2941

☐ 2000 "O" Street, Suite 120
**E** Sacramento, CA 95814
(916) 445-5523

☐ 1350 Front Street, Suite 3005
**D** San Diego, CA 92101
(619) 645-2681

☐ **San Francisco District Office**
**A** 1515 Clay Street, Suite 701
Oakland, CA 94612
(510) 622-2973

☐ 111 North Market Street, Suite 810
**G** San Jose, CA 95113
(408) 277-1277

☐ 2101 East Fourth Street, Suite 255-B
**K** Santa Ana, CA 92705
(714) 558-4266

| | |
|---|---|
| **EEOC Number:** | **555-2006-00910** |
| **Case Name:** | **William J. Chapple v. American Baptist Homes of the West** |
| **Date:** | **August 2, 2006** |

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being referred to the California Department of Fair Employment and Housing (DFEH) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

**No response to the DFEH is required by the respondent.**

The EEOC will be responsible for the processing of this complaint. DFEH will not be conducting an investigation into this matter. EEOC should be contacted directly for any discussion of the charge. DFEH is closing its case on the basis of "processing waived to another agency."

## NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right-to-sue notice. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior or Justice Court. Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation into your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed. Questions about the right to file under federal law should be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complaint is filed.

Remember: This Right-To-Sue Notice allows you to file a private lawsuit in State court.

Sincerely,

WANDA J. KIRBY
Chief Deputy Director

DFEH-200-02 (07/05)

SUMMONS ON AMENDED COMPLAINT
**(CITACION JUDICIAL)**



FOR
(SOLO PARA USO DE LA CORTE)

*5667031*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)* :
AMERICAN BAPTIST HOMES OF THE WEST CORPORATION, aka AMERICAN
BAPTIST HOMES OF THE WEST, aka GRAND LAKE
GARDENS, CALVIN MAY, SCOTT SEBASTIAN, DOES 1
THROUGH 10,
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
WILLIAM J. CHAPPLE

FILED ALAMEDA COUNTY

APR 27 2007

CLERK OF SUPERIOR COURT
by *Alphoncine Oates*
DEPUTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda County Superior Court<br>1225 Fallon Street<br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del Caso):* RG06297059 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael C. Cohen, Esq. 65487
1814 Franklin Street, Suite 900
510-832-6439

LAW OFFICES OF MICHAEL C. COHEN
Oakland, CA 94612

DATE:                  PAT S. SWEETEN      Clerk, by     *Alphoncine Oates*      , Deputy
*(Fecha)*    APR 2 7 2007    *(Secretario)*              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)* :

3. ☐ on behalf of *(specify)* :
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)* :
4. ☐ by personal delivery on *(date)* :

Page 1 of 1

Chapple v. American Baptist

# EXHIBIT S

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Chapple** | **No. RG06297059** |
| Plaintiff/Petitioner(s) | |
| VS. | **Minutes** |
| **American Baptist Homes Of The West Corporation** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department  31                    Honorable   Winifred Y. Smith          , Judge

Cause called for Motion: May 07, 2007.

Reginald Lyles, Calvin May and Scott Sebastian to Plaintiff's Complaint for Damages is DROPPED as moot in light of the First Amended Complaint filed on April 27, 2007.

Minutes of     05/07/2007
Entered on     05/07/2007

Executive Officer / Clerk of the Superior Court

By    _Yvonne Bagnell_

Deputy Clerk

**Minutes**

M3671450