.

**EXHIBIT UU**



1 | Michael C. Cohen, Esq., Bar No. 65487
**LAW OFFICES OF MICHAEL C. COHEN**
2 | 1814 Franklin Street, Suite 900
Oakland, CA 94612
3 | (510) 832-6436
Attorney for Plaintiff,
4 | William J. Chapple

**F I L E D**
**ALAMEDA COUNTY**

OCT 2 2 2007

CLERK OF THE SUPERIOR COURT
By_____Deputy

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF ALAMEDA

13 | WILLIAM J. CHAPPLE                No. RG06297059

14 |          Plaintiff,         THIRD AMENDED COMPLAINT FOR
                                 DEFAMATION OF CHARACTER,
15 | vs.                         INTENTIONAL INFLICTION OF
                                 EMOTIONAL DISTRESS, EMPLOYMENT
16 | AMERICAN BAPTIST HOMES OF THE   DISCRIMINATION/HARASSMENT
WEST CORPORATION, aka,          BASED ON RACE/AGE/PERCEIVED
17 | AMERICAN BAPTIST HOMES OF THE   DISABILITY
WEST, aka GRAND LAKE GARDENS,
18 | CALVIN MAY, SCOTT SEBASTIAN,    DEMAND FOR JURY TRIAL
DOES 1 THROUGH 10,
19 |                              ASSIGNED FOR ALL PURPOSES TO
           Defendants.          JUDGE, Winifred Y. Smith,
20 | _____/ Department 114

## GENERAL ALLEGATIONS

   **1)**   Plaintiff, William J. Chapple, at all times mentioned

herein, was an adult black, African American, male, more than

fifty (50) years of age.

   **2)**   Each of the acts and failure to act which is the basis

Third Amended Complaint              -1-

1  of this lawsuit occurred in the county of Alameda, state of
2  California.

3      **3)**   The plaintiff is informed and believes and thereon
4  alleges that at all times herein mentioned, the defendant,
5  American Baptist Homes of the West Corporation, aka American
6  Baptist Homes of the West, aka Grand Lake Gardens, was a
7  corporation, organized and existing in the state of California.

8      **4)**   The Plaintiff is informed and believes and thereon
9  alleges that American Baptist Homes of the West Corporation, aka
10  American Baptist Homes of the West, at all times mentioned
11  herein, owned, managed, operated Grand Lake Gardens, a senior
12  residential home facility located in Oakland, California, county
13  of Alameda.

14      **5)**   The plaintiff is informed and believes and thereon
15  alleges that Grand Lake Gardens is a division and or department
16  of American Baptist Homes of the West Corporation, aka American
17  Baptist Homes of the West.

18      **6)**   The Plaintiff is informed and believes and thereon
19  alleges that at all times herein mentioned, Calvin May was an
20  employee of American Baptist Homes of the West Corporation, aka
21  American Baptist Homes, working at Grand Lake Gardens as a
22  resident transportation operator.  Defendant May was not acting
23  in the course and scope of such employment when doing the acts
24  complained about herein.

25      **7)**   The plaintiff is informed and believes and thereon
26  alleges that at all times herein mentioned, Scott Sebastian was a
27
28  Third Amended Complaint            -2-

1  managerial employee of American Baptist Homes of the West
2  Corporation, aka American Baptist Homes, working at Grand Lake
3  Gardens and acting in the course and scope of such employment,
4  when doing the acts complained about herein.

5      **8)**    The plaintiff is informed and believes and thereon
6  alleges that at all times herein mentioned, Reginald Lyles was a
7  managerial employee of American Baptist Homes of the West
8  Corporation, aka American Baptist Homes, working at Grand Lake
9  Gardens and acting in the course and scope of such employment
10  when doing the acts complained about herein.

11      **9)**    The plaintiff is ignorant of the true names and
12  capacities of the defendants sued herein as does 1 through 10,
13  inclusive.   The plaintiff therefore sues said defendants pursuant
14  to Section 474 of the Code of Civil Procedure.   The plaintiff
15  will ask leave of Court to amend his Complaint to set forth the
16  true names and capacities of said defendants, together with
17  appropriate charging allegations, where necessary, when the same
18  have been ascertained.

19      **10)**    The plaintiff is informed and believes, and thereon
20  alleges, that at all times herein mentioned, each doe defendant
21  named herein, was the agent and/or employee of each of the
22  remaining doe defendants, and in doing the things hereinafter
23  alleged, was acting within the course and scope of such agency
24  and/or employment.

25      **11)**    At all times referred to herein, except as otherwise
26  alleged herein, Plaintiff was employed by American Baptist Homes
27
28  Third Amended Complaint            -3-

1  of the West Corporation, aka American Baptist Homes of the West,
2  and Grand Lake Gardens, working at Grand Lake Gardens. He
3  performed his job satisfactorily. He never did anything to cause
4  his employer or a reasonable person to believe that he came to
5  work drunk and or under the influence of alcohol or that he had
6  been drinking alcohol before he came to work or while he was at
7  work. He enjoyed a good reputation on his job and in the
8  community, including a good reputation for being a very good
9  employee, for doing his job in a reasonably good manner, for
10 being a sober responsible, reliable employee and person who
11 abided by the rules and regulations of his job. He looked
12 forward to advancing on his job by way of future promotions on
13 the job, and earning more money on the job because of his good
14 work, including his reputation for being a good employee, a
15 responsible employee and a sober and reliable employee.

16     **12)**  On November 9, 2005, the plaintiff was invited to an
17 on-site Senior Citizen's Birthday Party. He arrived at the party
18 at about 8:00 p.m. and left at about 10:00 p.m. Early the next
19 morning, between midnight and 1:00 a.m. the plaintiff began to
20 feel nauseous and severe pain and cramping in his stomach, along
21 with diarrhea. Later that morning, he took two Tylenol tablets
22 and went to work, still feeling nauseous with an upset stomach,
23 stomach pain and diarrhea.

24     The plaintiff reported to work at 7:30 a.m., November 10,
25 2005. When he arrived at work, he spoke to Calvin May, Resident
26 Services Driver, who works under Scott Sebastian, Director of
27
28 Third Amended Complaint          -4-

1  Operations, Ms. Rita Johnson of the Wellness Department, and
2  Kathy A. Smith, Certified Nursing Assistant, with the Wellness
3  Department and told them how much he enjoyed the party the
4  previous night and his delight at seeing the seniors having fun.

5      Thereafter, he went down to the basement to change clothes
6  in preparation of starting his work. He spoke to Brad Freeman,
7  Maintenance #1 worker of Environmental Services and Alexander
8  Harrison, Maintenance #2 worker and told them he did not feel
9  well and that he had stomach pain. They suggested that he go to
10 the doctor. He advised them that he thought it was the food from
11 the party that had his stomach so upset and was causing the pain
12 and diarrhea. Brad Freeman said that he would cover for
13 plaintiff on the job. He agreed to tell their supervisor Donald
14 Mack, Assistant Director of Facilities about plaintiff's illness.
15 Plaintiff then left the job, punching out between 8:00 a.m. and
16 8:30 a.m. and went home.

17     When the plaintiff arrived at home he was still feeling very
18 sick so he got in bed to rest. He called Donald Mack, his
19 immediate supervisor between 12:30 p.m. and 1:00 p.m. to
20 personally explain why he left the job. He related to Mr. Mack
21 that the food from the party the night before made him sick.
22 Some time later the plaintiff learned that some of the other
23 people who were at the party also experienced similar symptoms of
24 illness from the food at the party.

25     During the plaintiff's conversation with his supervisor,
26 Donald Mack, Mr. Mack told the plaintiff that Scott Sebastian,
27
28 Third Amended Complaint            -5-

1  Director of Operations, told him that the plaintiff came to work
2  drunk and that he must give the plaintiff a verbal warning.
3  Further, Donald Mack told the plaintiff that Scott Sebastian told
4  him that Calvin May, Resident Services Driver, told him that the
5  plaintiff was drunk and smelling like alcohol.  The plaintiff
6  told Mr. Mack that he was not drunk and that he went home because
7  his stomach was severely painful and he had diarrhea.  Supervisor
8  Mack told plaintiff that he would have to do an investigation
9  upon his return from being out of town from Friday, November 11,
10 2005 to Tuesday, November 15, 2005.

11      The plaintiff returned to work on November 11, 2005,
12 punching in at 7:00 a.m. and started cleaning up the restroom,
13 the office, lobby, and windows.  He observed Scott Sebastian, who
14 was in early that morning.  He spoke to Mr. Sebastian and Mr.
15 Sebastian did not speak.  Mr. Sebastian kept walking straight
16 past plaintiff and went into his office.  He came back out of his
17 office and began going into the restroom, the lobby and all of
18 the offices.  Calvin May and Greg, the security officer were
19 sitting at the desk.  At that instance plaintiff received a
20 telephone call from his supervisor, Mr. Mack.  Mr. Mack inquired
21 how plaintiff was feeling.  The plaintiff told Mr. Mack that he
22 was all right.  Mr. Mack asked if Scott Sebastian had said
23 anything to plaintiff and plaintiff replied that he had not.
24 Thereafter, Mr. Mack advised plaintiff that he wanted to see him
25 on November 15, 2005.  Very shortly thereafter, Scott Sebastian
26 asked plaintiff if he had heard from his supervisor and plaintiff
27
28 Third Amended Complaint          -6-

1  told him that he had just now hung up the telephone from talking

2  to him.  He questioned plaintiff as to whether or not plaintiff

3  had spoken to Mr. Mack before now, and plaintiff told him that he

4  had not.  Mr. Sebastian requested plaintiff come into his office

5  as he wanted to talk to plaintiff.  Plaintiff followed him into

6  his office and Mr. Sabastian closed the door and told plaintiff

7  to sit down and tell him what happened; why plaintiff did not

8  come to work and why plaintiff left work early, the day before.

9        The plaintiff told Mr. Sebastian he came to work but left

10  because of severe stomach pain and diarrhea that was brought on

11  by the food he had eaten at the senior citizen party on November

12  9, 2005.  Mr. Sebastian said to plaintiff, "You were drunk and

13  you're drunk now.  I smell alcohol on you now and throughout the

14  building.  One of your co-workers told me that you came to work

15  drunk; and you're still drunk and I want to help you."  Mr.

16  Sebastian spoke loud enough so that other people could hear him.

17  Plaintiff told Mr. Sebastian that he was not drunk and had not

18  been drinking any alcohol.  Mr. Sebastian continued telling

19  plaintiff that plaintiff was sick and that he wanted to help

20  plaintiff.  He asked plaintiff to fill out some forms and to sign

21  them and then go and take a breath test for alcohol.  Mr.

22  Sebastian persisted in telling plaintiff that plaintiff was sick

23  and that he wanted to help plaintiff and that he wanted plaintiff

24  to fill out and sign these forms and go and take a breath test

25  for alcohol at Concentra Medical Center.  He told plaintiff that

26  he would make the appointment for plaintiff.  Plaintiff told Mr.

27

28  Third Amended Complaint                -7-

1 Sebastian that he would not sign the forms because he was not
2 drunk and that he had not been drinking alcohol.  Mr. Sebastian
3 threatened to fire plaintiff or take other disciplinary action if
4 plaintiff refused his orders.  Plaintiff asked to speak to Sid
5 Ward, Director of Facilities and Executive Director Reginald
6 Lyles.  Mr. Sebastian stated to plaintiff that he did not care
7 who plaintiff spoke to.  Plaintiff made no further protest and
8 followed Mr. Sebastian out of his office.  Plaintiff is informed
9 and believes and thereon alleges that third persons heard and
10 understood Scott Sebastian state that plaintiff was drunk and
11 that plaintiff was sick and needed help.  Plaintiff's co-workers
12 were outside of Mr. Sebastian's office and were looking at
13 plaintiff with their heads bowed down.  Plaintiff was embarrassed
14 and felt his character had been impugned and violated and his
15 intelligence insulted.

16 Scott Sebastian tried to contact Concentra Medical Center
17 but got no answer.  Plaintiff implored him to stop accusing him
18 of being drunk because he would never come to work drunk and
19 would never think that Mr. Sebastian would expect that of him.
20 Mr. Sebastian stood quietly looking at plaintiff.  Then, breaking
21 the silence he said I have my watch dogs looking out for me when
22 I am not here.  He then picked up the telephone again in an
23 attempt to reach Concentra Medical Center.  He told them that he
24 wanted a breath test for alcohol administered to plaintiff and
25 they asked him for what reason.  He replied that it was
26 reasonable suspicion.  He did not have a reasonable suspicion
27
28 Third Amended Complaint          -8-

1 | that plaintiff had been drinking alcohol at that time.

2 | Plaintiff left the area and went back down to the basement

3 | to talk to Brad Freeman, Alexander Harrison, Rita Johnson, and

4 | Kathy A. Smith.  All them saw how devastated plaintiff was and

5 | felt his anger and disgust at Scott Sebastian's accusation that

6 | he was drunk and smelled of alcohol and that was the reason he

7 | made an appointment for alcohol testing at Concentra medical

8 | Center for plaintiff.

9 | Between 8:30 a.m. and 8:45 a.m., plaintiff left Grand Lake

10 | Gardens and went over to Piedmont Gardens to talk to Sid Ward,

11 | Director of Facilities.  He was acquainted with his secretary,

12 | Facility Assistant, Lisa Sandeford, and she informed plaintiff

13 | that Mr. Ward was on vacation.  Plaintiff gave her a friendly hug

14 | and asked her if she smelled any alcohol on him or his breath.

15 | She said she did not smell any alcohol.  Plaintiff then told her

16 | that was the reason he was there to speak to Mr. Ward because

17 | Scott Sebastian accused him of being drunk and smelling of

18 | alcohol.  Plaintiff told her about the appointment made for him

19 | at Concentra medical Center.  Plaintiff felt Mr. Ward needed to

20 | know about this matter as well as Reginald Lyles.  The secretary

21 | said that Scott was always doing something wrong and proceeded to

22 | contact Reginald Lyles through his secretary so that plaintiff

23 | could consult him about this matter.

24 | Plaintiff waited about ten minutes for Reginald Lyles,

25 | Executive Director of American Baptist Homes of the West

26 | Corporation, aka American Baptist Homes of the West, aka Grand

27 |

28 | Third Amended Complaint                    -9-

1  Lake Gardens.  Mr. Lyles came out of his office and greeted

2  plaintiff with a handshake.  Plaintiff explained that Scott

3  Sebastian had made an appointment for plaintiff to go to

4  Concentra Medical Center to have an alcohol breath test done

5  because he said that plaintiff was drunk and that he smelled

6  alcohol on plaintiff.  The plaintiff explained to Mr. Lyles all

7  of the facts alleged herein.  Mr. Lyles then told plaintiff to go

8  and take the alcohol breath test.  When Mr. Lyles told plaintiff

9  to take the alcohol breath test plaintiff reasonably believed he

10  had to take the test in order to maintain his job.

11      **13)**  The plaintiff took the breathalyser alcohol test,

12  against his will because he reasonably believed his employer was

13  coercing him and threatening to terminate his employment if he

14  did not take the breathalyser test.  The breathalyser test

15  results confirmed that plaintiff had not been drinking alcohol.

16      **14)**  Scott Sebastian is not plaintiff's immediate

17  supervisor.  He falsely accused plaintiff of being drunk on the

18  job, with malice, because of plaintiff's race.  He routinely

19  seeks plaintiff out to tell plaintiff to clean up the walls,

20  vacuum the dining room much better than the way plaintiff has

21  been doing it, etc.; plaintiff tells him all right.  Mr.

22  Sebastian routinely looks at plaintiff with a smirk and tells

23  plaintiff to mop out the restroom before plaintiff goes home.

24  Mr. Sebastian directed plaintiff's supervisor to "write plaintiff

25  up" every time plaintiff takes off from work to go to the doctor.

26  Mr. Sebastian directed plaintiff's supervisor to require

27

28  Third Amended Complaint              -10-

1  plaintiff to bring a doctors note verifying that plaintiff went

2  to the doctor, whenever plaintiff requests time off work for

3  illness and or medical appointments.

4      **15)** Scott Sebastian looks at me with a smile and tells me to

5  mop out the restroom before I go home.  Every time I take off

6  from work to go to the doctor, he requests my supervisor to write

7  me up.  He seeks me out to tell me to clean up the walls, vacuum

8  the dining room much better than the way I have been doing it,

9  etc., I tell him all right.  The plaintiff is informed and

10  believes and thereon alleges that Scott Sebastian has asked some

11  of the plaintiff's co-workers to say that the plaintiff was drunk

12  and smelled like alcohol on the job on the day that defendant

13  Sebastian required plaintiff to take a breathalyser alcohol test,

14  when he knew plaintiff had not been drinking alcohol and that

15  plaintiff did not smell of alcohol.

16      **16)** ABHOW's policy and practice is to not require its non

17  African American employee(s) to bring a doctors note when they

18  are absence from work for medical reasons until after the

19  employee is off work for more than three consecutive days.

20  However ABHOW required plaintiff to bring a doctors note whenever

21  he requested time off work for medical reasons.

22      **17)** Mr. Lyles knew or should have known that plaintiff was

23  not drunk and that plaintiff did not smell of alcohol, when he

24  told plaintiff to take the alcohol breath test.  Mr. Lyles did

25  not reasonably investigate the accusation that plaintiff had come

26  to work drunk before ordering plaintiff to take the alcohol

27

28  Third Amended Complaint          -11-

1  breath test.

2      **18)**   Defendant May falsely accused plaintiff of being drunk
3  on the job.  Defendant May acted with malice toward plaintiff.
4  He knew his statement about plaintiff was false when made.  He
5  knew he did not have sufficient information to know if plaintiff
6  was "drunk on the job" when he made the statement about
7  plaintiff.  He did not have any reasonable basis to believe that
8  plaintiff was drunk at the time he made the statement about
9  plaintiff.  He made the false statement about plaintiff
10 arbitrarily, for the purpose of causing damage to plaintiff's
11 reputation and or to cause plaintiff to suffer emotional distress
12 and or severe emotional distress.

13     **19)**   Defendant May's false statement about plaintiff
14 proximately caused damage to plaintiff's reputation, including
15 his reputation on the job for being a good employee, for being a
16 sober employee and a reliable employee.

17     **20)**   Defendant May's false statement about plaintiff
18 proximately caused plaintiff to suffer emotional distress, and or
19 severe emotional distress, lose income and to incur medical
20 expenses.

21     **21)**   Defendant Scott Sebastian falsely accused plaintiff of
22 being drunk on the job, and of being sick and in need of help.
23 Defendant Sebastian acted with malice toward plaintiff because he
24 knew his statements about plaintiff were false when made.  He
25 knew he did not have sufficient information to know if plaintiff
26 was "drunk on the job" or if "plaintiff was sick and in need of

27

28 Third Amended Complaint          -12-

1  help", when he made the statement about plaintiff.  He did not

2  have any reasonable basis to believe that plaintiff was "drunk on

3  the job" at the time he made the statement about plaintiff.  He

4  did not have any reasonable basis to believe that plaintiff was

5  "sick and in need of help", at the time he made the statement

6  about plaintiff.  He made the false statements about plaintiff

7  arbitrarily, because of plaintiff's race, and or for the purpose

8  of causing damage to plaintiff's reputation and or to cause

9  plaintiff to suffer emotional distress and or severe emotional

10  distress.

11      **22)**  Defendant Sebastian's false statements about plaintiff

12  proximately caused damage to plaintiff's reputation, including

13  damage to plaintiffs reputation on his job for being a good

14  employee, for being a sober employee and being a reliable

15  employee on his job.

16      **23)**  Defendant Sebastian's false statements about plaintiff

17  proximately caused plaintiff to suffer emotional distress, and or

18  severe emotional distress, to lose income and to incur medical

19  expenses.

20      **24)**  Mr. Sebastian and Mr. Lyles, and each of them, in doing

21  the acts complained about herein and or failing to act as alleged

22  herein, treated plaintiff differently than it treated its non

23  African American employees.

24      **25)**  ABHOW's policy and past practice and policy at the time

25  of the alleged incident was to require its non African American

26  employees to submit to alcohol testing only if there was a

27

28  Third Amended Complaint          -13-

1 reasonable suspicion that the employee was under the influence of
2 alcohol.  The employer did not randomly test its non African
3 American employees for alcohol consumption.  However, the
4 plaintiff's employer singled plaintiff out for random alcohol
5 testing, without any reasonable suspicion that plaintiff was
6 under the influence of alcohol or that plaintiff had been
7 drinking alcohol, because of plaintiff's race, African American.

8     **26)**   ABHOW is liable for the conduct of Sebastian and or
9 Lyles because each of them were managerial employees of ABHOW,
10 acting in the course and scope of such employment or agency when
11 doing the acts and failing to act as alleged in the amended
12 complaint.

13     **27)**   ABHOW failed to investigate plaintiff's complaint about
14 Sebastian's unlawful conduct and failed to take all reasonable
15 action to stop Sebastian from discriminating and or harassing
16 him.

17     **28)**   Plaintiff hereby demands a jury trial.

18 <div align="center">**FIRST CAUSE OF ACTION**
**DEFAMATION OF CHARACTER BY CALVIN MAY**</div>
19

20     **29)**   Plaintiff hereby incorporates each allegation in
paragraphs 1 through 28 into this First Cause of Action.
21

22     **30)**   Plaintiff is informed and believes and thereon alleges
23 that Calvin May published to a third person(s) that plaintiff
24 came to work drunk and or that plaintiff was at work while drunk
from alcohol.
25

26     **31)**   Calvin May's statement published about plaintiff was
27 unprivileged and false when defendant May published the statement

28 Third Amended Complaint         -14-

1 | about plaintiff.

2 | **32)** Calvin May published the false statement about
3 | plaintiff maliciously. Defendant May knew or should have known
4 | his statement was false when he published the statement about
5 | plaintiff. He knew or should have known that he did not have
6 | sufficient information to know if the statement was true or false
7 | when published the statement about plaintiff. He published the
8 | statement about plaintiff with a reckless disregard to whether
9 | the statement was true or false.

10 | **33)** Plaintiff is informed and believes and thereon alleges
11 | that defendant May published the false statement about plaintiff
12 | because of his ill will and toward plaintiff.

13 | **34)** Mr. May's false statement about plaintiff proximately
14 | caused damage to plaintiff's reputation in general and to
15 | plaintiff's reputation in doing his job, caused plaintiff to
16 | suffer injury, including emotional distress and or severe
17 | emotional distress, and to incur medical expenses; and is
18 | reasonably certain to cause plaintiff to suffer damage to his
19 | reputation in the future, suffer emotional distress and or severe
20 | emotional distress in the future and to lose income and job
21 | opportunity in the future and to incur medical expenses in the
22 | future.

23 | **35)** Mr. May's false statement about plaintiff proximately
24 | caused plaintiff to seek medical advice and or counseling for
25 | mental and or emotional distress, and to incur medical expenses
26 | and or expenses for mental and or emotional counseling.

27 |

28 | Third Amended Complaint          -15-

1    **36)**   Defendant May's acts alleged herein were willful,

2   wanton, malicious, and oppressive in that defendant(s) acted with

3   a reckless disregard for the truth and or for plaintiff's rights.

4   Motivated by ill will toward plaintiff.   Defendant's acts were

5   despicable and justify the award of punitive damages.

6                           **SECOND CAUSE OF ACTION**
        **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY CALVIN MAY**
7
        **37)**   Plaintiff hereby incorporates each allegation in
8
    paragraphs 1 through 35, 88-92, into this Second Cause of Action.
9
        **38)**   Calvin May in doing the acts complained about herein,
10
    acted intentionally for the purpose of causing plaintiff to
11
    suffer emotional distress and or severe emotional distress.
12
        **39)**   Calvin May's conduct and or publishing false statements
13
    about plaintiff as alleged herein is outrageous.
14
        **40)**   Calvin May's outrageous conduct alleged herein
15
    proximately caused plaintiff to suffer severe emotional distress
16
    and to incur medical expenses.
17
                            **THIRD CAUSE OF ACTION**
18          **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY CALVIN MAY**

19      **41)**   Plaintiff hereby incorporates each allegation in

20   paragraphs 1 through 35, 88-92, into this Third Cause of Action.

21      **42)**   Defendant, May was negligent in doing the acts alleged

22   herein.

23      **43)**   Defendant, May's negligent conduct proximately caused

24   plaintiff to suffer serious emotional distress, to incur medical

25   expenses and to lose income.

26                          **FOURTH CAUSE OF ACTION**
         **DEFAMATION OF CHARACTER BY SCOTT SEBASTIAN,**
27

28   Third Amended Complaint            -16-

**AMERICAN BAPTIST HOMES OF THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST CORPORATION, AKA GRAND LAKE GARDENS**

**44)** Plaintiff hereby incorporates each allegation in paragraphs 1 through 35, into this Fourth Cause of Action.

**45)** Plaintiff is informed and believes and thereon alleges that Scott Sebastian published to a third person(s) that plaintiff came to work drunk and or that plaintiff was at work while drunk from alcohol, and that plaintiff was sick and needed help.

**46)** Plaintiff is informed and believes and thereon alleges that Scott Sebastian's false statements about plaintiff were heard and understood by third persons when published by Scott Sebastian.

**47)** Defendant Sebastian's statement about plaintiff was false and unprivileged when he published the statement.

**48)** Defendant Sebastian published the false statement about plaintiff maliciously because of ill will and or hatred toward plaintiff. Defendant Sebastian knew or should have known the statement was false when he published the statements about plaintiff. He knew or should have known that he did not have sufficient information to know if the statement was true or false when he published the statement about plaintiff. He published the statement about plaintiff with a reckless disregard to whether the statement was true or false.

**49)** Defendant Sebastian when he published the false information about plaintiff did so for the purpose of harassing plaintiff and causing plaintiff to suffer emotional distress and

1  damage to his reputation.

2      **50)**  Plaintiff is informed and believes and thereon alleges

3  that defendant Sebastian's conduct alleged herein was motivated

4  by racial bias and discrimination against plaintiff because

5  plaintiff is an African American man.

6      **51)** Defendant, Sebastian has harassed continuously harassed

7  plaintiff on the job because of plaintiff's race, by doing the

8  acts alleged herein.

9      **52)**  Defendant, Sebastian's conduct, including his false

10  statements about plaintiff caused a hostile work environment for

11  plaintiff.

12      **53)**  Defendant Sebastian's false unprivileged statement

13  about plaintiff proximately caused damage to plaintiff's

14  reputation on the job, proximately caused plaintiff to suffer

15  emotional distress, and severe emotional distress, caused

16  plaintiff to seek medical advice and or counseling for mental and

17  caused plaintiff to incur medical/hospital expenses and or

18  expenses for mental and or emotional counseling.  It is

19  reasonably certain that plaintiff will suffer damage to his

20  reputation in the future, suffer emotional distress and or severe

21  emotional distress in the future and to lose income and job

22  opportunity in the future and to incur medical expenses in the

23  future proximately caused by defendant Sebastian's conduct

24  alleged herein.

25      **54)**  Defendant's acts were willful, wanton, malicious, and

26  oppressive in that defendant(s) acted with a reckless disregard

27

28  Third Amended Complaint          -18-

1  for the truth and or for plaintiff's rights.  Defendant(s)
2  published the false information about plaintiff for the purpose
3  of harassing plaintiff and causing plaintiff emotional distress.
4  Defendant's acts were despicable and justify the award of
5  punitive damages.

6      **55)**  Plaintiff is informed and believes and thereon alleges
7  that American Baptist Homes of the West Corporation is liable to
8  plaintiff for the conduct of Scott Sebastian alleged herein
9  because Scott Sebastian in doing said acts was acting as a
10 managerial employee on behalf of American Baptist Homes of the
11 West Corporation, aka American Baptist Homes of the West, aka
12 Grand Lake Gardens.

13     **56)**  American Baptist Homes of the West, and or Grand Lake
14 Gardens knew or should have known that Scott Sebastian was
15 harassing plaintiff because of plaintiff's race, but it failed to
16 take all reasonable action to stop him from harassing plaintiff.
17 Said defendant ratified defendant, Sebastian's harassing conduct.

18                    **FIFTH CAUSE OF ACTION**
   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY SCOTT SEBASTIAN**
19 **AMERICAN BAPTIST HOMES OF THE WEST CORPORATION, aka AMERICAN**
   **BAPTIST HOMES OF THE WEST, aka GRAND LAKE GARDENS**
20
21     **57)**  Plaintiff hereby incorporates each allegation in
22 paragraphs 1 through 55, 88-92, into this Fifth Cause of Action.

23     **58)**  Scott Sebastian in doing the acts complained about
24 herein, acted intentionally for the purpose of causing plaintiff
   to suffer emotional distress and or severe emotional distress.
25
26     **59)**  Plaintiff is informed and believes and thereon alleges
27 defendant, Sebastian in doing the acts alleged herein was

28 Third Amended Complaint          -19-

1  motivated by ill will and or hatred toward plaintiff and or
2  because of plaintiff's race.

3      **60)**  Defendant Sebastian's conduct alleged herein is
4  outrageous.

5      **61)**  Defendant Sebastian's outrageous conduct alleged herein
6  proximately caused plaintiff to suffer severe emotional distress.
7  to incur medical expenses and to lose income.

8      **62)**  Plaintiff is informed and believes and thereon alleges
9  that American Baptist Homes of the West Corporation, aka American
10 Baptist Homes of the West, aka Grand Lake Gardens is liable to
11 plaintiff for the conduct of Scott Sebastian alleged herein
12 because Scott Sebastian in doing said acts was acting as a
13 managerial employee on behalf of American Baptist Homes of the
14 West Corporation, aka American Baptist Homes of the West, aka
15 Grand Lake Gardens.  Also, said defendants knew or should have
16 known that defendant Sebastian was harassing plaintiff because of
17 plaintiff's race and failed to take all reasonable action to stop
18 the harassment from occurring.

19                    **SIXTH CAUSE OF ACTION**
                **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AMERICAN**
20              **BAPTIST HOMES OF THE WEST CORPORATION, aka AMERICAN**
                **BAPTIST HOMES OF THE WEST, aka GRAND LAKE GARDENS**
21
22      **63)**  Plaintiff hereby incorporates each allegation in
        paragraphs 1 through 61, 88-92, into this Sixth Cause of Action.
23
24      **64)**  Reginald Lyles on or about November 10 forced plaintiff
        to submit to a alcohol test, arbitrarily, without any reasonable
25
        cause to suspect plaintiff had been drinking alcohol and or that
26
        plaintiff was under the influence of alcohol, and against
27

28  Third Amended Complaint          -20-

1  plaintiff's will.

2  **65)**  Plaintiff is informed and believes and thereon alleges

3  that Reginald Lyles in doing the acts complained about herein,

4  acted intentionally for the purpose of causing plaintiff to

5  suffer emotional distress.

6  **66)**  Reginald Lyles' conduct alleged herein is outrageous.

7  **67)**  Reginald Lyles' outrageous conduct alleged herein

8  proximately caused plaintiff to suffer severe emotional distress.

9  **68)**  Plaintiff is informed and believes and thereon alleges

10  that American Baptist Homes of the West Corporation, aka American

11  Baptist Homes of the West, aka Grand Lake Gardens is liable to

12  plaintiff for the conduct of Reginald Lyles, alleged herein

13  because Reginald Lyles in doing said acts was acting as a

14  managerial employee on behalf of American Baptist Homes of the

15  West Corporation, aka American Baptist Homes of the West, aka

16  Grand Lake Gardens.

17                    **SEVENTH CAUSE OF ACTION**
          **HARASSMENT AGAINST SCOTT SEBASTIAN BASED ON RACE IN**
18           **VIOLATION OF GOVERNMENT CODE SECTION 12940 ET SEQ.**

19  **69)**  Plaintiff hereby incorporates each allegation in

20  paragraphs 1 through 61, 88-92, into this Ninth Cause of Action.

21  **70)**  Scott Sebastian in doing the acts and failing to act as

22  alleged herein was acting as a managerial employee of American

23  Baptist Homes of the West, aka American Baptist Homes of the West

24  Corporation, aka Grand Lake Gardens.

25  **71)**  Defendant Sebastian's conduct alleged herein was based

26  on race and was severe or pervasive such that it subjected

27

28  Third Amended Complaint            -21-

1  plaintiff to a hostile work environment for plaintiff.

2      **72)**  Prior to filing his action herein Plaintiff filed a

3  complaint against Scott Sebastian for harassment based on race

4  with DFEH, within one year of defendant Sebastian's wrongful

5  conduct.

6      **73)**  Plaintiff received a Right To Sue Letter from DFEH.

7  Thereafter, he filed his complaint herein with the court within

8  one year from the date of his receipt of the DFEH Right To Sue

9  Letter.  A copy of plaintiff's DFEH complaint against Scott

10  Sebastian, and a copy of the DFEH Right To Sue Letter, and a copy

11  of a letter to defendant Sebastian, was mailed to him by

12  certified mail return receipt requested.

13      **74)**  Defendant Sebastian's conduct proximately caused

14  plaintiff to incur attorney fees.

15                    **EIGHTH CAUSE OF ACTION**
       **HARASSMENT AGAINST AMERICAN BAPTIST HOMES OF**
16     **THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST**
       **CORPORATION, AKA GRAND LAKE GARDENS IN VIOLATION OF**
17     **GOVERNMENT CODE SECTION 12940 ET SEQ.**

18      **75)**  Plaintiff hereby incorporates each allegation in

19  paragraphs 1 through 73, 88-92, into this Eighth Cause of Action.

20      **76)**  Defendant, American Baptist Homes of the West, aka

21  American Baptist of the Homes West Corporation, aka Grand Lake

22  Gardens' conduct alleged herein was based on race and was severe

23  or pervasive such that it subjected plaintiff to a hostile work

24  environment for plaintiff.

25      **77)**  Plaintiff received a Right To Sue Letter from EEOC &

26  from DFEH.  Thereafter, he filed his complaint herein with the

27

28  Third Amended Complaint          -22-

1  court within ninety days of receipt of the EEOC Right To Sue

2  Letter and within one year from the date of his receipt of the

3  DFEH Right To Sue Letter.

4      **78)**  Defendant American Baptist homes of the West, aka

5  American Baptist Homes of the West Corporation, aka Grand Lake

6  Gardens in doing the acts alleged herein and failing to act as

7  alleged herein violated California Government Code section 12940,

8  et seq.

9      **79)**  Said defendant is liable for violation of Government

10  Code section 12940, et seq. derivatively for Scott Sebastian's

11  alleged conduct, and or derivatively for Reginald Lyles' alleged

12  conduct and or for its failure to act reasonable action to stop

13  the harassment and or discrimination against plaintiff from

14  occurring.

15      **80)**  Prior to filing his action herein Plaintiff filed a

16  complaint for employment discrimination/harassment based on race

17  against American Baptist Homes of the West, aka American Baptist

18  Homes Corporation, aka Grand Lake Gardens with Equal Opportunity

19  Commission ("EEOC") and DFEH.  A copy of the EEOC & DFEH

20  complaint and Right To Sue Letter from EEOC and Right To Sue

21  Letter from DFEH, and letter to each said defendant notifying

22  them of the Notice of case closure, was mailed to them by

23  certified mail return receipt requested.

24      **81)**  Defendant's acts were willful, wanton, malicious, and

25  oppressive in that defendant(s) acted with a reckless disregard

26  for the truth and or for plaintiff's rights.  Defendant(s)

27  published the false information about plaintiff for the purpose

28  Third Amended Complaint            -23-

1  of harassing plaintiff and causing plaintiff emotional distress.

2  Defendant's acts were despicable and justify the award of

3  punitive damages.

4      **82)**   Defendant American Baptist Homes of the West, aka

5  American Baptist Homes of the West Corporation, aka Grand Lake

6  Gardens conduct proximately caused plaintiff to incur attorney

7  fees.

8                      **NINTH CAUSE OF ACTION**
                **DISCRIMINATION CLAIM AGAINST AMERICAN BAPTIST HOMES OF**
9               **THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST INC.,**
                **AKA GRAND LAKE GARDENS**
10

11     **83)**   Plaintiff hereby incorporates each allegation in

12  paragraphs 1 through 82, 88-92, into this Ninth Cause of Action.

13     **84)**   Defendant American Baptist Homes of the West, aka

14  American Baptist Homes of the West Corporation, aka Grand Lake

15  Gardens, in doing the acts alleged herein and failing to act as

16  alleged herein discriminated against plaintiff in the terms and

17  conditions of plaintiff's employment, based on plaintiff's race.

18     **85)**   Said defendant, at all times mentioned herein had a

19  policy of requiring its non African American employees to submit

20  to breathalyser testing for alcohol, only if said defendant had a

21  reasonable suspicion that its employee was under the influence of

22  alcohol.

23     **86)**   In doing the acts and failing to act as alleged herein,

24  said defendant singled plaintiff out because of plaintiff's race

25  and required plaintiff to submit to an breathalyser test for

26  alcohol, without any reasonable suspicion that plaintiff was

27  under the influence of alcohol.  Said defendant, randomly tested

28  Third Amended Complaint          -24-

plaintiff for alcohol consumption but only tested its non African

American employees if it had a reasonable suspicion of alcohol

consumption.

<center>**TENTH CAUSE OF ACTION**
**DISCRIMINATION/HARASSMENT CLAIM AGAINST AMERICAN**
**BAPTIST HOMES OF THE WEST, AKA AMERICAN BAPTIST HOMES**
**OF THE WEST INC., AKA GRAND LAKE GARDENS**</center>

**87)** Plaintiff hereby incorporates each allegation in

paragraphs 1 through 86, into this Tenth Cause of Action.

**88)** Prior to filing his action herein Plaintiff filed a

complaint for employment harassment against Calvin May with the

DFEH. Plaintiff received a Right To Sue Letter from DFEH and

filed his complaint herein against said defendants within one

year from the date the DFEH Right To Sue Letter was issued. A

copy of his DFEH Complaint and Right To Sue Letter is marked

Exhibit A attached hereto and incorporated herein by this

reference.

**89)** Prior to filing his action herein Plaintiff filed a

complaint for employment harassment against Scott Sebastian with

the DFEH. Plaintiff received a Right To Sue Letter from DFEH and

filed his complaint herein against said defendants within one

year from the date the DFEH Right To Sue Letter was issued. A

copy of his DFEH Complaint and Right To Sue Letter is marked

Exhibit B attached hereto and incorporated herein by this

reference.

**90)** Prior to filing his action herein Plaintiff filed a

complaint for employment discrimination/harassment based on race

and or age against American Baptist Homes of the West, aka

1  American Baptist Homes Corporation, aka Grand Lake Gardens with

2  Equal Opportunity Commission ("EEOC") and DFEH.  A copy of the

3  EEOC & DFEH complaint and Right To Sue Letter from EEOC and Right

4  To Sue Letter from DFEH, and letter to each said defendant

5  notifying them of the Notice of case closure, which was mailed to

6  them by certified mail return receipt requested is marked Exhibit

7  C, attached hereto and incorporated herein by this reference.

8      **91)**  Plaintiff's employer, American Baptist Homes of the

9  West and or Grand Lake Gardens knew that defendant May was

10  harassing plaintiff because of plaintiff's race and or age by

11  doing the acts alleged herein, but failed to take all reasonable

12  action to stop the discrimination and or harassment from

13  occurring.

14      **92)**  The conduct of defendants, and each of them was

15  motivated by racial animus and or age, and or perceived

16  disability.

17      **93)**  Defendants conduct violated Government Code Section

18  12940, et seq.

19      **94)**  Defendants' conduct as alleged herein proximately

20  caused plaintiff to suffer injury and damages, including but not

21  limited to emotional distress, damage to his reputation,

22  humiliation, embarrassment, and caused him seek medical advice

23  and or counseling for mental and or emotional distress, and to

24  incur medical expenses and or expenses for mental and or

25  emotional counseling.

26      **95)**  Defendant May's and or defendant Sebastian's conduct

27  proximately caused plaintiff to incur attorney fees.

28  Third Amended Complaint          -26-

1    **96)**  Defendants and each of them in doing the acts and

2   failing to act as alleged herein were willful, wanton, malicious,

3   and oppressive in that defendant(s) acted with a reckless

4   disregard for the truth and or for plaintiff's rights. Motivated

5   by ill will toward plaintiff.  Defendant May published the false

6   information about plaintiff for the purpose of harassing

7   plaintiff and causing plaintiff emotional distress.  Defendant's

8   acts were despicable and justify the award of punitive damages.

9                    **ELEVENTH CAUSE OF ACTION**
        **DISCRIMINATION/HARASSMENT AGAINST AMERICAN BAPTIST**
10      **HOMES OF THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST**
        **CORPORATION, AKA GRAND LAKE GARDENS, VIOLATION OF TITLE VII**
11      **OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED**

12    **97)**  Plaintiff hereby incorporates each allegation in

13   paragraphs 1 through 100 into this Eleventh Cause of Action.

14    **98)**  Defendant's conduct alleged herein violates Title VII

15   of the Civil Rights Act of 1964, as amended.

16    **99)**  Plaintiff is informed and believes and thereon alleges

17   that American Baptist Homes of the West, aka American Baptist

18   Homes of the West Corporation, and or Grand Lake Gardens is

19   liable to plaintiff for the conduct of Scott Sebastian alleged

20   herein because Scott Sebastian in doing said acts was acting as a

21   managerial employee on behalf of American Baptist Homes of the

22   West, aka American Baptist Homes of the West Corporation, and or

23   Grand Lake Gardens.

24    **Wherefore plaintiff prays for judgment as follows:**

25    1. General damages, past and future, according to proof;

26    2. Economic damages, past and future, according to proof;

27    3. Medical expenses, past and future;

28   Third Amended Complaint          -27-

1      4. Reasonable attorney fee;

2      5. For such further and other relief as the court deems

3    just.

4    Dated: October 21, 2007          LAW OFFICES OF MICHAEL C. COHEN

5

6                               By: _____

7                                   MICHAEL C. COHEN,
                                    Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Third Amended Complaint            -28-

# LAW OFFICES OF MICHAEL C. COHEN

## PROFESSIONAL CORPORATION

*1814 Franklin Street, Suite 900*
*Oakland, California 94612*
*Telephone: (510) 832-6436*
*Facsimile: (510) 832-6439*

---

*Michael C. Cohen, Esq.*

*Sherry Abrams, Esq.*

December 27, 2006

Calvin May
Grand Lake Gardens
401 Santa Clara Street
Oakland, CA 94610

Certified Return Receipt

> Re: Client: William J. Chapple
> Subject: Employment Discrimination/Harassment Complaint against
> Calvin May
> E200607M0586-01-apc

Dear Mr. May:

My office is representing William J. Chapple in his employment harassment claim against you for harassing him on the job. Enclosed is a copy Mr. Chapple's complaint that was filed with the Department of Fair Employment and Housing, and a copy of the department's Notice of Case Closure.

Very truly yours,

LAW OFFICES OF MICHAEL C. COHEN

Michael C. Cohen

Exhibit A

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

EMPLOYMENT * * *



DFEH # E-200607-M-0586

DFEH USE ONL

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)                                    TELEPHONE

William J. Chapple

ADDRESS

2870 Adeline Street #217

CITY/STATE/ZIP                                                    COUNTY
Berkeley, CA 94703                           Alameda

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTIC COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME                                                              TELEPHONE

Calvin May

ADDRESS

Grand Lake Gardens
401 Santa Clara, CA 94610

CITY/STATE/ZIP                                                    COUNTY
Oakland, CA 94610

NO. OF EMPLOYEES/MEMBERS (if known)      DATE MOST RECENT OR CONTINUING DISCRIMINATION
                                          TOOK PLACE (month, day, and year)     11/11/05
unknown

THE PARTICULARS ARE:

On 11/10/05 & 11/11/05 was

| | |
|---|---|
| ___ fired | ___ denied employment | ___ denied fam |
| ___ laid off | ___ denied promotion | ___ denied preg |
| ___ demoted | ___ denied transfer | ___ denied equa |
| X harassed | ___ denied accommodation | ___ denied right |
| ___ genetic characteristics testing | ___ impermissible non-job-related inquiry | ___ denied preg |
| ___ forced to quit | ___ other (specify) _____ | |

by  Calvin May, resident services driver

Name of Person        Job Title (supervisor/manager/personnel director/etc.)

because of my:

| | | | | |
|---|---|---|---|---|
| ___ sex | ___ national origin/ancestry | ___ physical disability | ___ cancer | ___ (Circle one) file |
| X age | ___ marital status | ___ mental disability | ___ genetic characteristic | protesting; participatir |
| ___ religion | ___ sexual orientation | | | investigation (retaliatio |
| X race/color | ___ association | ___ other (specify) _____ | | |

the reason given by  Mr. May told client's supervisor at client's job, that Mr. Chapple was drunk on the job,  He acted with malice.

Was because of [please state what you believe to be reason(s)]

Mr. May maliciously published false statements about Mr. Chapple to Mr. Chapple's employer to harass Mr Chapple beca of Mr. Chapple's race and or age.  see attached declaration which is incorporated herein.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-su visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminat whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not p reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge excepting to matters stated on my informat belief, and as to those matters I believe it to be true.

Dated  11/3/06

At  Oakland, CA
City

*[signature] William J. Chapple*

COMPLAINANT'S SIGNATURE

RECEIVED

NOV 03 2006

DATE FILED: November 3, 2006

DFEH-300-03 (ONES)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

Department of Fair
Employment and Housing
Oakland District Office

STATE OF CAL

 

*EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE*
*BY GRAND LAKE GARDENS*, parent company, *AMERICAN BAPTIST HOME OF THE WES*
*CORPORATION*

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

 

## CHRONICLE OF EVENTS

Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK wi inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I to him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and te him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled



CHRONICLE OF EVENTS

P₂

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen pa
that I had attended and that I got a bad reaction from the food that had been served. However, I came to
work anyway the following morning even after being sick throughout the night with nausea, cramping in
stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I
spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cov
for me until I could feel better. I punched out and went home, returning the next day, November 11, 200;

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office
and told me that one of my co-workers told him that I came to work drunk on the 10ᵗʰ of November and I
smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would
never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the
residents like you and we don't have any problem with you because you have a good job report. But you go
on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some
people have short noses. But you are a good worker, so continue doing good. " I said alright, I'll take the
test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by
RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened.
I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and
opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go and
do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers.
The results were negative, of course, and I requested the staff make four copies of the test results - -one
each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT
SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to
REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to
GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD
MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to
work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along
with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness and
gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply
I told him that in almost six months – May 16 to November 16, 2005, that he, SCOTT, had not noticed my
character. But I told him to go on and do what he has to do and I would do what I have to do and that
ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have
yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to
be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I
was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16,
2005 at 8:00 AM. DONALD MACK radioed me to come to his office. I responded and upon my taking a
seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened.
He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

 

## CHRONICLE OF EVENTS

P:

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way He apologized that the incident happened but he needed to find out what happened by calling this meetin with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said th it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would neve happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

RECEIVED

NOV 0 3 2006

Depa_____ __ __ __r
Employment and Housing
Oakland District Office

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

ARNOLD SCHWAR...

DEPARTMENT OF FAIR EMPLOYMENT & HOUSIN

1515 Clay Street, Suite    , Oakland, CA 94612
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov



November 8, 2006


William J. Chapple
c/o
LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street Ste 900
Oakland, CA 94612

RE:    E200607M0586-01-apc
       CHAPPLE/MAY, CALVIN, As an Individual

Dear William J. Chapple:

## NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 3, 2006 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:    Case File

May Caslvin
Resident Services Driver
GRAND LAKE GARDENS
401 Santa Clara
Oakland, CA  94610

DFEH-200-43 (5/05)



# LAW OFFICES OF MICHAEL C. COHEN

## PROFESSIONAL CORPORATION

*1814 Franklin Street, Suite 900*
*Oakland, California 94612*
*Telephone: (510) 832-6436*
*Facsimile: (510) 832-6439*

---

*Michael C. Cohen, Esq.*

*Sherry Abrams, Esq.*

December 27, 2006

Scott Sebastian
Grand Lake Gardens
401 Santa Clara Street
Oakland, CA 94610

Certified Return Receipt

Re: Client: William J. Chapple
Subject: Employment Discrimination/Harassment Complaint against
Scott Sebastian
E200607M0586-03-apc

Dear Mr. Sebastian:

My office is representing William J. Chapple in his employment harassment claim against you for harassing him on the job. Enclosed is a copy Mr. Chapple's complaint that was filed with the Department of Fair Employment and Housing, and a copy of the department's Notice of Case Closure.

Very truly yours,

LAW OFFICES OF MICHAEL C. COHEN

Michael C. Cohen

Exhibit B

# * * * EMPLOYMENT * * *

COMPLAINT OF DISCRIMINATION UNDER THE PROVIS'  OF THE CALIFORNIA - FAIR EMPLOYMENT AND HOUSING ACT



DFEH # E-200607-M-058(

DFEH USE O|

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)                                    TELEPHO|

William J. Chapple

ADDRESS

2870 Adeline Street #217

CITY/STATE/ZIP                                              COUNTY

Berkeley, CA 94703

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTI COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME                                                      TELEPHON

Scott Sebastian

ADDRESS   Grand Lake Gardens
401 Santa Clara, CA 94610

CITY/STATE/ZIP                                          COUNTY

Oakland, CA 94610                                     Alameda

NO. OF EMPLOYEES/MEMBERS (if known)      DATE MOST RECENT OR CONTINUING DISCRIMINATION   continuing hara
unknown                                  TOOK PLACE (month, day, and year)   11/11/05

THE PARTICULARS ARE  Prior to 11/11/05 and continuing
                     harassment
On    11/11/06        I was     ___ fired              ___ denied employment        ___ denied
                                ___ laid off           ___ denied promotion         ___ denied p
                                ___ demoted            ___ denied transfer          ___ denied a
                                _X_ harassed           ___ denied accommodation     ___ denied ri
                                ___ genetic characteristics testing   ___ impermissible non-job-related inquiry  ___ denied pr
                                ___ forced to quit     ___ other (specify)_____

by   Scott Sebastian, director of Operations
     Name of Person         Job Title (supervisor/manager/personnel director/etc.)

because of my:   ___ sex              ___ national origin/ancestry   ___ physical disability   ___ cancer            ___ (Circle one)
                 _X_ age              ___ marital status             ___ mental disability     ___ genetic characteristics   protesting; particip
                 ___ religion         ___ sexual orientation                                                               investigation (retalia
                 _X_ race/color       ___ association                ___ other (specify)_____

the reason given by   Scott Sebastian said I was drunk while at work; he forced
to take breath alcohol test.   Name of Person and Job Title

Was because of   Mr. Sebastian engaged in continuing course of harassment ac
(please state    against me because of my race and or age.  Please see
what you believe  attached declaration which is incorporated herein.
to be reason's)

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discrimina whichever is earlier.

I have not been coerced into making this request, nor is it made based on fear of retaliation if I do not do so.  I understand it is the Department of Fair Employment and Housing's policy to not process a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my inform belief, and as to those matters I believe it to be true.

Dated   11/3/06                              _____
                                             COMPLAINANT'S SIGNATURE

At   Oakland, CA 94612
     City

RECEIVED
NOV 03 2006
Department of Fair
Employment and Housing
Oakland District Office

DFEH-200-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:
November 3, 2006                          STATE OF C

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE W[
CORPORATION

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial
Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing
employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at th
party at 8:00 PM and left at 10:00 PM.

Early morning , directly after and between midnight and 1:00 AM, I began to feel nauseous and
experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two
Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM., November 10, 2005. I spoke to CALVIN MAY, Resident
Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of
Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them
how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I
spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER
HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They
suggested I go to the doctor. I advised them that I thought it was the food from the party that had my
stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me.
He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then
left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD
MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to
him that it was the food from the birthday party the night before that made me sick. Some time later I
learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT
SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal
warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I
had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY,
Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD
MACK told me that he would have to do an investigation upon his return from being out of town from
Friday, November 11, 2005 to Tuesday, November 15, 2005.

I resumed to work on November 11, 2005, punching in at 7:00 AM and started to clear up the
restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I
spoke to him and he kept walking straight by me into his office. He exited his office and began going into
the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

CHRONICLE OF EVENTS

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK inquired how I was feeling and I told him I was all right. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me c November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and him that I had just now hung up the telephone from talking to him. He questioned me as to whether I i talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol, you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out son forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and th he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medica Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

## CHRONICLE OF EVENTS

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citiz that I had attended and that I got a bad reaction from the food that had been served. However, I car work anyway the following morning even after being sick throughout the night with nausea, crampin stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained tha spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to for me until I could feel better. I punched out and went home, returning the next day, November 11,

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his off and told me that one of my co-workers told him that I came to work drunk on the 10th of November and smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I wo never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and th residents like you and we don't have any problem with you because you have a good job report. But yo on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good." I said alright, I'll take test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results - - one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months – May 16 to November 16, 2005, that he,- SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 A.M. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

## CHRONICLE OF EVENTS

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Fri, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morn. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him whether he could smell alcohol on me and he said no, but that I was drunk as he said no I was not. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that He apologized that the incident happened but he needed to find out what happened by calling this mor with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would not happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Sega and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                          ARNOLD SCHWA

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSIN

1515 Clay Street, Suite ,, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov

November 3, 2006

William J. Chapple
c/o
LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street Ste 900
Oakland, CA 94612

RE:    E200607M0586-03-apc
       CHAPPLE/SEBASTIAN, SCOTT, As an Individual

Dear William J. Chapple:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 3, 2006 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless a case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:    Case File

Scott Sebastian
Director of Operations
GRAND LAKE GARDENS
401 Santa Clara Avenue
Oakland, CA  94610

DFEH-00043 080501

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  William J. Chapple
2670 Adeline Street # 217
Berkeley, CA 94703

From:  Oakland Local Office - 555
1301 Clay Street
Suite 1170-N
Oakland, CA 94612

[ ]  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone I |
|---|---|---|
| 555-2006-00910 | Julian F. Melendres, Investigator Support Asst | (510) 637- |

*(See also the additional information enclosed w)*

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right t under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit und the ADA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue t charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge wa 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below your case:

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will b

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____
Michelle L. Nardella,
Director

02/20/07
*(Date Mailed)*

cc:  Deborah Hardina
Corp. Director of HR
AMERICAN BAPTIST HOMES OF
the West
6120 Stoneridge Mall Rd.3rd Fl
Pleasanton, CA 94588

Michael D. Cohen, Esq.
1814 Franklin Street, Ste.900
Oakland, CA 94612

Exhibit C

EEOC Form 161-B (3/98)        U.S. EQUAL EMPLOYMENT CTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | William J. Chapple<br>2670 Adeline Street # 217<br>Berkeley, CA 94703 | From: | Oakland Local Office - 555<br>1301 Clay Street<br>Suite 1170-N<br>Oakland, CA 94612 |
|---|---|---|---|

☐  On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone N |
|---|---|---|
| 555-2006-00912 | Julian F. Melendres,<br>Investigator Support Asst | (510) 637-... |

*(See also the additional information enclosed w...*

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit und the ADA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue b charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge wa 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below your case:

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will b

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____    02/20/07
Michelle L. Nardella,    *(Date Mailed)*
Director

Enclosure(s)

cc:    Scott Sebastian    Michael C. Cohen, Esq.
Director of Resident Services    1814 Franklin St. Ste.900
GRAND LAKE GARDENS    Oakland, CA 94612
401 Santa Clara Ave.
Oakland, CA 94610



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Oakland Local Office

1301 Clay Street, Suite
Oakland, CA. 9461
(510) 63
TTY (510) 63
FAX (510) 637

Mr. William J. Chapple
2870 Adeline Street #217
Berkeley, CA. 94703

Dear Mr. Chapple:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC), it is important for you to understand some of our case processing procedures.

A copy of your charge will automatically be filed with the State of California, Department of Fair Employment and Housing. This is being done to protect your right to file a suit in state court, should you desire to do so at a later date. It is not necessary for you to contact the state agency. Because of a formal agreement between the EEOC and the state agency, the EEOC will be processing your charge. The state agency will not process it unless we request them to do so. This rarely happens, but, if it does, we will certainly let you know that we are transferring your charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitations set forth both federal and state laws. In this instance, your charge will be served within ten days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your charge number on all correspondence.

Sincerely,

*Julian Melendres*

Mr. Julian Melendres, EEOC Representative
(510) 637-3242

* - * EMPLOYMENT * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #

DFEH USE ON

EEOC CHARGE # 555-2006-0091

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

RECEIVED

YOUR NAME (indicate Mr. or Ms.)    TELEPHONE
William J. Chapple

ADDRESS
2870 Adeline Street #217    AUG 0 2 2006

CITY/STATE/ZIP    COUNTY
Berkeley, CA 94703    EEOC-OLO    Alamed

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTIC COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME    TELEPHONE
Grand Lake Gardens

ADDRESS
401 Santa Clara Avenue

CITY/STATE/ZIP    COUNTY
Oakland, CA 94610

NO. OF EMPLOYEES/MEMBERS (if known)    DATE MOST RECENT OR CONTINUING DISCRIMINATION
approx. 58    TOOK PLACE (month, day, and year)    11/11/05

THE PARTICULARS ARE:

On 11/11/05 I was:

___ fired    ___ denied employment    ___ denied far
___ laid off    ___ denied promotion    ___ denied pre
___ demoted    ___ denied transfer    ___ denied equa
 X  harassed    ___ denied accommodation    ___ denied right.
___ genetic characteristics testing    ___ impermissible non-job-related inquiry    ___ denied preg
___ forced to quit    X  other (specify) discriminated aga

by Scott Sebastian, Dir. of Operations; Calvin May Resident Serv: Driver
Name of Person    Job Title (supervisor/manager/personnel director/etc.)

because of my:    ___ sex    ___ national origin/ancestry    ___ physical disability    ___ cancer    Circle one) E
___ age    ___ marital status    ___ mental disability    ___ genetic characteristic    protesting, participant
___ religion    ___ sexual orientation    ___ other (specify)    investigation, retaliatir
 X  race/color    ___ association

the reason given by Scott Sebastian, Dir. of Operations, Calvin May, Resident Services Driver
Name of Person and Job Title

Was because of [please state what you believe to be reason(s)]:

They accused me of coming to work "drunk"; ie. under the influence of alcohol. Please see attached declarations which is hereby incorporated herein. I believe I was falsely accu. because of my race. I am an African American.

I wish to pursue this matter in court. I certify, however, that the Department of Fair Employment and Housing provides a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discrimination, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not proceed with a complaint once the complainant has either received or had access to the benefits of "Complainant Elected Court Action."

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 7/13/06

At Oakland, CA
City

COMPLAINANT'S SIGNATURE

DATE FILED:

DFEH-300-03 (01-03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
STATE OF CALIF

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE          EEOC CHARGE # 555-2006-0091
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

Defendants:                                                    RECEIVED

Board of Directors
Reginald Lyles, Executive Director                             AUG 0 2 2006
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver                           EEOC-OLO

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial
Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing
employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the
party at 8:00 PM and left at 10:00 PM.

Early morning , directly after and between midnight and 1:00 AM, I began to feel nauseous and
experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two
Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident
Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of
Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them
how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I
spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER
HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They
suggested I go to the doctor. I advised them that I thought it was the food from the party that had my
stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me.
He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then
left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD
MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to
him that it was the food from the birthday party the night before that made me sick. Some time later I
learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT
SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal
warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I
had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY,
Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD
MACK told me that he would have to do an investigation upon his return from being out of town from
Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the
restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I
spoke to him and he kept walking straight by me into his office. He exited his office and began going into
the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

RECEIVED

AUG 0 2 2007

EEOC-OLO

CHRONICLE OF EVENTS

EEOC CHARGE # 555-2006-0091

Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 584 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN's accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:50 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

AUG 0 2 20

EEOC-OLO



CHRONICLE OF EVENTS

EEOC CHARGE # 555-2006-009;

Pa;

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen par
that I had attended and that I got a bad reaction from the food that had been served. However, I came to
work anyway the following morning even after being sick throughout the night with nausea, cramping in t
stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I
spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cove
for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office
and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I
smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would
never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the
residents like you and we don't have any problem with you because you have a good job report. But you go
on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some
people have short noses. But you are a good worker, so continue doing good. " I said alright, I'll take the
test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by
RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened.
I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and
opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go
do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers.
The results were negative, of course, and I requested the staff make four copies of the test results -- one
each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT
SEBASTIAN Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to
REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to
GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD
MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to
work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along
with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he
gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply
I told him that in almost six months – May 16 to November 16, 2005, that is,-- SCOTT, had not noticed my
character. But I told him to go on and do what he has to do and I would do what I have to do and that
ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have
yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to
be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I
was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16,
2005 at 8:00 A.M. DONALD MACK radioed me to come to his office. I responded and upon my taking a
seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened.
He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

AUG 0 2 20~~

EEOC-OLO                CHRONICLE OF EVENTS        EEOC CHARGE # 555-2006-00~~

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 18, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he would smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Sage and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month – July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 11, 2006, at Oakland, California.

_____
WILLIAM J. CHAPPLE

ATE OF CALIFORNIA - State and Consumer Services Agency                                            ARNOLD SCHWAR:

## HEPARTMENT OF AIR EMPLOYMENT & HOUSING

(SEE ADDRESS CHECKED BELOW)

TY # (800) 700-2320

☐ 1001 Tower Way, Suite 350
H  Bakersfield, CA 93305
   (661) 395-2729

☐ 1320 E. Shaw Avenue, Suite 150
C  Fresno, CA 93710
   (559) 244-4760

☐ 611 West Sixth Street, Suite 1500
S/T Los Angeles, CA 90017
   (213) 439-6799

☐ 1515 Clay Street, Suite 701
M  Oakland, CA 94612
   (510) 622-2941

☐ 2000 "O" Street, Suite 120
E  Sacramento, CA 95814
   (916) 445-9922

☐ 1350 Front Street, Suite 3005
D  San Diego, CA 92101
   (619) 645-2681

☐ San Francisco District Office
A  1515 Clay Street, Suite 701
   Oakland, CA 94612
   (510) 622-2573

☐ 111 North Market Street, Suite 810
G  San Jose, CA 95113
   (408) 277-1377

☐ 2101 East Fourth Street, Suite 255-B
K  Santa Ana, CA 92705
   (714) 558-4266

**EEOC Number:**  555-2006-00912
**Case Name:**  William J. Chapple v. Grand Lal
                Gardens
**Date:**  August 2, 2006

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being refer
the California Department of Fair Employment and Housing (DFEH) by t
Equal Employment Opportunity Commission (EEOC). The complaint wil
in accordance with California Government Code section 12960. This n
constitutes service pursuant to Government Code section 12962.

**No response to the DFEH is required by the respondent.**

The EEOC will be responsible for the processing of this complaint. DFEH
not be conducting an investigation into this matter. EEOC should be cor
directly for any discussion of the charge. DFEH is closing its case on thi
of "processing waived to another agency."

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right
notice. According to Government Code section 12965, subdivision (b), y
may bring a civil action under the provisions of the Fair Employment and
Housing Act against the person, employer, labor organization or employm
agency named in the above-referenced complaint. The lawsuit may be fil
State of California Superior or Justice Court. Government Code section 1
subdivision (b), provides that such a civil action must be brought within o
year from the date of this notice. Pursuant to Government Code section
12965, subdivision (d)(1), this one-year period will be tolled during the
pendency of the EEOC's investigation of your complaint. You should cons
attorney to determine with accuracy the date by which a civil action must
filed. This right to file a civil action may be waived in the event a settlem
agreement is signed. Questions about the right to file under federal law sl
be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complai
filed.

Remember: This Right-To-Sue Notice allows you to file a private lawsuit ir
State court.

Sincerely,

WANDA L. KIRBY
Chief Deputy Director

DFEH-200-03  07/06

 U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Oakland Local Office

1301 Clay Street, Suite
Oakland, CA 9461
(510) 63
TTY (510) 63
FAX (510) 63*

Mr. William J. Chapple
2870 Adeline Street #217
Berkeley, CA 94703

Dear Mr. Chapple:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC), it is important for you to understand some of our case processing procedures.

A copy of your charge will automatically be filed with the State of California, Department of Fair Employment and Housing. This is being done to protect your right to file a suit in state court, should you desire to do so at a later date. It is not necessary for you to contact the state agency. Because of a formal agreement between the EEOC and the state agency, the EEOC will be processing your charge. The state agency will not process it unless we request them to do so. This rarely happens, but, if it does, we will certainly let you know that we are transferring your charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitations set forth both federal and state laws. In this instance, your charge will be served within ten days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your charge number on all correspondence.

Sincerely,

Mr. Julian Melendres, EEOC Representative
(510) 637-3242

* * * EMPLOYMENT * * *

COMPLAINT OF DISCRIMINATION UNDER          DFEH #
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT            DFEH USE ONLY
                                           EEOC CHARGE # 555-2006-00910

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

RECEIVED

| YOUR NAME (indicate Mr. or Mrs.) | | TELEPHONE |
|---|---|---|
| William J. Chapple | | |

ADDRESS
2870 Adeline Street #217                    AUG 0 2 2006

CITY/STATE/ZIP
Berkeley, CA 94703          EEOC-OLO          COUNTY  Alameda

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTI.
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME                                                          TELEPHONE
American Baptist Homes of the West

ADDRESS
6120 Stoneridge Mall Rd. 3rd. Floor

CITY/STATE/ZIP                                                COUNTY
Pleasanton, CA 94588

NO. OF EMPLOYEES/MEMBERS (if known)      DATE MOST RECENT OR CONTINUING DISCRIMINATION
approx. 50                                TOOK PLACE (month, day, and year)    11/11/05

THE PARTICULARS ARE:
On 11/11/05          I was     ___ fired          ___ denied employment       ___ denied t
                                ___ laid off       ___ denied promotion        ___ denied p
                                _x_ demoted        ___ denied transfer         ___ denied a
                                ___ harassed       ___ denied accommodation    ___ denied ri
                                ___ genetic characteristics testing  ___ impermissible non-job-related inquiry  ___ denied pr
                                ___ forced to quit    _x_ other (specify)  discriminated ag

by ___ Scott Sebastian, Director of Operations, Calvin May, Resident
       Name of Person        Job Title (supervisor/manager/personnel director/etc.)   Services Driver

because of my:   ___ sex          ___ national origin/ancestry   ___ physical disability   ___ cancer          ___ [Circle one]
                 ___ age          ___ marital status             ___ mental disability     ___ genetic characteristic  protesting; particip
                 ___ religion     ___ sexual orientation                                                        investigation (retalia
                 _x_ race/color   ___ association                ___ other (specify)

the reason given by ___ Scott Sebastian, Director of Operations, Calvin May, Resid
                    Name of Person and Job Title                          Services Driver

Was because of    They accused of coming to work "drunk"; ie under the influ
[please state     or alcohol.  Please see attached declaration which is hereb
what you believe  incorporated herein.  I believe I was falsely accused becaus
to be reason(s)]  of my race.  I am an African American.

I wish to pursue this matter in court.  I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discrimination, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so.  I understand it is the Department of Fair Employment and Housing's policy to not process a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated    7/15 06                           _William J. Chapple_
                                           COMPLAINANT'S SIGNATURE

at   Oakland, CA
           City

DATE FILED:

DFEH-205-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING                                    STATE OF C

EEOC CHARGE # 555-2006-00910

*EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION*

Defendants:

RECEIVED

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

AUG 0 2 2006

EEOC-OLO

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial
Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing
employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the
party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and
experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two
Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident
Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of
Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them
how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I
spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER
HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They
suggested I go to the doctor. I advised them that I thought it was the food from the party that had my
stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me.
He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then
left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD
MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to
him that it was the food from the birthday party the night before that made me sick. Some time later I
learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK he told me that SCOTT
SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal
warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I
had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY,
Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD
MACK told me that he would have to do an investigation upon his return from being out of town from
Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the
restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I
spoke to him and he kept walking straight by me into his office. He exited his office and began going into
the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

  

RECEIVED

AUG 0 2 2006

EEOC-OLO

CHRONICLE OF EVENTS

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 534 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANTEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said that she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

RECEIVED

AUG 02 2006

EEOC-OLO

EEOC CHARGE # 555-2006-00910

CHRONICLE OF EVENTS

Page

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said allright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results -- one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA FAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months – May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 A.M. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

RECEIVED

AUG 0 2 2[

EEOC-OLO            CHRONICLE OF EVENTS            EEOC CHARGE # 555-2006-0091[

Page

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 16, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

STATE OF CALIFORNIA - State and Consumer Services Agency

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
(SEE ADDRESS CHECKED BELOW)

ARNOLD SCHW

TTY # (800) 700-2320

☐ 1001 Tower Way, Suite 250
H  Bakersfield, CA 93309
   (661) 395-2729

☐ 1330 E. Shaw Avenue, Suite 150
C  Fresno, CA 93710
   (559) 2444760

☐ 611 West Sixth Street, Suite 1500
S.T Los Angeles, CA 90017
   (213) 439-6799

☑ 1515 Clay Street, Suite 701
M  Oakland, CA 94612
   (510) 622-2941

☐ 2000 "O" Street, Suite 120
E  Sacramento, CA 95814
   (916) 445-5523

☐ 1350 Front Street, Suite 3005
D  San Diego, CA 92101
   (619) 645-2681

☐ San Francisco District Office
A  1515 Clay Street, Suite 701
   Oakland, CA 94612
   (510) 622-2219

☐ 111 North Market Street, Suite 810
G  San Jose, CA 95113
   (408) 277-1277

☐ 2101 East Fourth Street, Suite 255-B
K  Santa Ana, CA 92705
   (714) 558-4266

EEOC Number:
Case Name:

Date:

555-2006-00910
William   J.   Chapple   v.   Ameri
Baptist Homes of the West
August 2, 2006

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being refe
the California Department of Fair Employment and Housing (DFEH) by
Equal Employment Opportunity Commission (EEOC). The complaint w
in accordance with California Government Code section 12960. This
constitutes service pursuant to Government Code section 12962.

**No response to the DFEH is required by the respondent.**

The EEOC will be responsible for the processing of this complaint. DFE
not be conducting an investigation into this matter. EEOC should be co
directly for any discussion of the charge. DFEH is closing its case on th
of "processing waived to another agency."

## NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right
notice. According to Government Code section 12965, subdivision (b), y
may bring a civil action under the provisions of the Fair Employment and
Housing Act against the person, employer, labor organization or employm
agency named in the above-referenced complaint. The lawsuit may be fil
State of California Superior or Justice Court. Government Code section 1;
subdivision (b), provides that such a civil action must be brought within on
year from the date of this notice. Pursuant to Government Code section
12965, subdivision (d)(1), this one-year period will be tolled during the
pendency of the EEOC's investigation of your complaint. You should consu
attorney to determine with accuracy the date by which a civil action must t
filed. This right to file a civil action may be waived in the event a settlemer
agreement is signed. Questions about the right to file under federal law sho
be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complaint
filed.

Remember: This Right-To-Sue Notice allows you to file a private lawsuit in
State court.

Sincerely,

*[signature]*

WANDA J. KIREY
Chief Deputy Director

EEOC Charge No.: 555-2006-00910

Charging Party:  William J. Chapple
Respondent:  American Baptist Homes Of The West                    Date: 8/2/2006

Dear Sir/Madam:

The San Francisco District Office of the Equal Employment Opportunity Commission (EEOC) has a mediation program designed as an alternative approach in assisting the parties in finding a way to resolve the matter prior to the initiating of an in-depth investigation into the allegations.  Please see attached Mediation Fact Sheet and Questions & Answer Sheet.

Participation is voluntary; both parties must agree to participate in the program.  If you are interested in participating, please complete the bottom portion of this notice and sign and return (or fax) this entire form to the above address.  If both parties agree to participate, we will assign the case to a neutral mediator who will conduct the mediation at no cost to the parties.  If a settlement is reached as a result of the mediation, the mediator is required to report to the EEOC any benefits received for purposes of providing aggregate data to the EEOC for Mediation Program evaluation purposes only, and the individual terms of the agreement will not be disclosed to the public.

The parties acknowledge that the mediator possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation.  In the event the mediation does not result in a settlement, the case will be transferred to the Enforcement Unit of the appropriate EEOC office and an investigation will begin.

If you have any questions, please call Tina Bonaparte, the ADR Program Assistant at (415) 625-5630.  Fax this form to (415) 625-5631 or mail it to us at:

EEOC – San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105-1260

Please place a "X" on your choice:

I/we ARE INTERESTED in participating in the Mediation program.  _____

I/we ARE NOT INTERESTED in participating in the Mediation program.  _____

Signature: _____    Job Title: _____    Date: _____

Print Full Name: _____    Day Time Phone Number: _____

Address P.O. Box _____    City, State and Zip Code: _____

Due to demand and limited resources, failure to respond within 15 days from the date of this letter will result in the charge being removed from the Mediation Program.  If you decline the mediate this charge, your case will be forwarded to the Enforcement Unit and the investigatory process will proceed in accordance with established procedures.

COMPLAINT OF DISCRIMINATION UNDER
THE PRO' ONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

* * * EMPLOYMENT * * *

DFEH # _____

DFEH US.



CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms)

William J. Chapple

ADDRESS

2670 Adeline Street #217

CITY/STATE/ZIP

Berkeley, CA 94703                    COUNTY    Alam

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPREN
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

NAME

American Baptist Homes of the West Corporation

ADDRESS

6120 Stoneridge Mall Rd. 3rd. Floor

CITY/STATE/ZIP

Pleasanton, CA 94588                  COUNTY

NO. OF EMPLOYEES/MEMBERS (if known)

approx. 50

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year)          11/11/05

THE PARTICULARS ARE: continuing pattern of harassment prior to and on

On 11/11/05          I was    ___ fired        ___ denied employment
                              ___ laid off      ___ denied promotion         ___ deni
                              _X_ demoted        ___ denied transfer          ___ denie
                              _X_ harassed       ___ denied accommodation     ___ denie
                              ___ genetic characteristic testing  ___ impermissible non-job-related inquiry  ___ denie
                              ___ forced to quit  _X_ other (specify)  Discriminated a

by    Scott Sebastian, Director of Operations, Calvin May, Resident
      (name of person)                    (job title (supervisor/manager/personnel director/etc.))  Services Drive

because of my    ___ sex          ___ national origin/ancestry  ___ physical disability   ___ cancer
                 _X_ age          ___ marital status            ___ mental disability     ___ genetic characteristic  ___ (list a
                 ___ religion     ___ sexual orientation                                                             protecting part
                 _X_ race/color   ___ association               ___ other (specify)                                 Investigation iron

the reason given by    Scott Sebastian, Director of Operations, Calvin May, Resi
                       (name of person and job title)                              Services Drive

Was because of    They accused of coming to work "drunk"; ie under the infl
[please state     of alcohol. Please see attached declaration which is heret
what you believe  incorporated herein. I believe I was falsely accused becau
to be reason]     of my race. I am an African American.

I want to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-
to-sue, the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discrim-
whichever is earlier.

I have not been coerced into the filing this complaint, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to n
receive a complaint once the complaint has been served on the basis of "Complaint: Excise Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my infor
belief and as to those matters I believe it to be true.

Dated    7 5 06

At    Oakland, CA

[signature] William J. Chapple

COMPLAINANT'S SIGNATURE

RECEIVED
NOV 8 2006
Department of Fair
Employment and Housing
Oakland District Office

DFEH-300-03 (01-05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED: _____

STATE OF C

COMPLAINT OF DISCRIMINATION UNDER     * * * EMPLOYMENT * * *
THE PROVISIONS OF THE CALIFORNIA                          DFEH #
FAIR EMPLOYMENT AND HOUSING ACT                      NOT FOR

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (Indicate Mr. or Ms.)
William J. Chapple

ADDRESS
2870 Adeline Street #217

CITY/STATE/ZIP
Berkeley, CA 94703

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPR
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST

NAME
Grand Lake Gardens

ADDRESS
401 Santa Clara Avenue

CITY/STATE/ZIP
Oakland, CA 94610

NO. OF EMPLOYEES/MEMBERS (if known)
approx. 50

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year)
11/11/05

THE PARTICULARS ARE:
On 11/11/05          I was ____ fired          forced to take alcoho
                           ____ laid off        ____ denied employment
                           X   demoted          ____ denied promotion
                           X   harassed         ____ denied transfer
                           ____ genetic characteristics testing  ____ denied accommodation
                           ____ forced to quit  ____ involuntarily medically-related inquiry
                                                 X   other (specify) Discriminated
by    Scott Sebastian, Dir. of Operations; Calvin May Resident S
      Name of Person  Reginald Lyles      Job Title (supervisor/manager/personnel/directors...)  Driver

because of my    ____ sex              ____ national origin/ancestry  ____ physical disability
                 X   age              ____ marital status           ____ mental disability      ____ genetic characteristics
                 ____ religion         ____ sexual orientation                                   ____ other (spec)
                 X   race             ____

the reason given by    Scott Sebastian, Dir. of Operations, Calvin May, Reside
                        Name of Person and Job Title                              Services Dri

Was because of    They accused me of coming to work "drunk"; ie. under the
(please state      influence of alcohol. Please see attached declaration w
what you believe   is hereby incorporated herein. I believe I was falsely ac
to be reason):     because of my race. I am an African American
                   also because of my age and a perceived disability.

I want to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right to sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to accept a complaint once the complainant has been placed on the basis of "Complainant Election Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated ____ 11-7-06
at    Oakland, CA.
                                             COMPLAINANT'S SIGNATURE
                                             NOV 0 9 2006
                                             Department of Fair
                                             Employment and Housing
                                             Oakland District Office

DFEH-300-03 01/03                    DATE FILED
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE W
CORPORATION

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at 1 party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 10, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

 

CHRONICLE OF EVENTS                                    Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MAC.
inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said
anything to me and I replied that he had not and thereafter MACK advised me that he would see me
November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and
him that I had just now hung up the telephone from talking to him. He questioned me as to whether I
talked to him before now and I told him that I had not. He requested that I come into his office as he
wanted to talk to me. I followed him into his office and he closed the door and told me to sit down an
him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was
brought on by the food I had eaten at the senior citizen party on November 9, 2005.  SCOTT
SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now.  SCOTT
you now and throughout the building. One of your co-workers told me that you came to work drunk and
you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any
alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out so
forms and sign then and go and take a breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and th
he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medica
Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would
make the appointment for me. I told him that I would not sign these forms because I was not drunk and tha
I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD
LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of
his office. My co-workers were outside his office and were looking at me with their heads bowed down. I
was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I
would never come to work drunk and would never think that he would expect that out of me. He stood
quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I
am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He
told them that he wanted a breath test for alcohol administered to me and they asked him for what reason.
He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER
HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt
my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and
that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 9:01 AM and 9:45AM I left Grand Lake Gardens and went over to Piedmont Gardens to
talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA
SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her
if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that
was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being
drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center.
I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that
SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his
secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with
a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra
Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

# CHRONICLE OF EVENTS

alcohol on me. He asked that I tell him what happened. I explained about the previous senior cit that I had attended and that I got a bad reaction from the food that had been served. However, I c stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained t spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed for me until I could feel better. I punched out and went home, returning the next day, November 11

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his o. and told me that one of my co-workers told him that I came to work drunk on the 10th of November a smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I w never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and t residents like you and we don't have any problem with you because you have a good job report. But y or and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said alright, I'll take test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happene I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers The results were negative, of course, and I requested the staff make four copies of the test results - - one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREEA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months – May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 AM. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

## CHRONICLE OF EVENTS

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on F. November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that mo: Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could tal related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned hi whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was no staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work the He apologized that the incident happened but he needed to find out what happened by calling this m with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and sa it was a good thing my coming and talking to him about the alcohol breath test and that there was no s alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would : happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom be: I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have b doing it, etc., etc. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Sage and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2005, at Oakland, California.

WILLIAM I. CHAPPELL

RECEIVED

NOV 0 9 2006

Depa... ..r
Employment and Housing
Oakland District Office

**PROOF OF SERVICE**

I, Michael C. Cohen, declare that:

I am employed in the County of Alameda, City of Oakland, California. I am over the age of 18 years and not a party to the within cause; my business address is 1814 Franklin Street, Suite 900, Oakland, California 94612.

On October 21, 2007 I served the attached:

**Third Amended Complaint; re: <u>William J. Chapple v. American Baptist Homes of the West Corporation, aka American Baptist Homes of the West, et al.</u>, Alameda County Superior Court No. RG06297059**

on the interested parties in said action, by placing true copy thereof as indicated below as follows:

**Michael E. Brewer, Esq.**
**Allison R. Balc, Esq.**
**Littler Mendelson, PC,**
**2155 Treat Blvd. Ste. 600**
**Walnut Creek, CA 94597**

**Fax. No. 925-946-9809**

**[xx] BY MAIL:** I caused such envelope with postage thereon fully prepaid to be placed in the United States mail, in the City of Oakland, California.

**[ ] BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand on the office(s) of the address(es).

**[ ] BY FEDERAL EXPRESS:** I caused such envelope to be delivered to Federal Express for overnight courier service to the office(s) of the addressee(s).

**[xx] BY FACSIMILE:** I caused a copy of such document to be sent via facsimile transmission to the office(s) of the addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Proof of Service was executed in Oakland, California, on October 21, 2007.

Michael C. Cohen

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Chapple VS American Baptist Homes Of The West Corporation | RG06297059 |

### ADDITIONAL ADDRESSEES

Lewis, Brisbois, Bisgaard & Smith, LLP
Attn: Fine, Gordon J.
One Sansome Street, Suite 400
14th Floor
San Francisco, CA   94104

**EXHIBIT VV**

```
┌                              ┐    ┌                                    ┐
  Law Office of Michael C. Cohen        Brewer, Michael E.
  Attn: Cohen, Michael C.               2175 North California Boulevard,
  1814 Franklin St., Ste. 900           Suite 8325
  Oakland, CA   94612-0000              Walnut Creek, CA   94596-3565
└                              ┘    └                                    ┘
```

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Chapple<br><br>         Plaintiff/Petitioner(s)<br>          vs.<br><br>American Baptist Homes Of The West<br>Corporation<br>          Defendant/Respondent(s)<br>          (Abbreviated Title) | No. RG06297059<br><br><br>NOTICE OF HEARING |

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above entitled action has been set for:

Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Case Management Conference:
DATE: 12/04/2007    TIME: 09:00 AM    DEPARTMENT: 8
LOCATION:  Rene C. Davidson Alameda County Courthouse, Fifth Floor
          1225 Fallon Street, Oakland

NOTE:  Third Amended Complaint filed.
Updated Case Management Statements are required in order to make an appearance via court call.

Dated:  10/24/2007                    Executive Officer / Clerk of the Superior Court

                            By      _Yvonne Baggell_____
                                                    Deputy Clerk

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 10/24/2007.

                            By      _Yvonne Baggell_____
                                                    Deputy Clerk

.

**EXHIBIT WW**

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Chapple** | No. RG06297059 |
| Plaintiff/Petitioner(s) | |
| VS. | **Minutes** |
| **American Baptist Homes Of The West Corporation** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department  8                    Honorable  Winifred Y. Smith        , Judge

Cause called for Motion: October 26, 2007.

The Demurrer of Defendants American Baptist Homes of the West, Grand Lake Gardens, Reginald Lyles,
Calvin May and Scott Sebastian to Plaintiff's Complaint for Damages is DROPPED at the request of the
moving party.

Minutes of     10/26/2007
Entered on     10/26/2007

Executive Officer / Clerk of the Superior Court

By     _Yvonne Bagofell_
                                    Deputy Clerk

**Minutes**

M4046766

**EXHIBIT XX**

MICHAEL E. BREWER, Bar No. 177912
ALLISON R. BALC, Bar No. 214962
LITTLER MENDELSON
A Professional Corporation
1255 Treat Blvd., Suite 600
Walnut Creek, CA 94597
Telephone:    925.932.2468
Fax:          925.946.9809

Attorneys for Defendants
AMERICAN BAPTIST HOMES OF THE WEST,
CALVIN MAY AND SCOTT SEBASTIAN

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

NOV - 6 2007

CLERK OF THE SUPERIOR COURT
By _____
                    Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| WILLIAM J. CHAPPLE,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN BAPTIST HOMES OF THE WEST CORPORATION, aka, AMERICAN BAPTIST HOMES OF THE WEST, aka, GRAND LAKE GARDENS, CALVIN MAY, SCOTT SEBASTIAN, DOES 1 through 10,<br><br>Defendants. | Case No. RG06297059<br><br>ASSIGNED FOR ALL PURPOSES TO THE HONORABLE WINIFRED Y. SMITH<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED THIRD AMENDED COMPLAINT**<br><br>Third Amended Complaint Filed October 22, 2007<br><br># BY FAX |

COMES NOW Defendants American Baptist Homes of the West, Calvin May and Scott Sebastian ("Defendants"), by and through their attorneys, for their Answer to the unverified Third Amended Complaint ("Complaint") of Plaintiff William J. Chapple ("Plaintiff") as follows:

## GENERAL DENIAL

Pursuant to Code of Civil Procedure Section 431.30(d), Defendants hereby answer the unverified Complaint filed by Plaintiff by generally denying each and every allegation contained therein, by denying that Plaintiff has been damaged or has sustained any damages as a result of the conduct or omissions alleged therein, and by asserting the following separate and distinct affirmative defenses.

DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED THIRD AMENDED COMPLAINT

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Defendants allege that the Court lacks jurisdiction over the subject matter of the action as the Complaint raises federal questions.

**SECOND AFFIRMATIVE DEFENSE**

Defendants allege that the Complaint, and each and every cause of action thereof, whether considered singly or in combination, fails to state facts sufficient to constitute a cause of action against Defendants.

**THIRD AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiff's causes of action are barred by the applicable statutes of limitation, including, but not limited to, California Code of Civil Procedure §§ 335.1 and 340 and Government Code §§ 12965(b) and 12960.

**FOURTH AFFIRMATIVE DEFENSE**

Defendants allege that, even assuming, *arguendo*, Plaintiff suffered any damages or injuries, to the extent Plaintiff's alleged damages or injuries arose in the course of his employment, Plaintiff's claims are barred by the exclusivity of the California Workers' Compensation Act, California Labor Code § 3600, *et seq.*

**FIFTH AFFIRMATIVE DEFENSE**

To the extent evidence of any such defense is developed, Defendants allege that Plaintiff's claims are barred, in whole or in part, by the doctrine of latches, estoppel, waiver, release, unclean hands, *res judicata* and/or collateral estoppel.

**SIXTH AFFIRMATIVE DEFENSE**

Defendants allege that Plaintiff's claims are barred, in whole or in part, to the extent he failed to properly exhaust all of his administrative and statutory remedies.

**SEVENTH AFFIRMATIVE DEFENSE**

Defendants allege that insofar as the Complaint is based on alleged discriminatory or other allegedly unlawful actions and/or conduct not specified in the charges filed by Plaintiff with the California Department of Fair Employment and Housing or the Equal Employment Opportunity

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

2.

DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED THIRD AMENDED COMPLAINT

1  Commission, such alleged actions and/or conduct cannot form the basis for any claim for relief

2  under the California Fair Employment and Housing Act or the Civil Rights Act.

**EIGHTH AFFIRMATIVE DEFENSE**

4  Defendants allege that insofar as the Complaint is based on alleged discriminatory or

5  other allegedly unlawful actions and/or conduct that occurred more than one year prior to the filing

6  of the charge by Plaintiff with the Department of Fair Employment and Housing, it is barred by

7  Government Code section 12960.

**NINTH AFFIRMATIVE DEFENSE**

9  Defendants allege that Plaintiff failed to timely file his charge with the Equal

10  Employment Opportunity Commission and, thus, it is barred by 42 United States Code section

11  2000e-5.

**TENTH AFFIRMATIVE DEFENSE**

13  Defendants allege that all actions taken towards Plaintiff were taken in good faith, for

14  non-discriminatory, non-retaliatory, and otherwise based on lawful business reasons or necessity,

15  were privileged, and/or were reasonably necessary for the normal operations of Defendant's

16  business.

**ELEVENTH AFFIRMATIVE DEFENSE**

18  Defendants allege that Plaintiff's claims, and his recovery for such, are barred, in

19  whole or in part, by his unreasonable failure to take advantage of preventive and corrective

20  opportunities and other internal remedies provided by Defendants, including but not limited to

21  employer-provided anti-harassment/discrimination policies or remedies, and to otherwise avoid

22  harm.

**TWELFTH AFFIRMATIVE DEFENSE**

24  Defendants allege that, assuming the truth of Plaintiff's claims, there was no causal

25  connection between any alleged report of discrimination and/or harassment and any alleged

26  retaliatory conduct.

**THIRTEENTH AFFIRMATIVE DEFENSE**

28  The Complaint and each cause of action set forth therein cannot be maintained

3.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA. 94597
925.932.2468

1    because Defendants exercised reasonable care to prevent and promptly correct any harassing or
2    discriminatory or otherwise unlawful behavior.

3    <center>**FOURTEENTH AFFIRMATIVE DEFENSE**</center>

4    Defendants allege that to the extent Plaintiff filed this action after the time allotted to
5    him in any Notice of Right to Sue provided to him by the Department of Fair Employment and
6    Housing, any Fair Employment Housing Action claims under Government Code section 12900 *et*
7    *seq.*, are barred.

8    <center>**FIFTEENTH AFFIRMATIVE DEFENSE**</center>

9    Defendants allege that to the extent that Plaintiff failed to exercise reasonable and
10   ordinary care, caution, or prudence to avoid incurring any of the damage alleged by him, the
11   resulting alleged damages or injuries, if any, were proximately caused and contributed to by the
12   negligence and/or intentional conduct of Plaintiff and any recovery to which Plaintiff might be
13   entitled must be reduced by reason of Plaintiff's failures, contributory or comparative negligence, or
14   intentional conduct.

15   <center>**SIXTEENTH AFFIRMATIVE DEFENSE**</center>

16   Defendants allege to the extent the damages alleged in the Complaint were
17   proximately caused by or contributed to by the acts, or failures to act, of persons other than
18   Defendants, these acts or failures to act constitute an intervening and superseding cause of the
19   damages and injuries alleged in the Complaint.

20   <center>**SEVENTEENTH AFFIRMATIVE DEFENSE**</center>

21   Defendants allege that, to the extent Defendants acquire any evidence of wrongdoing
22   by Plaintiff that would have materially affected the terms and conditions of his employment or
23   would have resulted in her being demoted, disciplined or terminated, such after-acquired evidence
24   shall bar Plaintiff's claims to liability or damages or shall reduce such claims as provided by law.

25   <center>**EIGHTEENTH AFFIRMATIVE DEFENSE**</center>

26   Defendants allege that Plaintiff is entirely, or in the alternative, partially barred from
27   any recovery because of his failure to take reasonable steps to mitigate his alleged damages.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

<center>4.</center>

### NINETEENTH AFFIRMATIVE DEFENSE

Defendants allege that Plaintiff has failed to state facts sufficient to state a claim for which general, punitive, and/or exemplary damages may be granted under Section 3294 of the California Civil Code, or otherwise.

### TWENTIETH AFFIRMATIVE DEFENSE

Defendants allege that at no time did they authorize, consent to or ratify any malicious, oppressive, or fraudulent conduct by any of employees or agents of American Baptist Homes of The West toward Plaintiff.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Defendants allege that Plaintiff's request for punitive damages is barred to the extent the provision of California law allowing for the award of punitive or exemplary damages and the substantive rules, procedures and standards for determining whether or not to award them, and if so, in what amount, violate Defendants' rights to due process and equal protection under the United States and California Constitutions.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Defendants allege that Plaintiff's claims for discrimination on the basis of perceived disability are barred because at all material times, any disability was unknown to Defendants.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Defendants allege that Plaintiff's Third, Fifth, Sixth Tenth and Eleventh causes of action are duplicative and redundant and should be dismissed on these grounds alone.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Defendants allege that Plaintiff failed to state a claim for which compensatory, punitive or special damages, expenses, interest, attorneys' fees/costs, or other relief can be granted.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Defendants allege that, even assuming, *arguendo*, Plaintiff suffered any emotional distress, Plaintiff contributed to his own distress and by reason of his contribution, any remedy to which he might otherwise be entitled must be denied or reduced accordingly.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925 932 2468

5.

DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED THIRD AMENDED COMPLAINT

1

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

2        Defendants allege that any award to Plaintiff must be offset by all sums received by

3    Plaintiff from any source, including but not limited to, unemployment insurance, private insurance,

4    state disability insurance, Social Security disability payments, workers' compensation payments,

5    and/or other monies and/or benefits Plaintiff has received or will receive.

6

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

7        Defendants allege that the Complaint and each cause of action set forth therein cannot

8    be maintained against Defendants because the allegedly defamatory statement relates to a matter of

9    public concern and, thus, was not negligently published and is constitutionally protected.

10

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

11       Defendants allege that the Complaint and each cause of action set forth therein cannot

12    be maintained against Defendants because the allegedly defamatory statement was consented to by

13    Plaintiff.

14

### TWENTY-NINTH AFFIRMATIVE DEFENSE

15       Defendants allege that the Complaint and each cause of action set forth therein cannot

16    be maintained against Defendants because the acts of its employees were privileged under all

17    applicable statutory and common law privileges including but not limited to the managerial privilege

18    to the extent that they were acting in the course and scope of their authority.

19

### THIRTIETH AFFIRMATIVE DEFENSE

20       Defendants allege that Plaintiff's Complaint and each cause of action set forth therein

21    cannot be maintained against Defendants because, even assuming, *arguendo,* a defamatory statement

22    was made, statements were made by coworkers or superiors to coworkers or superiors on a matter of

23    common interest to preserve job efficiency and safety.

24

### THIRTY-FIRST AFFIRMATIVE DEFENSE

25       Defendants allege that Defendants are not vicariously liable for any act or omission of

26    any other person, by way of respondent superior, agency, or otherwise.

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

6.

1    **THIRTY-SECOND AFFIRMATIVE DEFENSE**

2    Defendants allege that the constitutional right to free speech bars Plaintiff's causes of

3    action, in whole or in part.

4    **THIRTY-THIRD AFFIRMATIVE DEFENSE**

5    Defendants allege that Plaintiff is not entitled to equitable relief because Plaintiff has

6    adequate remedies at law.

7    **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

8    Defendants allege that Plaintiff's claims for damages are precluded to the extent that

9    such damages are speculative.

10    **RESERVATION OF ADDITIONAL DEFENSES**

11    Defendants allege that because the Complaint is couched in conclusory terms, all

12    affirmative defenses that may be applicable cannot be fully anticipated.  Accordingly, the right to

13    assert additional affirmative defenses, if and to the extent that such affirmative defenses are

14    applicable, is reserved.  In addition, Defendants reserve the right to amend this Answer should they

15    later discover facts demonstrating the existence of new and/or additional affirmative defenses, and/or

16    should a change in the law support the inclusion of new and/or additional affirmative defenses.

17    **WHEREFORE,** Defendants pray for judgment as follows:

18        1.  That the Complaint herein be dismissed and that judgment be entered against

19           Plaintiff and in favor of Defendants on all of Plaintiff's causes of action;

20        2.  That Plaintiff be ordered to pay Defendants' costs and attorneys' fees; and

21        3.  For such other and further relief as the Court deems just and proper.

22    Dated: November 6, 2007

23

24    MICHAEL K. BREWER

25    ALLISON R. BALC
      LITTLER MENDELSON

26    A Professional Corporation
      Attorneys for Defendants

27    AMERICAN BAPTIST HOMES OF THE
      WEST, CALVIN MAY AND SCOTT

28    SEBASTIAN

Firmwide:83471500.1 012425.1022

LITTLER MENDELSON
A Professional Corporation
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED THIRD AMENDED COMPLAINT

1

**PROOF OF SERVICE**

2          I am a resident of the State of California, over the age of eighteen years, and not a

3   party to the within action. My business address is Littler Mendelson, Treat Towers, 1255 Treat

4   Boulevard, Suite 600, Walnut Creek, CA 94597. On November 6, 2007, I served the within

5   document(s):

6   **DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED THIRD AMENDED COMPLAINT**

7

8       ☐   by facsimile transmission at or about _____ on that date. This document was
9           transmitted by using a facsimile machine that complies with California Rules of Court
            Rule 2003(3), telephone number 925.946.9809. The transmission was reported as
10          complete and without error. A copy of the transmission report, properly issued by the
            transmitting machine, is attached. The names and facsimile numbers of the person(s)
11          served are as set forth below.

12      ☒   by placing a true copy of the document(s) listed above for collection and mailing
13          following the firm's ordinary business practice in a sealed envelope with postage thereon
            fully prepaid for deposit in the United States mail at Walnut Creek, California addressed
14          as set forth below.

15      ☐   by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees
16          provided for, in an overnight delivery service pick up box or office designated for
            overnight delivery, and addressed as set forth below.

17      ☐   by personally delivering a copy of the document(s) listed above to the person(s) at the
18          address(es) set forth below.

19          Michael C. Cohen
            Law Office of Michael C. Cohen
20          1814 Franklin Street, Suite 900
            Oakland, CA 94612
21
            Facsimile: (510) 832-6439
22          Telephone: (510) 832-6436

23          I am readily familiar with the firm's practice of collection and processing

24   correspondence for mailing and for shipping via overnight delivery service. Under that practice it

25   would be deposited with the U.S. Postal Service or if an overnight delivery service shipment,

26   deposited in an overnight delivery service pick-up box or office on the same day with postage or fees

27   thereon fully prepaid in the ordinary course of business.     I declare under penalty of perjury under

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

1    the laws of the State of California that the above is true and correct. Executed on November 6, 2007,

2    at Walnut Creek, California.

3

4                                   Gina Camacho

5    Firmwide:82585810.1 012425.1022

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2175 North California Blvd
Suite 835
Walnut Creek, CA 94596.3585
925.932.2468

2.

PROOF OF SERVICE