**EXHIBIT W**



9/6/07 @ 3:15 p.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

2007 MAY 18  PM 4: 14

CLERK OF THE SUPERIOR COURT
BY ALPHONSINE OATES

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AMERICAN BAPTIST HOMES OF THE WEST, AKA
AMERICAN BAPTIST HOMES OF THE WEST CORPORATION,
AKA GRAND LAKE GARDENS, GRAND LAKE GARDENS,
CALVIN MAY, SCOTT SEBASTIAN, DOES 1 THROUGH 10,
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
WILLIAM J. CHAPPLE

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda County Superior Court<br>1225 Fallon Street<br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del Caso)*<br>R C O 7 3 2 6 7 5 9 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael C. Cohen, Esq.   65487        LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street, Suite 900        Oakland, CA 94612
510-832-6436

DATE: MAY 1 8 2007    PAT S. SWEETEN    Clerk, by _____, Deputy
*(Fecha)*                *(Secretario)*                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
American Baptist Homes of the West, aka American Baptist Home of the West corporation, aka Grand Lake Gardens
3. ☒ on behalf of *(specify)*:
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
Martin Dean's Essential Forms ™

**SUMMONS**

Code of Civil Procedure §§ 412.20, 485

Chapple v. American Baptist

11618839.tif - 9/4/2007 1:09:04 PM

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State B* ; *and address)* :
Michael C. Cohen, Esq.          65487
LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street, Suite 900
Oakland, CA 94612
TELEPHONE NO.: 510-832-6436   FAX NO.: 510-832-6439
ATTORNEY FOR *(Name)*: William Chapple

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Northern

CASE NAME: William Chapple v. American Baptist Home

*5677374*

FILED ALAMEDA COUNTY

MAY 18 2007

CLERK OF SUPERIOR COURT

BY *Alphonsine Oates*
DEPUTY

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RG0 7326753 |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount          (Amount<br>demanded        demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1-5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[X] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply)*:
   a. [ ] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action *(specify)*: Three

5. This case [ ] is [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 17, 2007

Michael C. Cohen
(TYPE OR PRINT NAME)                    ▶   *[signature]*   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]     **CIVIL CASE COVER SHEET**     Cal. Rules of Court, rules 3.220, 3.400-3.403;<br>Standards of Judicial Administration, § 19<br>www.courtinfo.ca.gov

Chapple v. American Baptist Home

CM-010

## INSTRUCTIONS HOW TO COMPLETE THE COVER SHEET 

**To Plaintiffs and Others Filing First Papers**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Complex Cases**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice-Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach-Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case-Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ-Administrative Mandamus
  Writ-Mandamus on Limited Court Case Matter
  Writ-Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal-Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

1 | Michael C. Cohen, Esq., Bar No. 65487
LAW OFFICES OF MICHAEL C. COHEN
2 | 1814 Franklin Street, Suite 900
Oakland, CA 94612
3 | (510) 832-6436
Attorney for Plaintiff,
4 | William J. Chapple

ENDORSED
FILED
ALAMEDA COUNTY

2007 MAY 18  PM 4: 14

CLERK OF THE SUPERIOR COURT
BY ALFREDSINE OATES

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| WILLIAM J. CHAPPLE | No.   RG0 7326753 |
| Plaintiff, | |
| vs. | COMPLAINT FOR EMPLOYMENT DISCRIMINATION/HARASSMENT BASED ON RACE, AGE, PERCEIVED DISABILITY |
| AMERICAN BAPTIST HOMES OF THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST CORPORATION, AKA GRAND LAKE GARDENS, GRAND LAKE GARDENS, CALVIN MAY, SCOTT SEBASTIAN, DOES 1 THROUGH 10, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## GENERAL ALLEGATIONS

1)    Plaintiff, William J. Chapple, at all times mentioned herein, was an adult black, African American, male, over fifty (50) years of age.

2)    Each of the acts and failure to act which is the basis of this lawsuit occurred in the county of Alameda, state of

Complaint                              -1-

1 | California.

2     **3)**    Plaintiff is informed and believes and thereon alleges
3 that at all times herein mentioned, defendant, American Baptist
4 Homes of the West, is a corporation organized and existing in
5 Alameda County, State of California.

6     **4)**    Plaintiff is informed and believes and thereon alleges
7 Grand Lake Gardens is a corporation organized and existing in the
8 Alameda County State of California.
9 that he aka Grand Lake Gardens, was a corporation, organized and
10 existing in the state of California.

11     **5)**    Plaintiff is informed and believes and thereon alleges
12 that American Baptist Homes of the West, at all times mentioned
13 herein, owned, managed, operated Grand Lake Gardens, a senior
14 residential home facility located in Oakland, California, county
15 of Alameda.

16     **6)**    Plaintiff is informed and believes and thereon alleges
17 that Grand Lake Gardens is a division and or department of
18 American Baptist Homes of the West.

19     **7)**    Plaintiff is informed and believes and thereon alleges
20 that at all times herein mentioned, Calvin May was an employee of
21 American Baptist Homes of the West, and or an employee and or
22 agent of Grand Lake Gardens as a resident transportation
23 operator. In doing the acts complained of herein, he was not
24 acting in the course and scope of such employment when doing the
25 acts complained about herein.

26     **8)**    Plaintiff is informed and believes and thereon alleges
27
28 Complaint                    -2-

1 that at all times herein mentioned, Scott Sebastian was a

2 managerial employee of American Baptist Homes of the West and or

3 Grand Lake Gardens, working at Grand Lake Gardens and acting in

4 the course and scope of such employment when doing the acts

5 complained about herein.

6     9)   Plaintiff is informed and believes and thereon alleges

7 that at all times herein mentioned, Reginald Lyles was a

8 managerial employee of American Baptist Homes of the West,

9 and acting in the course and scope of such employment when doing

10 the acts complained about herein.

11     10)   Plaintiff is ignorant of the true names and capacities

12 of the defendants sued herein as does 1 through 10, inclusive.

13 Plaintiff therefore sue said defendants pursuant to Section 474

14 of the Code of Civil Procedure.  Plaintiff will ask leave of

15 Court to amend his Complaint to set forth the true names and

16 capacities of said defendants, together with appropriate charging

17 allegations, where necessary, when the same have been

18 ascertained.

19     11)   Plaintiff is informed and believes, and thereon

20 alleges, that at all times herein mentioned, each doe defendant

21 named herein, was the agent and or employee of each of the

22 remaining doe defendants, and in doing the things hereinafter

23 alleged, was acting within the course and scope of such agency

24 and or employment.

25     12)   At all times referred to herein, except as otherwise

26 alleged herein, Plaintiff was employed by American Baptist Homes

27

28 Complaint                 -3-

1  and or Grand Lake Gardens and he had a good reputation on his job

2  and in the community, including a good reputation for being a

3  very good employee, for doing his job in a reasonably good

4  manner, for being a reasonable and responsible sober person who

5  abided by the rules and regulations of his job.  He looked

6  forward to advancing on his job, and earning more money and

7  conduct on the job, because of his good work, including his

8  reputation for being a good employee and a responsible employee.

9      13)  On November 9, 2005, plaintiff was invited to an on-

10  site Senior Citizen's Birthday Party.  He arrived at the party at

11  about 8:00 p.m. and left at about 10:00 p.m.  Early morning,

12  directly after midnight and between midnight and 1:00 a.m. he

13  began to feel nauseous and experienced severe pain and cramping

14  in his stomach, along with diarrhea.  Later that morning, he took

15  two Tylenol and went to work still feeling nauseous with an upset

16  stomach, pain and diarrhea.

17      He reported to work at 7:30 a.m., November 10, 2005.  He

18  spoke to Calvin May, Resident Services Driver, who works under

19  Scott Sebastian, Director of Operations, Ms. Rita Johnson of

20  Wellness Department, and Kathy A. Smith, Certified Nursing

21  Assistant, Wellness Department and told them how much he enjoyed

22  the party and his delight at seeing the seniors too, having fun.

23      Thereafter, he went down to the basement to change clothes

24  in preparation of starting his work.  He spoke to Brad Freeman,

25  Maintenance #1 worker of Environmental Services and Alexander

26  Harrison, Maintenance #2 worker and told them he did not feel

27

28  Complaint                        -4-

1   well and that he had stomach pain.  They suggested that he go to
2   the doctor.  He advised them that he thought it was the food from
3   the party that had his stomach so upset and was causing the pain
4   and diarrhea.  Brad Freeman said that he would cover for
5   plaintiff on the job.  He agreed to tell their supervisor Donald
6   Mack, Assistant Director of Facilities about plaintiff's illness.
7   Plaintiff then left the job, punching out between 8:00 a.m. and
8   8:30 a.m.

9       When plaintiff arrived at home he was still feeling very
10  sick and got into bed to rest.  He called Donald Mack, his
11  supervisor between 12:30 p.m. and 1:00 p.m. to personally explain
12  why he left the job.  He related to him that it was the food from
13  the party the night before that made him sick.  Some time later
14  he learned that others, too, had ill effects from the food at the
15  party.

16      During plaintiff's conversation with his supervisor, Donald
17  Mack, Mr. Mack told plaintiff that Scott Sebastian, Director of
18  Operations, told him that plaintiff came to work drunk and that
19  he must give plaintiff a verbal warning.  Plaintiff told him that
20  he was not drunk and that he went home because his stomach was
21  severely hurting and he had diarrhea.  Further, Donald Mack told
22  plaintiff that Scott Sebastian told him that Calvin May Resident
23  Services Driver, told him that plaintiff was drunk and smelling
24  like alcohol.  Supervisor Donald Mack told plaintiff that he
25  would have to do an investigation upon his return from being out
26  of town from Friday, November 11, 2005 to Tuesday, November 15,
27
28  Complaint                    -5-

1  2005.

2      Plaintiff returned to work on November 11, 2005, punching in

3  at 7:00 a.m. and started to clean up the restroom, the office,

4  lobby, windows and observed Scott Sebastian who was in early that

5  morning.  Plaintiff spoke to Mr. Sebastian and Mr. Sebastian kept

6  walking straight past plaintiff and went into his office.  He

7  exited his office and began going into the restroom, the lobby

8  and into all of the offices.  Calvin May and Greg, the security

9  officer were sitting at the desk.  At that instance plaintiff

10 received a telephone call from his supervisor, Donald Mack, who

11 inquired how plaintiff was feeling.  Plaintiff told Mr. Mack that

12 he was alright.  Mr. Mack asked if Scott Sebastian had said

13 anything to him and plaintiff replied that he had not and

14 thereafter, Mr. Mack advised plaintiff that he would see him on

15 November 15, 2005.  Very shortly thereafter, Scott Sebastian

16 asked plaintiff if he had heard from his supervisor and plaintiff

17 told him that he had just now hung up the telephone from talking

18 to him.  He questioned plaintiff as to whether he had talked to

19 him before now and plaintiff told him that he had not.  He

20 requested that plaintiff come into his office as he wanted to

21 talk to plaintiff.  Plaintiff followed him into his office and he

22 closed the door and told plaintiff to sit down and tell him what

23 happened and why plaintiff did not come to work and why plaintiff

24 left from work.

25      Plaintiff told Mr. Sebastian he came to work but left

26 because of severe stomach pain and diarrhea that was brought on

27

28 Complaint                          -6-

1  by the food he had eaten at the senior citizen party on November
2  9, 2005. Mr. Sebastian said to plaintiff, "You were drunk and
3  you're drunk now. I smell alcohol on you now and throughout the
4  building. One of your co-workers told me that you came to work
5  drunk and you're still drunk and I want to help you." Mr.
6  Sebastian spoke loud enough so that other people could hear him.
7  Plaintiff told Mr. Sebastian that he was not drunk and had not
8  been drinking any alcohol. Mr. Sebastian continued telling
9  plaintiff that plaintiff was sick and that he wanted to help
10 plaintiff and asked plaintiff to fill out some forms and sign
11 them and go and take a breath test for alcohol. Mr. Sebastian
12 persisted in telling plaintiff that plaintiff was sick and that
13 he wanted to help plaintiff and that he wanted plaintiff to fill
14 out and sign these forms and go and take a breath test for
15 alcohol at Concentra Medical Center. He told plaintiff that he
16 would make the appointment for plaintiff. Plaintiff told Mr.
17 Sebastian that he would not sign the forms because he was not
18 drunk and that he had not been drinking alcohol. Mr. Sebastian
19 threatened to fire plaintiff or other disciplinary action if
20 plaintiff refused his orders. Plaintiff asked to speak to Sid
21 Ward, Director of Facilities and Executive Director Reginald
22 Lyles. Mr. Sebastian stated to plaintiff that he did not care
23 who plaintiff spoke to. Plaintiff made no further protest and
24 followed Mr. Sebastian out of his office. Plaintiff is informed
25 and believes and thereon alleges that third persons heard and
26 understood Scott Sebastian state that plaintiff was under the
27
28 Complaint                              -7-

11618840.tif - 9/4/2007 1:22:58 PM

1  influence of alcohol and that plaintiff was sick and needed help.
2  Plaintiff's co-workers were outside of Mr. Sebastian's office and
3  were looking at plaintiff with their heads bowed down. Plaintiff
4  was embarrassed and felt his character had been impugned and
5  violated and his intelligence insulted.

6      Scott Sebastian tried to contact Concentra Medical Center
7  but got no answer. Plaintiff implored that he would never come
8  to work drunk and would never think that Mr. Sebastian would
9  expect that of him. Mr. Sebastian stood quietly looking at
10 plaintiff. Then, breaking the silence he said I have my watch
11 dogs looking out for me when I am not here. He then picked up
12 the telephone again in an attempt to reach Concentra Medical
13 Center. He told them that he wanted a breath test for alcohol
14 administered to plaintiff and they asked him for what reason.
15 He replied that it was reasonable suspicion.

16     Plaintiff left the area and went back down to the basement
17 to talk to Brad Freeman, Alexander Harrison, Rita Johnson, and
18 Kathy A. Smith. All them saw how devastated plaintiff was and
19 felt his anger and disgust at Scott Sebastian's accusation that
20 he was drunk and smelled of alcohol and that was the reason he
21 made an appointment for alcohol testing at Concentra medical
22 Center for plaintiff.

23     Between 8:30 a.m. and 8:45 a.m., plaintiff left Grand Lake
24 Gardens and went over to Piedmont Gardens to talk to Sid Ward,
25 Director of Facilities. He was acquainted with his secretary,
26 Facility Assistant, Lisa Sandeford, and she informed plaintiff

27

28 Complaint                    -8-

1  that Mr. Ward was on vacation. Plaintiff gave her a friendly hug
2  and asked her if she smelled any alcohol on him or his breath.
3  She said she did not smell any alcohol. Plaintiff then told her
4  that was the reason he was there to speak to Mr. Ward because
5  Scott Sebastian accused him of being drunk and smelling of
6  alcohol. Plaintiff told her about the appointment made for him
7  at Concentra medical Center. Plaintiff felt Mr. Ward needed to
8  know about this matter as well as Reginald Lyles. The secretary
9  said that Scott was always doing something wrong and proceeded to
10 contact Reginald Lyles through his secretary so that plaintiff
11 could consult him about this matter.

12      Plaintiff waited about ten minutes for Reginald Lyles,
13 Executive Director of American Baptist Homes of the West
14 Corporation, aka American Baptist Homes of the West, aka Grand
15 Lake Gardens. Mr. Lyles came out of his office and greeted
16 plaintiff with a handshake. Plaintiff explained that Scott
17 Sebastian had made an appointment for plaintiff to go to
18 Concentra Medical Center to have an alcohol breath test done
19 because he said that plaintiff was drunk and that he smelled
20 alcohol on plaintiff. I explained to Mr. Lyles all of the facts
21 alleged herein. Mr. Lyles then told me to go and take the
22 alcohol breath test. When Mr. Lyles told me to take the alcohol
23 breath test I reasonably believed I had to take the test in order
24 to maintain my job.

25      Mr. Lyles knew or should have known that I was not drunk and
26 that I did not smell of alcohol, when he told me to take the
27
28 Complaint                        -9-

1  alcohol breath test.  Mr. Lyles did not reasonably investigate·
2  the accusation that I had come to work drunk before ordering me
3  to take the alcohol breath test.

4      I am informed and believe and thereon allege that Scott
5  Sebastian has asked some of my co-workers to say that I was drunk
6  and smelled like alcohol.

7      Scott Sebastian looks at me with a smile and tells me to mop
8  out the restroom before I go home.  Every time I take off from
9  work to go to the doctor, he wants my supervisor to write me up.
10  He seeks me out to tell me to clean up the walls, vacuum the
11  dining room much better than the way I have been doing it, etc.,
12  I tell him all right.

13      14)  Prior to filing his action herein Plaintiff filed a
14  complaint for employment harassment against Calvin May with the
15  DFEH.  Plaintiff received a Right To Sue Letter from DFEH and
16  filed his complaint herein against said defendants within one
17  year from the date the DFEH Right To Sue Letter was issued.  A
18  copy of his DFEH Complaint and Right To Sue Letter is marked
19  Exhibit A attached hereto and incorporated herein by this
20  reference.

21      15)  Prior to filing his action herein Plaintiff filed a
22  complaint for employment harassment against Scott Sebastian with
23  the DFEH.  Plaintiff received a Right To Sue Letter from DFEH and
24  filed his complaint herein against said defendants within one
25  year from the date the DFEH Right To Sue Letter was issued.  A
26  copy of his DFEH Complaint and Right To Sue Letter is marked
27
28  Complaint                          -10-

1   Exhibit B attached hereto and incorporated herein by this

2   reference.

3       16)  Prior to filing his action herein Plaintiff filed a

4   complaint for employment discrimination/harassment based on race

5   and or age against American Baptist Homes of the West, aka

6   American Baptist Homes Corporation, aka Grand Lake Gardens with

7   Equal Opportunity Commission ("EEOC") and DFEH.  A copy of the

8   EEOC & DFEH complaint and Right To Sue Letter from EEOC and Right

9   To Sue Letter from DFEH, and letter to each said defendant

10  notifying them of the Notice of case closure, which was mailed to

11  them by certified mail return receipt requested is marked Exhibit

12  C, attached hereto and incorporated herein by this reference.

13      17)  Plaintiff hereby demands a jury trial.

14                  **FIRST CAUSE OF ACTION**

15      **DISCRIMINATION/HARASSMENT AGAINST AMERICAN BAPTIST
        HOMES OF THE WEST, AKA AMERICAN BAPTIST HOMES OF THE
16      WEST CORPORATION, AKA GRAND LAKE GARDENS IN VIOLATION
        OF GOVERNMENT CODE SECTION 12940 ET SEQ.**

17

18      18)  Plaintiff hereby incorporates each allegation in

    paragraphs 1 through 17 into this First Cause of Action.
19

20      19)  Plaintiff is informed and believes and thereon alleges

21  that Calvin Mays published to a third person(s) that plaintiff

    came to work drunk and or that plaintiff was at work while drunk
22
    from alcohol.
23

24      20)  Calvin May's statement published about plaintiff was

25  unprivileged and false when defendant May published the statement

    about plaintiff.
26

27      21)  Calvin May published the false statement about

28  Complaint                     -11-

1  plaintiff maliciously.  Defendant May knew or should have known
2  the statement was false when he published the statement about
3  plaintiff.  He knew or should have known that he did not have
4  sufficient information to know if the statement was true or false
5  when published the statement about plaintiff.  He published the
6  statement about plaintiff with a reckless disregard to whether
7  the statement was true or false.

8      22)  Plaintiff is informed and believes and thereon alleges
9  that defendant May published the false statement about plaintiff
10  intentionally to cause plaintiff to suffer emotional distress.

11      23)  Plaintiff is informed and believes and thereon alleges
12  that defendant May published the false statement about plaintiff
13  because of his ill will and toward plaintiff.

14      24)  Plaintiff is informed and believes and thereon alleges.
15  that defendant May published the false statement about plaintiff
16  because of plaintiff's race and or age.

17      25)  Plaintiff's employer, American Baptist Homes of the
18  West and or Grand Lake Gardens knew that defendant May was
19  harassing plaintiff because of plaintiff's race and or age by
20  doing the acts alleged herein, but failed to take all reasonable
21  action to stop the discrimination and or harassment from
22  occurring.

23      26)  The conduct of defendants, and each of them was
24  motivated by racial animus and or age, and or perceived
25  disability.

26      27)  Defendants conduct violated Government Code Section
27
28  Complaint                    -12-

1 | 12940, et seq.

2     **28)** Defendants' conduct as alleged herein proximately

3 caused plaintiff to suffer injury and damages, including but not

4 limited to emotional distress, damage to his reputation,

5 humiliation, embarrassment, and caused him seek medical advice

6 and or counseling for mental and or emotional distress, and to

7 incur medical expenses and or expenses for mental and or

8 emotional counseling.

9     **29)** Defendant May's and or defendant Sebastian's conduct

10 proximately caused plaintiff to incur attorney fees.

11     **30)** Defendants and each of them in doing the acts and

12 failing to act as alleged herein were willful, wanton, malicious,

13 and oppressive in that defendant(s) acted with a reckless

14 disregard for the truth and or for plaintiff's rights. Motivated

15 by ill will toward plaintiff.  Defendant May published the false

16 information about plaintiff for the purpose of harassing

17 plaintiff and causing plaintiff emotional distress.  Defendant's

18 acts were despicable and justify the award of punitive damages.

19 **SECOND CAUSE OF ACTION**

20 **DISCRIMINATION/HARASSMENT AGAINST AMERICAN BAPTIST
21 HOMES OF THE WEST, AKA AMERICAN BAPTIST HOMES OF THE WEST
CORPORATION, AKA GRAND LAKE GARDENS, VIOLATION OF TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964 AS-AMENDED**

22

23     **31)** Plaintiff hereby incorporates each allegation in

paragraphs 1 through 30 into this Second Cause of Action.

24

25     **32)** Defendant's conduct alleged herein violates Title VII

of the Civil Rights Act of 1964, as amended.

26

27 ///

28 Complaint        -13-

## THIRD CAUSE OF ACTION

**HARASSMENT AGAINST CALVIN MAY, SCOTT SEBASTIAN,
IN VIOLATION OF GOVERNMENT CODE SECTION 12940, ET SEQ.**

33)  Plaintiff hereby incorporates each allegation in paragraphs 1 through 30 into this Third Cause of Action.

34)  Calvin May and or Scott Sebastian, in doing the acts complained about herein, acted intentionally for the purpose of causing plaintiff to suffer emotional distress.

35)  Plaintiff is informed and believes and thereon alleges that American Baptist Homes of the West, aka American Baptist Homes of the West Corporation, and or Grand Lake Gardens is liable to plaintiff for the conduct of Scott Sebastian alleged herein because Scott Sebastian in doing said acts was acting as a managerial employee on behalf of American Baptist Homes of the West, aka American Baptist Homes of the West Corporation, and or Grand Lake Gardens.

**Wherefore plaintiff prays for judgment as follows:**

1. General damages, past and future, according to proof;

2. Economic damages, past and future, according to proof;

3. Medical expenses, past and future;

4. Reasonable attorney fee;

5. For such further and other relief as the court deems just.

Dated: May 17, 2007              LAW OFFICES OF MICHAEL C. COHEN

                                 By: _____
                                     MICHAEL C. COHEN,
                                     Attorney for Plaintiff

Complaint                        -14-



# LAW OFFICES OF MICHAEL C. COHEN
## PROFESSIONAL CORPORATION
*1814 Franklin Street, Suite 900*
*Oakland, California 94612*
*Telephone: (510) 832-6436*
*Facsimile: (510) 832-6439*

*Michael C. Cohen, Esq.*

*Sherry Abrams, Esq.*

December 27, 2006

Calvin May
Grand Lake Gardens
401 Santa Clara Street
Oakland, CA 94610

Certified Return Receipt

> Re: Client: William J. Chapple
> Subject: Employment Discrimination/Harassment Complaint against
> Calvin May
> E200607M0586-01-apc

Dear Mr. May:

My office is representing William J. Chapple in his employment harassment claim against you for harassing him on the job. Enclosed is a copy Mr. Chapple's complaint that was filed with the Department of Fair Employment and Housing, and a copy of the department's Notice of Case Closure.

Very truly yours,

LAW OFFICES OF MICHAEL C. COHEN

Michael C. Cohen

Exhibit A

**COMPLAINT OF ⬛CRIMINATION UNDER**
**THE PROVISIONS OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**



**EMPLOY⬛** ⬛

OFEH # E-200607-M-0586-01-⬛

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

| YOUR NAME (indicate Mr. or Mrs.) | TELEPHONE NUMBER ( |
|---|---|
| William J. Chapple | |

ADDRESS
2870 Adeline Street #217

| CITY/STATE/ZIP | COUNTY |
|---|---|
| Berkeley, CA 94703 | Alameda |

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP**
**COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

| NAME | TELEPHONE NUMBER |
|---|---|
| Calvin May | |

ADDRESS
Grand Lake Gardens
401 Santa Clara, CA 94610

| CITY/STATE/ZIP | COUNTY | COUN |
|---|---|---|
| Oakland, CA 94610 | | |

| NO. OF EMPLOYEES/MEMBERS (if known) | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPON |
|---|---|---|
| unknown | 11/11/05 | |

THE PARTICULARS ARE:

On  11/10/05 & 11/11/05  was

_____ fired
_____ laid off
_____ demoted
__X__ harassed
_____ genetic characteristics testing
_____ forced to quit

_____ denied employment
_____ denied promotion
_____ denied transfer
_____ denied accommodation
_____ apprenticeship non-job-related inquiry
_____ other (specify)

_____ denied family or me
_____ denied pregnancy le
_____ denied equal pay
_____ denied right to wea
_____ denied pregnancy re

by  Calvin May, resident services driver

Name of Person                    Job Title (supervisor/manager/personnel director/etc.)

because of my:

_____ sex
__X__ age
_____ religion
__X__ color

_____ national origin/ancestry
_____ medical status
_____ sexual orientation
_____ association

_____ physical disability
_____ mental disability

_____ other (specify)

_____ cancer
_____ genetic characteristic

_____ (Circle one) filing/
protesting; participating in
investigation (retaliation for)

the reason given by  Mr. May told client's supervisor at client's job, that Mr.
Chapple was drunk on the job.  He acted with malice.

Was because of
[please state
what you believe
to be reason(s)]

Mr. May maliciously published false statements about Mr.
Chapple to Mr. Chapple's employer to harass Mr Chapple becaus
of Mr. Chapple's race and or age.  see attached declaration
which is incorporated herein.

I wish to pursue this matter in court.  I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice.  I understand that if I want a federal notice of right-to-sue, I
visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act
whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so.  I understand it is the Department of Fair Employment and Housing's policy to not process
or begin a complaint when the complaint has been based on the basis of "Complaint Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information a
belief, and as to those matters I believe it to be true.

Dated  11/3/05

At  Oakland, CA

City

William J. Chapple

COMPLAINANT'S SIGNATURE

RECEIVED
NOV 03 2006

DATE FILED: November 3, 2006
Department of Fair
Employment and Housing
Oakland District Office

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFOR

⬛⬛ -- 11618840:SR - 9/4/2007 1:22:53 PM



EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

Defendants

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor - charter of Infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

CHRONICLE OF EVENTS        Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was allright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for me for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled



## CHRONICLE OF EVENTS                                            Page 3

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said alright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results - -one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months -- May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 AM. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling



# CHRONICLE OF EVENTS

**Page 4**

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc... I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

_William J. Chapple_
WILLIAM J. CHAPPLE

RECEIVED

NOV 0 3 2006

Dep_____ _air
Employment and Housing
Oakland District Office

11618840.tif - 9/4/2007 1:22:53 PM

STATE OF CALIFORNIA - STATE AND CONS     SERVICES AGENCY                          ARNOLD SCHWARZENEGGER

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



November 8, 2006


William J. Chapple
c/o
LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street, Ste 900
Oakland, CA 94612

RE:   E200507M0586-01-apc
      CHAPPLE/MAY, CALVIN, As an Individual

Dear William J. Chapple:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 3, 2006 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

11618840.tif - 9/4/2007 1:22:53 PM

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:     Case File

May Caalvin
Resident Services Driver
GRAND LAKE GARDENS
401 Santa Clara
Oakland, CA  94610

DFEH-200-43 (06/05)

11618840 fif - 9/4/2007 1:22:53 PM



# LAW OFFICES OF MICHAEL C. COHEN
## PROFESSIONAL CORPORATION
*1814 Franklin Street, Suite 900*
*Oakland, California 94612*
*Telephone: (510) 832-6436*
*Facsimile: (510) 832-6439*

*Michael C. Cohen, Esq.*

*Sherry Abrams, Esq.*

December 27, 2006

Scott Sebastian
Grand Lake Gardens
401 Santa Clara Street
Oakland, CA 94610

Certified Return Receipt

      Re: Client: William J. Chapple
      Subject: Employment Discrimination/Harassment Complaint against
      Scott Sebastian
      E200607M0586-03-apc

Dear Mr. Sebastian:

      My office is representing William J. Chapple in his employment harassment claim against you for harassing him on the job. Enclosed is a copy Mr. Chapple's complaint that was filed with the Department of Fair Employment and Housing, and a copy of the department's Notice of Case Closure.

      Very truly yours,

      LAW OFFICES OF MICHAEL C. COHEN

      Michael C. Cohen

Exhibit B

11618840.tif - 9/4/2007 1:22:53 PM

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

EMPLOYMENT

DFEH # E-200607-M-0586-03

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)    TELEPHONE NUMB.

William J. Chapple

ADDRESS

2870 Adaline Street #217

CITY/STATE/ZIP    COUNTY

Berkeley, CA 94703

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME    TELEPHONE NUMBE

Scott Sebastian

ADDRESS    Grand Lake Gardens    DF

401 Santa Clara, CA 94610

CITY/STATE/ZIP    COUNTY    CO

Oakland, CA 94610    Alameda

NO. OF EMPLOYEES/MEMBERS (if known)    DATE MOST RECENT OR CONTINUING DISCRIMINATION    continuing harassm
unknown    TOOK PLACE (month, day, and year)    11/11/05

THE PARTICULARS ARE:   Prior to 11/11/05 and continuing

On ___11/11/05___ I was    harassment

| | |
|---|---|
| fired | denied employment |
| laid off | denied promotion |
| demoted | denied transfer |
| X harassed | denied accommodation |
| genetic characteristics testing | impermissible non-job-related inquiry |
| forced to quit | other (specify) |

denied family m
denied pregnanc
denied equal pay
denied right to u
denied pregnanc

by   Scott Sebastian, director of Operations

Name of Person    Job Title (supervisor/manager/personnel director/etc.)

because of my:

| | |
|---|---|
| sex | national origin/ancestry |
| X age | marital status |
| religion | sexual orientation |
| X race/color | association |

physical disability
mental disability

cancer
genetic characteristic

(Circle one) filing
protesting/participating in
investigation harassment ba
other (specify)

the reason given by   Scott Sebastian said I was drunk while at work; he forced me
to take breath alcohol test.   Name of Person and Job Title

Was because of   Mr. Sebastian engaged in continuing course of harassment agai
[please state   against me because of my race and/or age.  Please see
what you believe   attached declaration which is incorporated herein.
to be the reason(s)]

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor is it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process a complaint once the complainant has been issued the basis of "Complaint Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated   11/3/06

At   Oakland, CA 94612
City

COMPLAINANT'S SIGNATURE

RECEIVED
NOV 0 3 2006
Department of Fair
Employment and Housing
Oakland District Office

DATE FILED:
November 3, 2006

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIF

11618840.tif - 9/4/2007 1:22:53 PM



EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were



## CHRONICLE OF EVENTS                    Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDERFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

## CHRONICLE OF EVENTS                                                    Pag

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen part that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in th stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said allright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results - -one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months – May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 AM. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling

CHRONICLE OF EVENTS                                                  Pag

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restrooms before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc.. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Sage and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                          ARNOLD SCHWARZENEG
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



November 8, 2006


William J. Chapple
c/o
LAW OFFICES OF MICHAEL C. COHEN
1814 Franklin Street Ste 900
Oakland, CA 94612

RE:    E200507M0586-03-apc
       CHAPPLE/SEBASTIAN, SCOTT, As an Individual

Dear William J. Chapple:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
November 3, 2006 because an immediate right-to-sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity
Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this
DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act,
whichever is earlier.

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:    Case File

Scott Sebastian
Director of Operations
GRAND LAKE GARDENS
401 Santa Clara Avenue
Oakland, CA  94610

DFEH-200-43 (06/06)

11618840.tif - 9/4/2007 1:22:53 PM



EEOC Form 161-B (2/98)    U.S. EQUAL EMPLOYMENT OPPOR      TY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | William J. Chapple | From: | Oakland Local Office - 555 |
|-----|---------------------|-------|----------------------------|
|     | 2870 Adeline Street # 217 |  | 1301 Clay Street |
|     | Berkeley, CA 94703 |  | Suite 1170-N |
|     |  |  | Oakland, CA 94612 |

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|-----------------|---------------------|---------------|
|  | Julian F. Melendres, |  |
| 555-2006-00910 | Investigator Support Asst | (510) 637-3242 |

(See also the additional information enclosed with thi.

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Titl the ADA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEO be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applie your case:

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITH 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be los

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the char, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brou in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due any violations that occurred more than 2 years (3 years) before you file suit may not be collectible..

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)                                                                02/20/07
                          Michelle L. Nardella,                          (Date Mailed)
                          Director

cc:    Deborah Hardina                              Michael C. Cohen, Esq.
       Corp. Director of HR                         1814 Franklin Street, Ste.900
       AMERICAN BAPTIST HOMES OF                    Oakland, CA 94612
       the West
       6120 Stoneridge Mall, Rd.3rd Fl
       Pleasanton, CA 94588

Exhibit C

11618840.tif - 9/4/2007 1:22:53 PM

EEOC Form 161-B (1/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **William J. Chapple**
2870 Adeline Street # 217
Berkeley, CA 94703

From:  Oakland Local Office - 555
1301 Clay Street
Suite 1170-N
Oakland, CA 94612

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 555-2006-00912 | Julian F. Melendres, Investigator Support Asst | (510) 637-3242 |

*(See also the additional information enclosed with this)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Michelle L. Nardella,
Director

02/20/07
*(Date Mailed)*

cc:  Scott Sebastian
Director of Resident Services
GRAND LAKE GARDENS
401 Santa Clara Ave.
Oakland, CA 94610

Michael C. Cohen, Esq.
1814 Franklin St, Ste.900
Oakland, CA 94612



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Oakland Local Office**

1301 Clay Street, Suite 1170-N
Oakland, CA 94612-5217
(510) 637-3230
TTY (510) 637-3234
FAX (510) 637-3235

Mr. William J. Chapple
2870 Adeline Street #217
Berkeley, CA 94703

Dear Mr. Chapple:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC), it is important for you to understand some of our case processing procedures.

A copy of your charge will automatically be filed with the State of California, Department of Fair Employment and Housing. This is being done to protect your right to file a suit in state court, should you desire to do so at a later date. It is not necessary for you to contact the state agency. Because of a formal agreement between the EEOC and the state agency, the EEOC will be processing your charge. The state agency will not process it unless we request them to do so. This rarely happens, but, if it does, we will certainly let you know that we are transferring your charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitations set forth both federal and state laws. In this instance, your charge will be served within ten days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your charge number on all correspondence.

Sincerely,

*Julian Melendres*

Mr. Julian Melendres, EEOC Representative
(510) 637-3242

11618840.tif - 9/4/2007 1:22:53 PM

EMPLOYMENT

COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

DFEH USE ONLY

EEOC CHARGE # 555-2006-00911

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Mrs.)

William J. Chapple

RECEIVED

TELEPHONE NUMBER

ADDRESS

2570 Adeline Street #217

AUG 02 2006

CITY/STATE/ZIP

Berkeley, CA 94703

EEOC-OLO

COUNTY  Alameda

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME

Grand Lake Gardens

TELEPHONE NUMBER

ADDRESS

401 Santa Clara Avenue

DFEH

CITY/STATE/ZIP

Oakland, CA 94670

COUNTY

COU

NO. OF EMPLOYEES/MEMBERS (if known)

approx. 50

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year)

11/11/05

RESPON

THE PARTICULARS ARE:

On 11/11/05          I was

____ fired
____ laid off
____ demoted
__X__ harassed
____ genetic characteristics testing
____ forced to quit

____ denied employment
____ denied promotion
____ denied transfer
____ denied accommodation
____ impermissible non-job-related inquiry
__X__ other (specify) discriminated agains

____ denied family le or m
____ denied pregnancy l
____ denied equal pay
____ denied right to wea
____ denied pregnancy a

by    Scott Sebastian, Dir. of Operations; Calvin May Resident Service
Name of Person                                    Job Title (supervisor/manager/personnel director/etc.)                    Driver

because of my:    ____ sex
                 ____ age
                 ____ religion
                 __X__ race/color

____ national origin/ancestry
____ marital status
____ sexual orientation
____ association

____ physical disability
____ mental disability

____ other (specify)

____ cancer
____ genetic characteristic

____ filing and filing a
protesting, participating in
investigation/opposition (req

the reason given by    Scott Sebastian, Dir. of Operations, Calvin May, Resident
                       Name of Person and Job Title                                      Services Driver

Was because of
[please state
what you believe
to be reason(s)]

They accused me of coming to work "drunk"; ie. under the
influence of alcohol. Please see attached declaration which
is hereby incorporated herein. I believe I was falsely accuse
because of my race. I am an African American.

I wish to pursue this matter in court. I certify require that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must
visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 300 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act,
whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process
or accept a complaint come to come not rest ... nor shared on the basis of "Complainant's Election Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except; as to matters stated on my information
belief, and as to these matters I believe it to be true.

Dated  7/18/06

At  Oakland, CA
                                City

William J. Chapple
COMPLAINANT'S SIGNATURE

DATE FILED:

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFI

EEOC CHARGE # 555-2006-00912.

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

RECEIVED

AUG 0 2 2006

EEOC-OLO

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial
Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing
employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the
party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and
experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two
Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident
Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of
Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them
how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I
spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER
HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They
suggested I go to the doctor. I advised them that I thought it was the food from the party that had my
stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me.
He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then
left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD
MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to
him that it was the food from the birthday party the night before that made me sick. Some time later I
learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT
SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal
warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I
had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY,
Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD
MACK told me that he would have to do an investigation upon his return from being out of town from
Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the
restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I
spoke to him and he kept walking straight by me into his office. He exited his office and began going into
the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were



**RECEIVED**

AUG 0 2 2006

**EEOC-OLO**

CHRONICLE OF EVENTS

EEOC CHARGE # 555-2006-00913

Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was allright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 584 Embarcadero Center West, Oakland, California 94507 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I explained that I would never come to work drunk and would never think that he would expect this out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN's accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

RECEIVED 

AUG 0 2 2006

EEOC-OLO

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said alright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concerra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results -- one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concerra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months – May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 A.M. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling



RECEIVED

AUG 0 2 2006

EEOC-OLO

**CHRONICLE OF EVENTS**          EEOC CHARGE # 555-2006-00934

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 18, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Sage and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of

the United States of America that the foregoing statement is true and correct and that this declaration was

executed on July 12, 2006, at Oakland, California.

WILLIAM F. CHAPPLE

ATE OF CALIFORNIA - Bee and Consent Service A.                                                                      ARNOLD SCHWARZENEGGER

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

(SEE ADDRESS CHECKED BELOW)

| | | |
|---|---|---|
| **EEOC Number:** | **555-2006-00912** | |
| **Case Name:** | **William J. Chapple v. Grand Lake Gardens** | |
| **Date:** | **August 2, 2006** | |

TY & (800) 700-2220

☐  1001 Tower Way, Suite 280
   Bakersfield, CA 93305
H  (661) 395-2729

☐  1320 E. Shaw Avenue, Suite 150
   Fresno, CA 93710
C  (559) 244-4760

☐  611 West Sixth Street, Suite 1590
   Los Angeles, CA 90017
S/H (213) 439-6799

☐  1515 Clay Street, Suite 701
   Oakland, CA 94612
M  (510) 622-2941

☐  2000 "O" Street, Suite 120
   Sacramento, CA 95814
E  (916) 445-5523

☐  1350 Front Street, Room 3005
   San Diego, CA 92101
D  (619) 645-2681

☐  San Francisco District Office
   1515 Clay Street, Suite 701
A  Oakland, CA 94612
   (510) 622-2873

☐  111 North Market Street, Suite 310
   San Jose, CA 95113
G  (408) 277-1277

☐  2101 East Fourth Street, Suite 255-B
   Santa Ana, CA 92705
K  (714) 558-4266

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being referred to the California Department of Fair Employment and Housing (DFEH) by the U. Equal Employment Opportunity Commission (EEOC). The complaint will be f in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

**No response to the DFEH is required by the respondent.**

The EEOC will be responsible for the processing of this complaint. DFEH wi not be conducting an investigation into this matter. EEOC should be contac directly for any discussion of the charge. DFEH is closing its case on the ba of "processing waived to another agency."

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right-to-notice. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed State of California Superior or Justice Court. Government Code section 129 subdivision (b), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consul attorney to determine with accuracy the date by which a civil action must b filed. This right to file a civil action may be waived in the event a settlemen agreement is signed. Questions about the right to file under federal law sho be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complaint filed.

**Remember: This Right-To-Sue Notice allows you to file a private lawsuit in State court.**

Sincerely,

WANDA J. KIRBY
Chief Deputy Director

DFEH-200-02 (07/05)

11618841.tif - 9/4/2007 1:31:08 PM



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Oakland Local Office

1301 Clay Street, Suite 1170-N
Oakland, CA 94612-5217
(510) 637-3230
TTY (510) 637-3234
FAX (510) 637-3235

Mr. William J. Chapple
2870 Adeline Street #217
Berkeley, CA 94703

Dear Mr. Chapple:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC), it is important for you to understand some of our case processing procedures.

A copy of your charge will automatically be filed with the State of California, Department of Fair Employment and Housing. This is being done to protect your right to file a suit in state court, should you desire to do so at a later date. It is not necessary for you to contact the state agency. Because of a formal agreement between the EEOC and the state agency, the EEOC will be processing your charge. The state agency will not process it unless we request them to do so. This rarely happens, but, if it does, we will certainly let you know that we are transferring your charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitations set forth both federal and state laws. In this instance, your charge will be served within ten days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your charge number on all correspondence.

Sincerely,

*Julian Melendres*

Mr. Julian Melendres, EEOC Representative
(510) 637-3242



**\* \* \* EMPLOYMENT \* \* \***

COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

DFEH #_____

DFEH USE ONLY

EEOC CHARGE # 555-2006-00910

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

RECEIVED

| YOUR NAME (indicate Mr. or Mrs.) | TELEPHONE NUMBE |
|---|---|
| William J. Chapple | |

ADDRESS
2870 Adeline Street #217

AUG 0 2 2006

CITY/STATE/ZIP
Berkeley, CA 94703

EEOC-OLO

COUNTY  Alameda

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESH
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
American Baptist Homes of the West                                   TELEPHONE NUMBE

ADDRESS
6120 Stoneridge Mall Rd. 3rd. Floor                                 DF

CITY/STATE/ZIP
Pleasanton, CA 94588                          COUNTY            CO.

NO. OF EMPLOYEES/MEMBERS (if known)
APPROX. 50

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year)    11/11/05                        RESP.

THE PARTICULARS ARE:

On 11/11/05  I was

___ fired          ___ denied employment        ___ denied family c
___ laid off       ___ denied promotion          ___ denied pregnanc
_x_ demoted        ___ denied transfer            ___ denied equal pay
___ harassed       ___ denied accommodation       ___ denied right to v
___ genetic characteristics testing   ___ impermissible non-job-related inquiry  ___ denied pregnancy
___ forced to quit  _x_ other (specify) discriminated agair

by   Scott Sebastian, Director of Operations, Calvin May, Resident
     Name of Person                                              Services Driver
                Job Title (supervisor/manager/personnel director/etc.)

because of my:  ___ sex      ___ national origin/ancestry   ___ physical disability   ___ cancer        ___ (Circle one) filing a
                ___ age      ___ marital status              ___ mental disability     ___ genetic characteristics  pertaining; participating in
                ___ religion ___ sexual orientation                                                      in investigation (retaliation); bi
                _x_ race/color ___ association              ___ other (specify)

the reason given by  Scott Sebastian, Director of Operations, Calvin May, Resident
                     Name of Person and Job Title                          Services Driver

Was because of
(please state
what you believe
to be reason(s))

They accused of coming to work "drunk"; ie under the influenc
or alcohol. Please see attached declaration which is hereby
incorporated herein. I believe I was falsely accused because
of my race. I am an African American.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-su
with the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discrimination
whichever is earlier.

I have not been coerced into making this request, nor is it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not pr
request a complaint until the complainant has been cleared on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my informati
belief, and as to those matters I believe it to be true.

Dated   7/13/06

At   Oakland, CA
        City

*William J. Chapple*
COMPLAINANT'S SIGNATURE

DATE FILED:

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CAL

11618841.tif - 9/4/2007 1:31:08 PM

 

EEOC CHARGE # 555-2006-00910

EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

**RECEIVED**

AUG 0 2 2006

**EEOC-OLO**

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of Wellness Department and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They suggested I go to the doctor. I advised them that I thought it was the food from the party that had my stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me. He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to him that it was the food from the birthday party the night before that made me sick. Some time later I learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY, Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD MACK told me that he would have to do an investigation upon his return from being out of town from Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I spoke to him and he kept walking straight by me into his office. He exited his office and began going into the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

 

RECEIVED

AUG 0 2 2006

EEOC-OLO

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN'S accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:30 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled



RECEIVED

AUG 0 2 2006

EEOC-OLO

EEOC CHARGE # 555-2006-00910

CHRONICLE OF EVENTS        Page 3

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I could feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good. " I said alright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Concentra Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results - one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Concentra Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDEFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN and to DONALD MACK my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 AM. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREZA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that in almost six months – May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 AM. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling



**RECEIVED**

**AUG 0 2 2006**

**EEOC-OLO**

CHRONICLE OF EVENTS

EEOC CHARGE # 555-2006-00910

Page 4

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He seeks me out to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Sage and Dr. Mongo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPLE

STATE OF CALIFORNIA - State and Consumer Services Agency                                      ARNOLD SCHWARZENEGGER

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
(SEE ADDRESS CHECKED BELOW)

TTY # (800) 700-2320

☐ 1001 Tower Way, Suite 250
H   Bakersfield, CA 93309
    (661) 395-2729

☐ 1320 E. Shaw Avenue, Suite 150
C   Fresno, CA 93710
    (559) 244-4760

☐ 611 West Sixth Street, Suite 1500
S/T Los Angeles, CA 90017
    (213) 439-6799

☑ 1515 Clay Street, Suite 701
M   Oakland, CA 94612
    (510) 622-2941

☐ 2000 "O" Street, Suite 120
E   Sacramento, CA 95814
    (916) 445-9924

☐ 1350 Front Street, Suite 3005
D   San Diego, CA 92101
    (619) 645-2681

☐ San Francisco District Office
A   1515 Clay Street, Suite 701
    Oakland, CA 94612
    (510) 622-2873

☐ 111 North Market Street, Suite 810
G   San Jose, CA 95113
    (408) 277-1277

☐ 2101 East Fourth Street, Suite 255-B
K   Santa Ana, CA 92705
    (714) 558-4266

EEOC Number:
Case Name:

Date:

555-2006-00910
William J. Chapple v. American
Baptist Homes of the West
August 2, 2006

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being referred
the California Department of Fair Employment and Housing (DFEH) by the L
Equal Employment Opportunity Commission (EEOC).  The complaint will be
in accordance with California Government Code section 12960.  This notice
constitutes service pursuant to Government Code section 12962.

**No response to the DFEH is required by the respondent.**

The EEOC will be responsible for the processing of this complaint.  DFEH wi
not be conducting an investigation into this matter.  EEOC should be contact
directly for any discussion of the charge.  DFEH is closing its case on the ba
of "processing waived to another agency."

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right-to-
notice.  According to Government Code section 12965, subdivision (b), you
may bring a civil action under the provisions of the Fair Employment and
Housing Act against the person, employer, labor organization or employment
agency named in the above-referenced complaint.  The lawsuit may be filed i
State of California Superior or Justice Court.  Government Code section 1296
subdivision (b), provides that such a civil action must be brought within one
year from the date of this notice.  Pursuant to Government Code section
12965, subdivision (d)(1), this one-year period will be tolled during the
pendency of the EEOC's investigation of your complaint.  You should consult
attorney to determine with accuracy the date by which a civil action must be
filed.  This right to file a civil action may be waived in the event a settlement
agreement is signed.  Questions about the right to file under federal law shoul
be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complaint is
filed.

**Remember:  This Right-To-Sue Notice allows you to file a private lawsuit in
State court.**

Sincerely,

WANDA J. KIRBY
Chief Deputy Director

11618841.tif - 9/4/2007 1:31:08 PM

EEOC Charge No.: <u>555-2006-00910</u>
Charging Party: William J. Chapple                    Date: 8/2/2006
Respondent: American Baptist Homes Of The West
Dear Sir/Madam:

The San Francisco District Office of the Equal Employment Opportunity Commission (EEOC) has a mediation program designed as an alternative approach in assisting the parties in finding a way to resolve the matter prior to the initiating of an in-depth investigation into the allegations. Please see attached Mediation Fact Sheet and Questions & Answer Sheet.

Participation is voluntary; both parties must agree to participate in the program. If you are interested in participating, please complete the bottom portion of this notice and sign and return (or fax) this entire form to the above address. If both parties agree to participate, we will assign the case to a neutral mediator who will conduct the mediation at no cost to the parties. If a settlement is reached as a result of the mediation, the mediator is required to report to the EEOC any benefits received for purposes of providing aggregate data to the EEOC for Mediation Program evaluation purposes only, and the individual terms of the agreement will not be disclosed to the public.

The parties acknowledge that the mediator possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation. In the event the mediation does not result in a settlement, the case will be transferred to the Enforcement Unit of the appropriate EEOC office and an investigation will begin.

If you have any questions, please call Tina Bonaparte, the ADR Program Assistant at (415) 625-5630. Fax this form to (415) 625-5631 or mail it to us at:

EEOC - San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105-1260

Please place a "X" on your choice:

I/we ARE INTERESTED in participating in the Mediation program. _____

I/we ARE NOT INTERESTED in participating in the Mediation program. _____

Signature: _____   Job Title: _____   Date: _____

Print Full Name: _____   Day Time Phone Number: _____

Address P.O. Box _____   City, State and Zip Code: _____

Due to demand and limited resources, failure to respond within 15 days from the date of this letter will result in the charge being removed from the Mediation Program. If you decline the mediate this charge, your case will be forwarded to the Enforcement Unit and the investigatory process will proceed in accordance with established procedures.

11618841.tif - 9/4/2007 1:31:08 PM

**COMPLAINT** **DISCRIMINATION UNDER**
**THE PROVISIONS OF THE CALIFORNIA**
**FAIR EMPLOYMENT AND HOUSING ACT**

**EMPLOYMENT**

DFEH #

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (Indicate Mr. or Ms.)

William J. Chapple

TELEPHONE NO.

ADDRESS

2870 Adeline Street #217

CITY/STATE/ZIP

Berkeley, CA 94703

COUNTY Alameda

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICE-SHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME

American Baptist Homes of the West Corporation

TELEPHONE NO.

ADDRESS

6120 Stoneridge Mall Rd. 3rd. Floor

CITY/STATE/ZIP

Pleasanton, CA 94588

COUNTY

NO. OF EMPLOYEES/MEMBERS (if known)

Approx. 50

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)

11/11/05

THE PARTICULARS ARE: continuing pattern of harassment prior to and on

On 11/11/05  I was

____ fired
____ laid off
____ demoted
____ harassed
____ genetic characteristics testing
____ forced to quit

____ denied employment
____ denied promotion
____ denied transfer
____ denied accommodation
____ impermissible non-job-related inquiry
__X__ other (specify) discriminated aga

____ denied family
____ denied preg
____ denied accom
____ denied right t

by    Scott Sebastian, Director of Operations, Calvin May, Resident Services Driver

because of my:    ____ age    ____ national origin/ancestry    ____ physical disability    ____ sex    
                 __X__ race    ____ marital status    ____ mental disability    ____ sexual orientation    
                 ____ religion    ____ association    ____ other (specify)

the reason given by    Scott Sebastian, Director of Operations, Calvin May, Reside Services Driver

Was because of    They accused of coming to work "drunk"; is under the influ
what you believe    of alcohol. Please see attached declaration which is hereby
to be reason(s):    incorporated herein. I believe I was falsely accused because
                    of my race. I am an African American.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information belief, and as to those matters I believe it to be true.

Date    7-15-06

At    Oakland, CA
       City

William J. Chapple

RECEIVED
NOV 03 2006
Department of Fair
Employment and Housing
Oakland District Office

STATE OF CA

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:

11618841.tif - 9/4/2007 1:31:08 PM



* * * EMP  MENT * * *

**COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #

COPY
NOT FOR USE

**CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**

YOUR NAME (indicate Mr. or Mrs.)                                    TELEPHONE
    William J. Chapple

ADDRESS
    2870 Adeline Street #217

CITY/STATE/ZIP                                                     COUNTY
    Berkeley, CA 94703                                             Alame

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTIC
COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

NAME                                                              TELEPHONE
    Grand Lake Gardens

ADDRESS
    401 Santa Clara Avenue

CITY/STATE/ZIP                                                     COUNTY
    Oakland, CA 94610

NO. OF EMPLOYEES/MEMBERS (if known)       DATE MOST RECENT OR CONTINUING DISCRIMINATION
    approx. 50                            TOOK PLACE (month, day, and year)
                                              11/11/05

THE PARTICULARS ARE:                                              forced to take alcohol t
On  11/11/05            I was    ___ fired          ___ denied employment      ___ denied to
                                 ___ laid off       ___ denied promotion       ___ denied pr
                                 ___ demoted        ___ denied transfer        ___ denied acc
                                 _X_ harassed       ___ denied accommodation   ___ denied dis
                                 ___ genetic characteristics testing  ___ incarceration work-related injury  ___ other, spe
                                 ___ forced to quit  ___ the basis         discriminated aga

by      Scott Sebastian, Dir. of Operations; Calvin May Resident Serv
        Reginald Lyles          (Job Title Supervisor/manager/personnel Director/etc.)        Driver

because of my:  ___ sex          ___ medical condition/pregnancy   ___ physical disability    ___ birth cont
                _X_ age          ___ marital status                ___ mental disability       ___ pregnancy, pre-birth
                ___ religion     ___ sexual orientation                                        ___ complaint, involved
                _X_ color        ___ retaliation          _X_ other, specify  perceived disability

the reason given by  Scott Sebastian, Dir. of Operations, Calvin May, Resident
                              (Name of Person and Job Title)                      Services Drive

Was because of     They accused me of coming to work "drunk"; ie. under the
(please state       influence of alcohol.  Please see attached declaration whi
what your belief    is hereby incorporated herein.  I believe I was falsely accu
to be reason)       because of my race.  I am an African American.
                    Also because of my age and a perceived disability.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated    11/7/05

         Oakland, CA
At _____
            City

                          [signature] William  RECEIVED
                          COMPLAINANT'S SIGNATURE
                          NOV 0 9 2006
                          Department of Fair
                          Employment and Housing
                          Oakland District Office

DATE FILED:

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

11618841.tif - 9/4/2007 1:31:08 PM  STATE OF CAL



EMPLOYMENT DISCRIMINATION OF WILLIAM J. CHAPPLE
BY GRAND LAKE GARDENS, parent company, AMERICAN BAPTIST HOME OF THE WEST
CORPORATION

Defendants:

Board of Directors
Reginald Lyles, Executive Director
Scott Sebastian, Director of Operations
Calvin May, Resident Services Driver

Violation of Title VII of the Civil Rights Act of 1964, 42 USC and 2000E. Age Discrimination, Racial
Discrimination, Intentional Wrongful Act, Harassment. Violation of Rules and Regulations governing
employee and Supervisor - charter of infraction. Infliction of Mental and Emotional Distress.

## CHRONICLE OF EVENTS

On November 9, 2005, I was invited to an on-site Senior Citizen's Birthday Party. I arrived at the
party at 8:00 PM and left at 10:00 PM.

Early morning, directly after and between midnight and 1:00 AM, I began to feel nauseous and
experienced severe pain and cramping in my stomach, along with diarrhea. The next morning, I took two
Tylenols and went to work still feeling nauseous with the upset stomach, pain and diarrhea.

I reported in for work at 7:30 AM, November 10, 2005. I spoke to CALVIN MAY, Resident
Services Driver who works under SCOTT SEBASTIAN, Director of Operations, Ms. Rita Johnson of
Wellness Department, and Kathy A. Smith, Certified Nursing Assistant, Wellness Department and told them
how much I enjoyed the party and my delight at seeing the seniors, too, having fun.

Thereafter, I went down to the basement to change clothes in preparation of starting my work. I
spoke to BRAD FREEMAN, Maintenance #1 worker of Environmental Services and ALEXANDER
HARRISON, Maintenance #2 Worker and told them I did not feel well and that I had stomach pain. They
suggested I go to the doctor. I advised them that I thought it was the food from the party that had my
stomach so upset and causing the pain and diarrhea. BRAD FREEMAN said that he would cover for me.
He agreed to tell our supervisor DONALD MACK, Assistant Director of Facilities about my illness. I then
left the job, punching out between 8:00 AM and 8:30 am.

Upon my arrival at home I was still feeling very sick and got into bed to rest. I called DONALD
MACK my supervisor between 12:30 PM and 1:00 PM to personally explain why I left the job. I related to
him that it was the food from the birthday party the night before that made me sick. Some time later I
learned that others, too, had ill effects from the food at the party.

During this conversation with my supervisor, DONALD MACK, he told me that SCOTT
SEBASTIAN, Director of Operations, told him that I came to work drunk and that he must give me a verbal
warning. I told him that I was not drunk and I came home because my stomach was severely hurting and I
had diarrhea. Further, DONALD MACK told me that SCOTT SEBASTIAN told him that CALVIN MAY,
Resident Services Driver, told him that I was drunk and smelling like alcohol. Supervisor DONALD
MACK told me that he would have to do an investigation upon his return from being out of town from
Friday, November 11, 2005 to Tuesday, November 15, 2005.

I returned to work on November 11, 2005, punching in at 7:00 AM and started to clean up the
restroom, the office, lobby, windows and observed SCOTT SEBASTIAN who was in early that morning. I
spoke to him and he kept walking straight by me into his office. He exited his office and began going into
the restroom, the lobby and into all of the offices. CALVIN MAY and GREG, the Security Officer were

**CHRONICLE OF EVENTS**

Page 2

sitting at the desk. At that instance I received a telephone call from my supervisor DONALD MACK who inquired how I was feeling and I told him I was alright. He asked if SCOTT SEBASTIAN had said anything to me and I replied that he had not and thereafter MACK advised me that he would see me on November 15, 2005. Very shortly thereafter SCOTT asked me if I had heard from my supervisor and I told him that I had just now hung up the telephone from talking to him. He questioned me as to whether I had talked to him before now and I told him that I had not. He requested that I come into his office as he wanted to talk to me. I followed him into his office and he closed the door and told me to sit down and tell him what happened and why I did not come to work and why I left from work.

I told him I came to work but left because of my severe stomach pain and diarrhea that was brought on by the food I had eaten at the senior citizen party on November 9, 2005. SCOTT SEBASTIAN's exact words back to me were, "You were drunk and you're drunk now. I smell alcohol on you now and throughout the building. One of your co-workers told me that you came to work drunk and you're still drunk and I want to help you." I told him I was not drunk and have not been drinking any alcohol. He continued telling me that I am sick and that he wanted to help me and asked that I fill out some forms and sign them and go and take a Breath test for alcohol.

SCOTT SEBASTIAN persisted in telling me that I was sick and that he wanted to help me and that he wanted me to fill out and sign these forms and go and take a breath test for alcohol at Concentra Medical Center, 384 Embarcadero Center West, Oakland, California 94607 - (510) 465-9565. He said he would make the appointment for me. I told him that I would not sign these forms because I was not drunk and that I had not been drinking. He threatened me with firing or disciplinary action if I refused his orders.

I asked to speak to SID WARD, Director of Facilities and Executive Director REGINALD LYLES. He stated that he did not care who I talked to. I made no further protest and followed him out of his office. My co-workers were outside his office and were looking at me with their heads bowed down. I was embarrassed and felt my character had been impugned and violated and my intelligence insulted.

SCOTT SEBASTIAN tried to contact Concentra Medical Center but got no answer. I implored that I would never come to work drunk and would never think that he would expect that out of me. He stood quietly looking at me. Then, breaking the silence he said I have my watch dogs looking out for me when I am not here. He then picked up the telephone again in an attempt to reach Concentra Medical Center. He told them that he wanted a breath test for alcohol administered to me and they asked him for what reason. He replied that it was reasonable suspicion.

I left the area and went back down to the basement to talk to BRAD FREEMAN, ALEXANDER HARRISON, RITA JOHNSON and KATHY A. SMITH. All of them saw how devastated I was and felt my anger and disgust at SCOTT SEBASTIAN's accusation that I was drunk and smelled of alcohol and that was the reason he made an appointment for alcohol testing at Concentra Medical Center for me.

Between 8:01 AM and 8:45AM, I left Grand Lake Gardens and went over to Piedmont Gardens to talk to SID WARD, Director of Facilities. I was acquainted with his secretary, Facility Assistant, LISA SANDEFORD and she informed me Mr. WARD was on vacation. I gave her a friendly hug and asked her if she smelled any alcohol on me or my breath. She said she did not smell any alcohol. I then told her that was the reason I was there to speak to Mr. WARD because SCOTT SEBASTIAN accused me of being drunk and smelling of alcohol. I told her about the appointment made for me at Concentra Medical Center. I felt Mr. WARD needed to know about this matter as well as REGINALD LYLES. The secretary said that SCOTT was always doing something wrong and proceeded to contact REGINALD LYLES through his secretary so that I could consult him about this matter.

I waited ten minutes for REGINALD LYLES, Executive Director, who came out greeting me with a handshake. I explained that SCOTT SEBASTIAN had made an appointment for me to go to Concentra Medical Center to have an alcohol breath test done because he said that I was drunk and that he smelled

## CHRONICLE OF EVENTS

alcohol on me. He asked that I tell him what happened. I explained about the previous senior citizen party that I had attended and that I got a bad reaction from the food that had been served. However, I came to work anyway the following morning even after being sick throughout the night with nausea, cramping in the stomach and diarrhea. I reported to work at 7:30 AM but I was still not feeling well. I explained that I spoke with my co-workers, BRAD FREEMAN and ALEXANDER about my illness. They agreed to cover for me until I would feel better. I punched out and went home, returning the next day, November 11, 2005.

I explained to Mr. LYLES that it was today that SCOTT SEBASTIAN called me into his office and told me that one of my co-workers told him that I came to work drunk on the 10th of November and I smelled of alcohol, now and that I was still drunk. I told him I was not drunk or drinking and that I would never come to work drunk.

REGINALD LYLES' exact words to me were, "I have heard that you're a good worker and the residents like you and we don't have any problem with you because you have a good job report. But you go on and take the alcohol breath test anyway." Further, he said, "Some people have long noses and some people have short noses. But you are a good worker, so continue doing good, " I said alright, I'll take the test, but I wanted to let him know before I go there to protect my job. We shook hands, witnessed by RENEE SAVAGE payroll clerk.

After leaving REGINALD LYLES' office, I was still hurt, sad and wondering why this happened. I had told LYLES and SAVAGE that this testing and reprimand could cripple my reputation and opportunity for advancement if I wanted to pursue other interests in my career. They both told me to go do the alcohol breath test.

I proceeded to the Comenoux Medical Center for the breath test, filling out the appropriate papers. The results were negative, of course, and I requested the staff make four copies of the test results -- one each for REGINALD LYLES, Executive Director; SID WARD, Director of Facilities; SCOTT SEBASTIAN, Director of Operations; and DONALD MACK, Assistant Director of Facilities.

After leaving Comenoux Medical Center, I went back to PIEDMONT GARDENS and gave a copy to REGINALD LYLES and SID WARD, via LISA SANDFORD, Facilities Assistant. I returned to GRAND LAKE GARDENS giving a copy of the test results to SCOTT SEBASTIAN, my supervisor. I then left the premises and went home.

I reported for work on November 14, 2005 at 7:00 A.M. I changed into my uniform and started to work. About two hours later SCOTT SEBASTIAN, Director of Operations, called me into his office, along with Ms. ANDREEA PAYNE, General Manager of Sodexho Senior Services, to act as his witness as he gave me an apology letter under his name. He said that he was sorry. I sat and listened to him and in reply I told him that it almost six months — May 16 to November 16, 2005, that he, SCOTT, had not noticed my character. But I told him to go on and do what he has to do and I would do what I have to do and that ended the meeting.

Later on, I learned that REGINALD LYLES had SCOTT to write the apology letter to me. I have yet to receive an apology letter from REGINALD LYLES or even a note that he was sorry to advise me to be tested for alcohol upon SCOTT SEBASTIAN'S vindictive recommendation.

Further, co-workers have reported that SCOTT SEBASTIAN has asked all of them to say that I was drunk and smelled like alcohol.

My supervisor DONALD MACK did not return to work from out of town until November 16, 2005 at 8:00 A.M. DONALD MACK radioed me to come to his office. I responded and upon my taking a seat there, he told me that he was sorry that he could not be here any sooner to investigate what happened. He commented that he could see that I was taking it all pretty hard. I agreed with him that I was feeling



## CHRONICLE OF EVENTS

Pag

very bad about it. Further, DONALD MACK informed me that after I left due to my illness on Friday, November 10, 2005, CALVIN MAY came to him and told him that I had gone home sick that morning. Later on that afternoon about 3:00 PM, he came back to him again and asked him if they could talk. He related that CALVIN MAY told him that I came to work drunk. DONALD MACK questioned him as to whether he could smell alcohol on me and he said no, but that I was drunk as he could tell it by my eyes. He asked CALVIN MAY if I was staggering from one side to the other side and he said no I was not staggering, but he knew I was drunk. I told DONALD MACK that I would never come to work that way. He apologized that the incident happened but he needed to find out what happened by calling this meeting with me this morning. He offered his assistance. I thanked him, but declined.

On November 21, 2005 Mr. REGINALD LYLES, Executive Director, came up to me and said that it was a good thing my coming and talking to him about the alcohol breath test and that there was no sign of alcohol or mouthwash on my breath. He wanted me to know that as long as he was there this would never happen again. I told him I did not trust him. He said, "Well, it's up to you." and he left.

I have told my family members about what has happened and how I felt toward Mr. SCOTT SEBASTIAN. SCOTT SEBASTIAN looks at me with a smile and tells me to mop out the restroom before I go home. Every time I take off from work to go to the doctor, he wants my supervisor to write me up. He tells me to tell me to clean up the walls, vacuum the dining room much better than the way I have been doing it, etc., etc. I tell him all right.

I have gotten to the point that I want to explode. I knew I was taking this too hard as I was fluctuating from a low ebb to excitable mood swings involuntarily and it bothered me that I seem to lack control.

On December 2, 2005, I made an appointment to see a psychiatrist at Kaiser Hospital in Oakland. I started seeing Dr. Saga and Dr. Mungo and also attending group therapy with Dr. Mayfield and Dr. Campbell for stress counseling and how to deal with stressful situations on the job. I have been attending these classes from January up to the present month - July.

These sessions have proved helpful in getting me through these rough days of continual harassment on the job. Therefore, I will continue to seek help in this setting.

I declare under penalty of perjury, pursuant to the laws of the State of California, and the laws of the United States of America that the foregoing statement is true and correct and that this declaration was executed on July 12, 2006, at Oakland, California.

WILLIAM J. CHAPPE

RECEIVED
NOV 0 9 2006
Department of Fair
Employment and Housing
Oakland District Office

**EXHIBIT X**

## *Superior Court of California, County of Alameda*



## *Notice of Judicial Assignment for All Purposes*
## *Effective July 1, 2007*

Case Number: RG06297059
Case Title:     Chapple VS American Baptist Homes Of The West Corporation
Date of Filing: 11/07/2006

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

On July 1, 2007 this case will be assigned for all purposes to:

|  |  |
|---|---|
| Judge: | Winifred Y. Smith |
| Department: | 114 |
| Address: | Wiley W. Manuel Courthouse |
|  | 661 Washington Street |
|  | Oakland CA 94607 |
| Phone Number: | (510) 268-7658 |
| Fax Number: | (510) 267-1518 |
| Email Address: | Dept.114@alameda.courts.ca.gov |

Under direct calendaring, this case will be assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law. (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.) Because this notice is effective July 1, 2007, the parties are advised that the earliest possible deadline for a challenge pursuant to Code of Civil Procedure §170.6 is July 16, 2007.**

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

**General Procedures**

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents filed after July 1, 2007, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Winifred Y. Smith
DEPARTMENT 114

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at:
http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court , which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

(1) Counsel are expected to be familiar and comply with the Statement of Professionalism of the ACBA , www.acbanet.org. (2) Appearances by attorneys who are not counsel of record are not permitted except for good cause. (3) Chambers copies of filings will not be accepted unless specifically requested by the Court. (4) Unrepresented litigants must also comply with the pertinent rules, cited above. (5) All references to "counsel" in this Order apply equally to self-represented litigants. The Court Maintains a Self-Help Center at the Wiley E. Manual Courthouse, 2nd Floor, 600 Washington St., Oakland. Telephone (510) 268-7221.

## Schedule for Department 114

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions. The Court prefers that contacts with Department 114 be by e-mail with copies to all other counsel. Counsel must confer with opposing counsel before scheduling a hearing date.

- Trials generally are held: Mondays, Tuesdays, Thursday between 9:30 a.m. and 4:30 p.m.and Wednesdays between 10:00 a.m. and 4:30 p.m. A pre-trial conference may be scheduled two weeks before trial. Pretrial conferences will be at 2:00 p.m. on Fridays.

- Case Management Conferences are held: Tuesdays, Thursdays and Fridays at 9:00 a.m. Timely filed and complete case management conference statements are required and may eliminate the need for a hearing. Tentative Rulings will be available on the Court's website 3 days before the CMC.

- Law and Motion matters are heard: Wednesdays at 9:00 a.m. and Fridays at 9:30 a.m. Only 1 Demurrer and 1 Motion for Summary Judgment/Adjudication will be set on each calendar.

- Settlement Conferences are heard: Fridays at 10:00 a.m.

- Ex Parte matters are heard: Wednesdays and Fridays at 9:00 a.m. A maximum of 3 matters will be scheduled on each calendar. Urgent matters may be specially set by contacting the department.

- (1) Counsel should anticipate and attempt to resolve discovery and other disputes. (2) No discovery motion shall be filed without prior serious efforts to resolve the dispute. (3) A Mandatory Settlement Conferences will be scheduled approximately 30 days before trial. All parties with authority to settle must be personally present. The Court requests that the parties state an objection to the Direct Calendar judge conducting the settlement conference at the time the conference is scheduled.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact
Department 31 for hearing dates before July 1, 2007 and the Direct Calendar Judge's
department as follows for hearing dates after July 1, 2007:

* Motion Reservations for hearing dates after July 1, 2007
    Email:        Dept.114@alameda.courts.ca.gov
    Phone:       (510) 208-2951

    The Court prefers that reservations for the Law and Motion calendar be made by e-
    mail.

* Ex Parte Matters for hearing dates after July 1, 2007
    Email:        Dept.114@alameda.courts.ca.gov
    Phone:       (510) 208-2951

    The Court prefers that reservations for the ex parte calendar be made by e-mail.

## Tentative Rulings

The court will issue tentative rulings in accordance with the Local Rules.  Tentative rulings
will become the Court's order unless contested in accordance with the Local Rules.
Tentative rulings will be available at:

* Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept.
  114
* Tentative Ruling Line after July 1, 2007:  1-866-223-2244

Dated:  05/22/2007                          Executive Officer / Clerk of the Superior Court

                                    By        Kim Winston
                                                        digital
                                                  Deputy Clerk

---

## CLERK'S CERTIFICATE OF MAILING
I certify that the following is true and correct:  I am the clerk of the above-named court and
not a party to this cause.  I served this Notice by placing copies in envelopes addressed as
attached hereto and then by sealing and placing them for collection, stamping or metering
with prepaid postage, and mailing on the date stated below, in the United States mail at
Alameda County, California, following standard court practices.

Executed on 05/23/2007

By    Kml Dincto
<u>             digital     </u>

Deputy Clerk

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Chapple VS American Baptist Homes Of The West Corporation | RG06297059 |

ADDITIONAL ADDRESSEES

Law Office of Michael C. Cohen
Attn: Cohen, Michael C.
1814 Franklin St., Ste. 900
Oakland, CA    94612-0000

Lewis, Brisbois, Bisgaard & Smith,
LLP
Attn: Fine, Gordon J.
One Sansome Street, Suite 400
14th Floor
San Francisco, CA    94104